IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETHANY KATZ, et al.<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DNC SERVICES CORPORATION d/b/a DEMOCRATIC NATIONAL COMMITTEE, et al.,<br><br>　　　　Defendants. | Civil Action No. 16-5800 |

**DEFENDANT DEMOCRATIC NATIONAL COMMITTEE'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DOCUMENTS RELIED UPON IN PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, ENTER A BRIEFING SCHEDULE TO ADDRESS PLAINTIFFS' USE OF PRIVILEGED MATERIALS IN SUPPORT OF MOTION TO DISMISS**

Defendant the Democratic National Committee ("DNC") hereby moves this Honorable Court to strike (1) Exhibits 1-A through 1-M to the Declaration of Joshua Boyette (Dkt. #90-4 to Dkt. #90-16); (2) materials that Plaintiffs represent are available at various hyperlinks cited in their Response to the motions to dismiss; and (3) passages of the Response that quote or cite to such materials[1] collectively, (the "Extraneous Material"). In the alternative, if the Court declines to strike the Extraneous Material, the DNC requests that the Court issue a briefing schedule specifically to address Plaintiffs' use of communications (Exhibits 1-H and 1-I to the Boyette Declaration) subject to the attorney-client privilege (the "Privileged Exhibits").

The DNC has attempted to resolve this issue with Plaintiffs' counsel, but Plaintiffs will not voluntarily agree to withdraw the communications in question from the Court's

---

[1] A copy of Plaintiff's Response, with the specific passages in question highlighted in yellow, is attached as Appendix A to the DNC's Motion.

consideration;[2] thus, the Court's involvement has regrettably become necessary. The DNC understands that Plaintiffs intend to oppose this motion.

## I.   INTRODUCTION

This motion relates to the propriety of Plaintiffs' use of certain materials, neither attached to nor referenced in their pleadings, in support of their opposition to the Defendants' motions to dismiss. *See* Pls.' Resp. (Dkt.# 90).

Despite having had three opportunities to amend their allegations in this action (which has now been pending for over six months), none of the iterations of Plaintiffs' complaint, including, most importantly, the current governing Second Amended Complaint, appended or made any reference to the Extraneous Material. Yet, in opposition to Defendants' recently filed motions to dismiss, Plaintiffs' defense of the viability of their action relies almost exclusively on these materials.

It is inappropriate in any litigation to introduce materials outside the pleadings in defense of a motion to dismiss. It is particularly so here, where the Extraneous Material consists largely of material obtained from WikiLeaks, obtained through illegal hacking by Russian state actors, in an attempt to influence the outcome of the 2016 presidential election. Moreover, two of the documents cited by Plaintiffs (the Privileged Documents) are communications between DNC personnel and legal counsel, for the purpose of seeking legal advice. Permitting Plaintiffs to rely on this material would not only violate the long standing rule that complaints may not be constructively amended by raising new allegations in response to a motion to dismiss, it would dangerously incentivize illegal hacking by a foreign government to influence our election,

---

[2] DNC counsel, however, understand Plaintiffs' counsel to have agreed to move to seal the Privileged Exhibits and destroy their copies of them, without prejudice to their reliance on the same.

135661082.1

sending a message that materials stolen from an individual or entity by a foreign state—even privileged material—may be freely used in litigation against them.

Because *all* the Extraneous Material is not properly before the Court and is thus appropriately the subject of this Motion to Strike, if the Court grants the motion and Plaintiffs move, as their counsel has agreed to do, to seal the Privileged Exhibits, the parties and the Court need not expend additional time briefing the propriety, specifically, of Plaintiffs' use of the Privileged Exhibits in their response.

If, however, the Court declines to grant the motion to strike (or specifically to strike the Privileged Exhibits), the DNC intends to file a motion for a protective order specifically addressing the Privileged Exhibits and respectfully requests that the Court issue a briefing schedule to govern the same.

## II.  BACKGROUND

Plaintiffs filed their initial Complaint in this matter over six months ago, on November 9, 2016, in which they purported to allege individual, collective, and class action claims under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act, against the DNC and the Pennsylvania Democratic Party ("PDP").  *See generally* Compl. (Dkt. #1). The original Complaint made no mention of or reference to the Privileged Exhibits or other Extraneous Material. The parties agreed to extend the Defendants time to answer or otherwise respond to the Complaint. *See* Dkt. # 24. Before the DNC and PDP filed their initial motions to dismiss, however, Plaintiffs filed their First Amended Complaint (the "FAC") on January 19, 2017. (Dkt. #37). The FAC was almost three times longer than the original Complaint and asserted claims against not only against the DNC and the PDP, but also several additional state parties. *See generally id*. As in the original Complaint, no mention of or reference to the Privileged Exhibits

or other Extraneous Material was made in the FAC. The DNC and PDP then filed motions to dismiss the FAC on February 20, 2017.[3] *See* DNC Mot. to Dismiss FAC (Dkt. #60), PDP Mot. to Dismiss FAC (Dkt. # 59). Shortly thereafter, Plaintiffs' counsel indicated their intent—and sought agreement—to file a Second Amended Complaint (the "SAC"). *See* Stip. To Extend Time to Respond ¶ 6 (Dkt. #64). In so doing, Plaintiffs' counsel indicated the SAC would not add any new plaintiffs, defendants or legal claims. *Id*. In other words, Plaintiffs sought to file a SAC plainly for the purpose of addressing legal deficiencies in the claims already asserted against the previously-named Defendants, including the DNC. When filed on March 7, 2017, the SAC—like both complaints before it—made no mention of or reference to the Privileged Exhibits or other Extraneous Material. *See generally* SAC (Dkt. #68).

All Defendants filed motions to dismiss the SAC on March 30, 2017. *See* Dkts. #74, 75, 77, 79. Plaintiffs filed a joint response on May 6, 2017. Dkt. #90. In that response, for the very first time, Plaintiffs sought to reference and rely upon "facts" purportedly contained in and/or supported by the Extraneous Material, most published by WikiLeaks. *See* Dkt. #90-4 to Dkt. #90-16. It is universally acknowledged and understood by U.S. government and intelligence that Russian state actors hacked into the DNC's and others' e-mail and electronic databases and then provided material obtained by this illegal activity to WikiLeaks to publish for the purpose of influencing the 2016 presidential election, specifically to assist then-candidate Donald J. Trump. *See, e.g*., David E. Sanger, *Putin Ordered "Influence Campaign" Aimed at U.S. Election*, Report Says, N.Y. Times (Jan. 6, 2017), *available at* https://www.nytimes.com/2017/01/06/us/politics/russia-hack-report.html (last visited May 22, 2017). Included in the Extraneous Material are two exhibits from an email chain in which DNC

---

[3] The response dates for the new state party defendants were several days later, depending on service. *See* Stip. To Extend Time to Respond ¶ 5 (Dkt. #64).

personnel seek legal advice from DNC counsel (i.e., the Privileged Exhibits). *See* Dkt. #90-11 & Dkt. #90-12.[4]

In the DNC's reply brief in support of its motion to dismiss, submitted to the Court together with a motion for leave to file the same on May 17, 2017, the DNC argues that Plaintiffs' reliance on the Extraneous Material is improper, and that the Court should disregard both the facts included in the same and any arguments in reliance thereto. *See* Dkt.# 94-2 at 1-2.[5] This Motion to Strike reiterates and expands on the basis for those arguments and urges the Court to affirmatively strike the Extraneous Material from the docket. In so doing, the Court will be enforcing the long-standing rule that a party may not rely (except in very limited exceptions, none of which are present here) on materials outside the pleadings at the motion to dismiss stage, and will avoid having to consider and decide specific issues of privilege related to the Privileged Exhibits included in the Extraneous Material.

Counsel for the DNC has conferred with Plaintiffs' counsel and understands that Plaintiffs will oppose this motion.[6]

### III.   LEGAL ARGUMENT

---

[4] The email that starts the chain sets out a factual scenario and then specifically asks for "any flags or questions." *See* Dkt. #90-11. The email is addressed to a select number of DNC employees and DNC counsel, who make up the email group "Email-Vetting_D." As the email chain shows, DNC counsel then responds by asking for clarification of the scenario presented. *See* Dkt. #90-12. In iterations of the email chain that Plaintiffs did *not* attach to their brief, DNC counsel in fact provides legal advice in response to the question raised and then clarified over the course of the email chain in question. There are no third parties on the chain that destroy the privilege.

[5] Defendants Missouri Democratic Party and the Democratic Party of Virginia raised the same argument in their own reply brief. *See* Dkt.# 95-2 at 1-2.

[6] Shortly after reviewing Plaintiffs' response and supporting exhibits, DNC counsel contacted Plaintiffs' counsel to advise them of the privileged nature of the Privileged Exhibits and specifically to request their withdrawal, sealing and destruction. Plaintiffs have agreed to seek to seal and destroy the Privileged Exhibits, without prejudice to their contention that their use of the same is proper, apparently based on their belief that either the Russian hack or the WikiLeaks publication "waived" any privilege.

### A.     The Extraneous Material Must Be Stricken

As explained in the DNC's reply brief, it is well settled that, except under very limited circumstances not present here, parties may not introduce materials outside the pleadings in pursuit of or defense of a motion to dismiss. *See* DNC Mot. to Dismiss 1-2 (Dkt. #101) (citing *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004), *as amended* (Mar. 8, 2004)); MODP & DPVA Mot. to Dismiss 1-2 (Dkt. #95-2) (same); *see also Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (alterations and citation omitted); *Doe v. Evanko*, 2001 WL 283170, at * 1 n.3 (E.D. Pa. Mar. 22, 2001) (noting that in plaintiff's response brief she "includes numerous documents outside the pleadings" but "[a]s this is a motion to dismiss, we have neither reviewed nor considered these documents and have relied, instead, on the factual summary set forth in her complaint"). Nor is the Extraneous Material properly the subject of a request for "judicial notice." *See* DNC Mot. to Dismiss 2 & n.2 (Dkt. #101).

This is so in *any* case, but the rule's enforcement is particularly important here, where the Extraneous Material largely consists of material obtained as the result of illegal computer hacking orchestrated by a foreign government and later published on WikiLeaks with the intention of disrupting and influencing the election. Several courts that have had to consider whether it is appropriate to rely on materials published by WikiLeaks as evidence in legal proceedings have declined to do so. *See, e.g.*, *ACLU v. Dep't of State*, 878 F. Supp. 2d 215, 224 (D.D.C. 2012); *Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 845 n.2 (S.D. Tex. 2015). This is not just good law, but good policy.  To permit litigants to rely on materials obtained by a hostile foreign government through illegal hacking in actions brought against the victims of

 

those hacks would incentivize future, further illegal activity. And in this particular case, doing so would also encourage hacking for political gain: only enhancing the spoils for criminal groups that are outside the reach of our courts. These hacking groups, moreover, have a well-documented history of doctoring and altering documents. *See* Devlin Barrett & Damien Paletta, *Lawmakers Raise Alarms Over DNC Hacks*, Wall Street Journal (Jul. 26, 2016), *available at* https://www.wsj.com/articles/lawmakers-raise-alarms-over-dnc-hacks-1469576585 (last visited May 22, 2017).

Moreover, two of the documents cited by Plaintiffs are communications between DNC personnel and legal counsel, for the purpose of seeking legal advice. *See supra* at n.4. Permitting Plaintiffs to rely on this material would not only violate the long standing rule that complaints may not be constructively amended by raising brand new allegations in response to a motion to dismiss, *Mele*, 359 F.3d at 257, it would send a clear message that materials stolen from an individual or entity – even privileged materials – may be freely used in litigation against them.

> **B.      In the Alternative, the DNC Requests the Court Issue a Briefing Schedule to Address Plaintiffs' Use of the Privileged Exhibits in Particular**

Because all of the Extraneous Material is improperly before the Court at this stage, the Court may avoid the need for the parties to brief and the Court to specifically consider Plaintiffs' use of the Privileged Exhibits in particular by striking all of the Extraneous Material on the grounds set forth in Defendants' reply briefs and expounded upon above. If, however, the Court declines to strike the Privileged Exhibits as improper extraneous materials, the DNC would seek a protective order specifically to bar Plaintiffs from the use of the Privileged Exhibits and any other privileged materials published by WikiLeaks in these proceedings and would respectfully request that the Court issue a briefing schedule to address the same.

Briefly, it is plainly improper for Plaintiffs to rely, at this or any stage of these proceedings, on facially privileged documents stolen by hackers that include confidential communications between the DNC and its counsel undertaken for the purpose of seeking legal advice. *See, e.g.*, *Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426, 1430 (D. Ariz. 1993). In DNC counsel's communications with Plaintiffs' counsel, it appears that Plaintiffs take the position that, because the documents were published by WikiLeaks, any privilege has been waived. Multiple court decisions demonstrate that this is plainly not the law. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *5 (N.D. Cal. Mar. 26, 2013) ("The Court finds that the disclosures to the New York Times and Plaintiffs were unauthorized and involuntary and thus did not waive Wal–Mart's attorney-client privilege in the Memo."); *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120, 125-26 (D.N.J. 2004) (no waiver of privilege where letter from defendants to former attorney inexplicably found in plaintiff's mailbox); *Resolution Trust Corp.*, 813 F. Supp. at 1430 (where leak of privileged memorandum to newspaper was "inexplicable," the plaintiff "did not voluntarily waive any attorney-client privilege it would have possessed"); *Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1577 (S.D. Fla. 1993) (stating that "if a confidential memorandum is stolen from an attorney's office and subsequently published in newspapers across the country" the privilege is not waived); *In re Dayco Corp. Derivatives Sec. Litig.*, 102 F.R.D. 468, 470 (S.D. Ohio 1984) ("[a]bsent any indication that [privilege-holders] voluntarily gave the [document] to the [newspaper], publication of excerpts of same should not be considered a waiver of the privilege").

Thus, if the Court declines to strike the documents and remove them from the docket on the grounds outlined in Section III.A, above, the DNC has good grounds for and should be

granted a protective order barring the use of the Privileged Exhibits and any other attorney-client communications that Plaintiffs would seek to use to their advantage in this litigation. Such briefing and the concomitant expenditure of Court and party resources will only become necessary, however, if the Motion to Strike is denied in the first instance.

## IV.     CONCLUSION

For all of the foregoing reasons, the DNC requests that this Honorable Court grant the instant Motion to Strike, and enter an Order striking the Extraneous Material from the docket. In the alternative, the DNC requests that the Court issue a briefing schedule to specifically address Plaintiffs' use of the Privileged Exhibits.

| | |
|---|---|
| Dated: May 22, 2017 | By:  *s/ Thomas J. Barton* <br> Thomas J. Barton, Esq. <br> Dennis M. Mulgrew, Jr., Esq. <br> DRINKER BIDDLE & REATH LLP <br> One Logan Square, Ste. 2000 <br> Philadelphia, PA 19103-6996 <br> T: (215) 988-2700 <br> F: (215) 988-2757 <br> thomas.barton@dbr.com <br> dennis.mulgrew@dbr.com <br><br> Elisabeth C. Frost, Esq. <br> PERKINS COIE LLP <br> 700 Thirteenth Street, N.W., Suite 600 <br> Washington, D.C. 20005-3960 <br> T: 202.654.6200 <br> F: 202.654.6211 <br>  D.C. Bar No. 443754 <br> efrost@perkinscoie.com <br><br> William B. Stafford, Esq. <br> PERKINS COIE LLP <br> 1201 Third Avenue, Suite 4900 <br> Seattle, WA 98101-3099 <br> T: 206.359.8000 <br> F: 206.359.9000 <br> bstafford@perkinscoie.com <br><br> Attorneys for Defendants <br> DEMOCRATIC NATIONAL COMMITTEE |