IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETHANY KATZ, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
|     v. | : | NO. 16-5800 |
| | : | |
| DNC SERVICES | : | |
| CORPORATION, et al., | : | |
|     Defendants. | : | |

Jones, II    J.                                                                                November 29, 2017

### MEMORANDUM

Plaintiffs claim to represent a class of former campaign workers who were hired by several state democratic parties during the 2016 presidential election. According to Plaintiffs, these state parties colluded with the Democratic National Committee to over work and underpay field organizers in violation of various federal and state wage laws. The out-of-state democratic party defendants seek dismissal of the instant action on the grounds that this Court cannot exercise personal jurisdiction over these foreign parties with no meaningful ties to the Commonwealth. Plaintiffs retort that each defendant to this suit meaningfully contributed to the Pennsylvania-based campaign efforts in the nationally coordinated campaign to get Hillary Clinton elected as president. Plaintiffs further argue that the out-of-state defendants are mere extensions of the Democratic National Committee, over which jurisdiction is proper, and as such there is sound legal basis for requiring said defendants to defend suit in the Commonwealth. For the reasons that follow, this Court finds that (1) it would be improper to exercise jurisdiction over any one of the out-of-state democratic party defendants and (2) Plaintiffs fail to demonstrate that further jurisdictional discovery would be fruitful. The claims against the Democratic Parties of Arizona, North Carolina, Missouri, Michigan, Virginia, and Florida are dismissed for want of personal jurisdiction.

**RELEVANT BACKGROUND**

Named Plaintiffs are former field organizers who were employed by seven different state democratic parties in the months leading up to the 2016 presidential election. (ECF No. 68, ¶¶ 23.) As field organizers, Plaintiffs were responsible for completing a host of campaign related activities, including canvassing, contacting voters telephonically and in person, and soliciting volunteers. (ECF No. 68, ¶ 101.) Plaintiffs allege that they regularly worked upwards of twelve hours in a day on behalf of their respective state party employers but were only paid a flat monthly rate regardless of the total number of hours worked. (ECF No. 68, 117-128.)

Based on the foregoing, Plaintiffs filed the Second Amended Complaint on March 7, 2017, naming as defendants DNC Services Corp. – doing business as Democratic National Committee – ("Defendant DNC") and the state democratic parties of Pennsylvania ("Defendant PDP"), Florida ("Defendant FDP"), Missouri ("Defendant MODP"), Virginia ("Defendant VDP"), North Carolina ("Defendant NCDP"), Arizona ("Defendant ADP"), and Michigan ("Defendant MIDP"). (ECF No. 68.) In the Second Amended Complaint, Plaintiffs advance individual, class, and collective action claims against Defendants for alleged violations of the Fair Labor Standards Act, various state wage statutes, and state common law torts. (ECF No. 68.) Plaintiffs allege that the state party defendants conspired with one another and with Defendant DNC to unlawfully designate Plaintiffs, and those similarly situated, as exempt employees under the FLSA and applicable state wage statutes, thereby denying Plaintiffs full and appropriate compensation. (ECF No. 68, ¶ 39.)

Defendants FDP, MODP, VDP, NCDP, ADP, and MIDP (collectively "Foreign Defendants") timely filed Motions to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction and for Improper Venue pursuant to Federal Rules of Civil Procedure

12(b)(2) and 12(b)(3), respectively. (ECF. Nos. 74, 75, 77.) Over Foreign Defendants' opposition, Plaintiffs maintain that this Court may exercise personal jurisdiction over Foreign Defendants because Defendant DNC – a corporation over which this Court undoubtedly has jurisdiction – exercised such operational control over each Foreign Defendant so as to be considered the alter ego thereof. (ECF No. 90, p. 11.) Plaintiffs contend that pursuant to the alter ego theory of personal jurisdiction, this Court should exercise jurisdiction over each Foreign Defendant because Defendant DNC is subject to the jurisdiction of this Court. (ECF No. 90, p. 11.) Plaintiffs further argue that Foreign Defendants' participation in 2016 presidential campaign activities constituted in-state contacts sufficient to independently support a finding of general personal jurisdiction over each state party. (ECF No. 90, p. 7-8.)

In support of their respective Motions, Foreign Defendants submitted virtually unopposed affidavits that collectively establish the following: (1) Foreign Defendants are neither corporate parent nor subsidiary to any other corporate entity; (2) Foreign Defendants are each subject to individual state and federal campaign finance requirements; (3) Foreign Defendants do not own property, solicit business, advertise, or hire within the Commonwealth; (4) Foreign Defendants are self-governing; and (5) Foreign Defendants did not require any plaintiff employed as a field organizer to work within the Commonwealth as a condition of employment. (ECF No. 74, ex. 1-4.)

Presently before this Court are Plaintiffs' Second Amended Complaint, Defendants ADP, FDP, MIDP, and NCDP's Motion to Dismiss, Defendant VDP's Motion to Dismiss, Defendant MODP's Motion to Dismiss, Plaintiffs' consolidated Response in Opposition to the aforementioned Motions, and Defendants ADP, FDP, MIDP and NCDP's Reply. Upon thorough

consideration of all relevant jurisdictional facts, and for the reasons that follow, this Court grants Foreign Defendants' Motions to Dismiss for want of personal jurisdiction.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Once a defendant has raised this jurisdictional defense, the burden shifts to the plaintiff to present a prima facie case establishing jurisdiction over the non-resident defendant in the forum. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); see also Miller Yacht Sales, Inc., v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction."). A plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the forum state. Mellon Bank v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted); see also Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a prima facie case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.") (emphasis in original).

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Pinker, 292 F.3d at 368. Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [he or she] must present similar evidence in support of personal jurisdiction." In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings in this manner. Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction." Id. at 559. To that end, "[t]he plaintiff must respond to the defendant's motion

with 'actual proofs'; 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" Lionti v. Dipna, Inc., Civ. No. 17-1678, 2017 U.S. Dist. LEXIS 98956, at *3-4 (E.D. Pa. June 27, 2017) (quoting Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66, n.9 (3d Cir. 1984); see also Lehigh Gas Wholesale, LLC v. LAP Petro., LLC, Civ. No. 14-5536, 2015 U.S. Dist. LEXIS 36569, at *5 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009)); In re Chocolate Confectionary, 602 F. Supp. 2d at 556-57 (a plaintiff must present contrary evidence in the form of "actual proofs[.]").

## DISCUSSION

Federal courts may assert jurisdiction over a nonresident defendant to the extent authorized by the law of the forum. See Fed. R. Civ. P. 4(k)(2). "The Pennsylvania long-arm Statute grants jurisdiction coextensive with that permitted by the Due Process Clause of the Fourteenth Amendment, see 42. Pa. Cons. Stat. § 5322(b), which in turn requires that nonresident defendants 'have certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" UHS of Del., Inc. v. United Health Servs., No. 12 -485, 2015 U.S. Dist. LEXIS 15786, *1, *10 (M.D. Pa. 2015) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general or specific. General jurisdiction exists when a foreign party maintains "continuous and systematic" contacts with a state and may be sued in that state on any claim, whereas specific jurisdiction exists when a plaintiff's suit is related to or arises out of a defendant's contacts with the state. Reassure Am. Life Ins. Co. v. Midwest Res., Ltd., 721 F. Supp. 2d 346, 353 (E.D. Pa. 2010) (internal citations omitted).

For the reasons that follow, this Court finds that Plaintiffs fail to establish that Foreign Defendants' contacts with this forum, alone or in the aggregate, are sufficient to support general or specific jurisdiction consistent with constitutional due process.

I. **General Jurisdiction**

Plaintiffs' arguments in support of general jurisdiction are two-fold. First, Plaintiffs argue that Foreign Defendants' respective participation in state-based campaign activities is independently sufficient to support requiring Foreign Defendants to defend suit in this forum. (ECF No. 90, p. 6-8.) Second, Plaintiffs' argue that Defendant DNC has so usurped the corporate identities of each state party defendant that Foreign Defendants should be considered mere alter egos of Defendant DNC. (ECF No. 90, p. 10-12.) Plaintiffs urge the Court to impute Defendant DNC's in-state contacts to each Foreign Defendant and thereby find the exercise of general jurisdiction consistent with constitutional requirements. (ECF No. 90, p. 11.) This Court finds neither argument persuasive.

    A.    <u>Foreign Defendants' In-State Contacts</u>

In the Second Amended Complaint, Plaintiffs allege that general jurisdiction over Foreign Defendants is properly predicated on Foreign Defendants' involvement in various Pennsylvania-based campaign initiatives. (ECF No. 68, ¶ 13.) In the Response in Opposition to Defendants' respective Motions to Dismiss, Plaintiffs focus entirely on Foreign Defendants' – with the exception of Defendant ADP – involvement in the Hillary Victory Fund. (ECF No. 90, p. 6-8.) According to Plaintiffs, the Hillary Victory Fund ("HVF") was a joint fundraising endeavor created by Hillary for America ("HFA"), Defendant DNC, and dozens of state democratic parties. (ECF No. 90, p. 6.) Contributors to the HVF could reportedly combine individual donations to HFA, DNC, and each participating state party into one large lump sum

Case 2:16-cv-05800-CDJ Document 120 Filed 11/29/17 Page 7 of 17

donation, which could exceed $300,000.00 per donor. Plaintiffs report that funds received were distributed to HFA, DNC, and each state party participant on a pro rata basis. (ECF No. 90, p. 6.)

Based on what this Court could surmise from Plaintiffs' Response and the accompanying exhibits, several of Foreign Defendants transferred the funds they received from HVF to Defendant DNC, which then reallocated the funds to states that required additional campaign resources. (ECF No. 90, p. 6); (ECF No. 90, ex. 1A – 1F.) According to Plaintiffs, in the year preceding the 2016 presidential election, the state Democratic Party for Pennsylvania – Defendant PDP – received over $18,000,00.00 from Defendant DNC. (ECF No. 90, p. 7.) Plaintiffs argue that Foreign Defendants "funneled" HVF funds through Defendant DNC to Defendant PDP, which used said funds to pay – albeit allegedly insufficiently – field organizers and to propel Pennsylvania's campaign efforts. (ECF No. 90, p. 7.) Plaintiffs' primary argument in support of general jurisdiction is this alleged indirect financial support Foreign Defendants supplied Defendant PDP and the Pennsylvania campaign efforts at large.

The link Plaintiffs attempt to establish between Foreign Defendants and the Commonwealth is far too attenuated to justify the exercise of jurisdiction here. First, while the Court recognizes the fungible nature of money, Plaintiffs fail to demonstrate that they could – even with targeted discovery – establish the exact source of the funds allocated to Defendant PDP by Defendant DNC or quantify with any reasonable particularity the extent to which those funds were derived from *Foreign Democrats'* financial contributions. Second, even if Plaintiffs could tie Foreign Democrats to Defendant PDP's receipt of campaign funds, Plaintiffs provide this Court with no reason to believe Foreign Defendants intended for their contribution to Defendant DNC to be distributed to Defendant PDP specifically. Third and most importantly, even if Plaintiffs could demonstrate that Foreign Defendants' indirect payouts to Defendant PDP

were more than incidental occurrences, these limited contacts could not establish the "at home" connection to the Commonwealth necessary for a finding of general jurisdiction.

"General jurisdiction…calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States. Nothing in *International Shoe* and its progeny suggests that a 'particular quantum of local activity' should give a state authority over a 'far larger quantum of activity' having no connection to any state activity." Daimler AG v. Bauman 134 S. Ct. 746, 762 n. 20 (2014) (italics in original) (internal citations omitted). There is no basis in the record upon which this Court could reasonably find that, when considered alongside the totality of Foreign Defendants' nationwide contacts, the indirect financing of Pennsylvania-based campaign efforts is sufficient to render Foreign Defendants at home in the Commonwealth. Even Plaintiffs acknowledge that Pennsylvania was only one of the "battleground states" to which Defendant DNC allocated Foreign Defendants' HVF contributions. (ECF No. 90, p. 6.) And if Plaintiffs are correct that Foreign Defendants are merely an indistinguishable extension of Defendant DNC, Foreign Defendants' activities are extensive and far-reaching. The contacts alleged, even assuming all Plaintiffs' allegations true, are a far cry from the level of in-forum contacts necessary for general jurisdiction.

    B.    Alter Ego Theory

Plaintiffs argue in the alternative that the alter ego theory supports a finding of jurisdiction. "[A] court may exercise personal jurisdiction, consistent with the Constitution, over a corporate entity that is the alter ego of a party over which jurisdiction is proper." Atlantic Pier Assocs. LLC v. Boardakan Restaurant Partners L.P., No. 08-4564, 2010 U.S. Dist. LEXIS78145

*1, *8 (E.D. Pa. August 2, 2010) (citing Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005)). The alter ego theory permits a court to impute the in-forum contacts of one corporate entity to another, related corporate entity where the plaintiff can "demonstrate that the out-of-forum corporation either controls or is controlled by an in-forum affiliate to such a degree that the two corporations operate as a single, amalgamated entity." In re Chocolate Confectionary Antitrust Litig., 674 F. Supp. 2d 580, 596 (M.D. Pa. 2009). Plaintiffs argue Foreign Defendants are the alter egos of Defendant DNC because Defendant DNC "exercised a sufficient amount of operational control" over each state Democratic Party. (ECF No. 68, ¶ 12.) Plaintiffs contend that jurisdiction over Foreign Defendants should extend to the limits of that which may be lawfully exercised over Defendant DNC.

As a preliminary matter, this Court questions the applicability of the alter ego theory to the case at bar. There is, undisputedly, no formal corporate relationship between Defendant DNC and any one of the Foreign Defendants. (ECF No. 74, ex. 1-4); (ECF No. 75, p. 5); (ECF No. 77, p. 5.) And this Court's jurisdiction over Defendant DNC is predicated entirely on Defendant DNC's waiver of jurisdictional challenge – not an independent judicial finding of sufficient in-forum contacts. Thus, even if the Court could impute Defendant DNC's in-state contacts to corporate entities to which Defendant DNC is not formally related, the record before the Court does not address the extent to which those imputed contacts would support a finding of general jurisdiction.

Despite its reservations, this Court will proceed with a merits analysis of Plaintiffs' argument. At least one court within this Circuit contemplated the applicability of the alter ego theory to corporate relationships less formal than that of a parent and subsidiary. Copia

Commc'ns, LLC v. AMResorts, L.P., No. 16-5575, 2017 U.S. Dist. LEXIS 146294 *1, *15 (E.D. Pa. September 8, 2017) (noting that while the alter ego theory "most readily applied in the context of parent/subsidiary relationships between entities," "the [c]ourt's research reveals that in some instances, the alter ego theory may apply in the context of other sorts of corporate arrangements, so long as their operations and management are sufficiently interconnected."). And the Fifth Circuit has held that one corporation's waiver could be imputed to its corporate alter ego for the purposes of general jurisdiction. See Patin v. Thoroughbred Power Boats, 294 F.3d 640, 654 (5th Cir. 2002) ("Accordingly, we conclude that a successor corporation that is deemed to be a "mere continuation" of its predecessor corporation can be bound by the predecessor corporation's voluntary submission to the personal jurisdiction of a court."). Given the holdings of these cases, and this early stage of pleading, this Court is unwilling to state as a matter of law that an alter ego relationship cannot exist in an informal corporate arrangement or that waiver cannot be imputed to an alter ego as would in-forum contacts.  Ultimately, having thoroughly reviewed both Plaintiffs' arguments and the record, this Court finds that Defendant DNC does not exercise the requisite level of control over Foreign Defendants day-to-day operations to be considered the alter ego thereof. The "corporate fusion" required for a finding of an alter ego relationship does not exist here.

      The alter ego theory requires more than relatedness between the corporate entities. "The relevant jurisdictional inquiry is whether the subsidiary and the parent[1] so operate as a single entity or unified and cohesive and economic unit, that when the parent is within the venue of the

---

[1] For the purposes of this Opinion alone, the Court will regard all cited authority as applicable to the corporate arrangement of the instant case, despite specific reference to parent-subsidiary corporate families. The Court interprets "parent" as the dominant corporation – in this instance, Defendant DNC – and "subsidiary" as the subservient corporation – in this instance the individual state democratic parties.

court, the subsidiary is also within court's jurisdiction; this single entity test requires that a parent over which the court has jurisdiction so control and dominate a subsidiary as in effect to disregard the latter's independent corporate existence." Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp. 27 F. App'x 94, 98 (3d Cir. 2002) (internal citations and quotations omitted). Pennsylvania courts consider ten discrete factors to assess the degree of control the in-forum corporation exercises over the related foreign corporation: (1) ownership of all or most of the stock of the subservient corporation; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subservient entity which the dominant corporation would normally conduct through its own agents or departments; (9) marketing by the subservient corporation on behalf of the dominant corporation, or as the dominant's exclusive distributor; and (10) receipt by the officers of the subservient corporation of instruction from the dominant corporation. Radian Guar., Inc. v. Bolen, 18 F. Supp. 3d 635, 648 (E.D. Pa. 2014).

"No one aspect of the relationship between two corporations unilaterally disposes of the analysis, and the court may consider any evidence bearing on the corporations' functional interrelationship." In re Chocolate Confectionary Antitrust Litig., 674 F. Supp. 2d at 598. The weight of the facts presently before this Court militates against a finding of alter ego jurisdiction. First, Defendant DNC does not own any one of Foreign Defendants, in whole or in part, and each Foreign Defendant fulfils tax and campaign finance filing requirements as independent entities. (ECF No. 74, ex. 1-4.) Second, by Plaintiffs' own account, each Foreign Defendant is "responsible for governing" the Democratic Party of its respective state and "raises money, hires staff, and coordinates strategy to support candidates" running for local, state, and

national office. (ECF No. 68, ¶33-38.) As Foreign Defendants are incorporated in accordance with the laws of their respective states, are self governing, and maintain a board of directors, there is no basis for this Court to find an abandonment of corporate structures or boundaries. See Patsoureas v. Choice Hotels Int'l, No. 17-555, 2017 U.S. Dist. LEXIS 126161, *1, *6 (M.D. Pa. August 9, 2017) ("If a parent and subsidiary continue to respect traditional corporate boundaries by maintaining, for example, their own bylaws, articles of incorporation, and boards of directors, the subsidiary will not be deemed to be the 'alter ego' of the parent, no matter how much control the parent exercises.") (internal citations omitted).

Third and most importantly, all of Plaintiffs arguments surrounding the existence of common marketing strategies, logos, trademarks, and information databases are limited to presidential campaign efforts, not that of state or local elections. In the Second Amended Complaint, Plaintiffs explicitly confine their assertions of pervasive operational control by Defendant DNC over Foreign Defendants to the "pendency of the 2016 national presidential campaign." (ECF No. 68, ¶ 12.) Thus, even if Plaintiffs' arguments surrounding Defendants' interrelatedness were supported by affidavits or other competent evidence, they would be insufficient to establish that the control exercised by Defendant DNC pervaded Foreign Defendant's day-to-day operations. Foreign Defendants' express purpose is to support democratic candidates vying for positions not only in national office, but also at the local and state level. Plaintiffs' failure to address the role, if any, Defendant DNC plays in Foreign Defendants' affairs when a presidential election is not on the horizon is fatal to their argument. If Defendant DNC's control over Foreign Defendants is limited to presidential campaign efforts that occur once every few years, there is simply no basis upon which to find an alter ego

relationship. At best, Plaintiffs' proffered evidence demonstrates a voluntary and informal, albeit tangible, commitment amongst Defendants to the shared goal of electing a democratic president.

Even if this Court agreed with Plaintiffs' assessment of the alter ego factors, it would still decline to exercise jurisdiction over Foreign Defendants. "Even where an alter ego relationship has been shown, personal jurisdiction must ultimately be consistent with traditional notions of fair play and substantial justice." Simeone v. Bombardier-Rotax GMBH, 360 F. Supp. 2d 665, 678 (E.D. Pa. 2005) (internal citations omitted). "The relationship between the defendant and the forum must be such that it is reasonable…to require the corporation to defend the particular suit which is brought there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 317 (1945)) (internal quotations omitted). The determination of reasonableness is generally premised on consideration of several factors[2], all of which militate against the exercise of personal jurisdiction here.

If this Court were to exercise jurisdiction over Foreign Defendants, Foreign Defendants would be required to litigate in a forum in which they have no meaningful presence. See Wortham v. KarstadtQuelle AG, 320 F. Supp. 2d 204, 229 (D.N.J. 2004) (finding it significantly burdensome to require foreign defendants to litigate in the forum state where defendants had no meaningful presence in the state). The majority of evidence relevant to each out-of-state Plaintiff's claims most likely exists in the Plaintiffs' respective home states. See Id. at 230-31 (finding that neither the plaintiff's interest nor the interstate judicial system's interest outweighed the defendant's burden where plaintiff failed to identify any evidence more convenient to the forum state). And as there is no evidence that Foreign Defendants either directed their alleged

---

[2] These factors are: "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" Reassure, 721 F. Supp. 2d at 356 (citations omitted).

tortious conduct at Pennsylvania, or meaningfully availed themselves of the benefits of Pennsylvania laws, it cannot be reasonably said that this forum has a significant interest in adjudicating Plaintiff's claims. See Penco Prods. v. WEC Mfg., LLC, 974 F. Supp. 2d 740, 749 (E.D. Pa. 2013) ("A state has an interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors who purposefully derive benefit by voluntarily contracting with an in-state actor"). For these and all foregoing reasons, it would be entirely unreasonable to exercise jurisdiction over Foreign Defendants on the basis of the alter ego theory.

II. **Specific Jurisdiction**

The record is similarly bereft of facts that would support a finding of specific jurisdiction over Foreign Defendants. Unlike general jurisdiction, specific jurisdiction exists only where the plaintiff's claims arise from the defendant's in-state contacts, and "the relationship among the defendant, cause of action, and the forum falls within the minimum contacts' framework." Grainer v. Smallboard, Inc., No. 16-4866, 2017 U.S. Dist. LEXIS 25934, at *3 (E.D. Pa. Feb. 23, 2017) (quoting Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). There can be no specific jurisdiction absent "some act by which [the defendant] purposely avail[ed] [itself] of the privilege of conducting business within [Pennsylvania]," Mellon Bank, 960 F.2d at 1221, and a clear nexus between said purposeful availment and the plaintiff's claims. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) ("In determining whether there is specific jurisdiction, we undertake a three-part inquiry. First, the defendant must have 'purposely directed its activities at the forum.'…Second, the litigation must 'arise out of or relate to' at least one of those activities.") (internal citations omitted).

This Court finds no act by Foreign Defendants that would constitute purposeful availment sufficient to confer specific jurisdiction. In the Second Amended Complaint, Plaintiffs seem to suggest Foreign Defendants' preparation for and attendance at the 2016 Democratic National Convention amounted to activity purposely directed at Pennsylvania. (ECF No. 68, ¶ 13.) But "[the minimum contacts] standard ensures that a defendant will not be ha[u]led into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts…." Reassure, 721 F. Supp. 2d at 353-354. Plaintiffs do not allege that Foreign Defendants in any way influenced the decision regarding the location of the 2016 Convention, nor do Plaintiffs allege that Foreign Defendants would have conducted in-forum activities differently had the Convention been held in another state. Foreign Defendants' presence in Pennsylvania during and immediately preceding the 2016 Convention was fortuitous at best, and thus untenable as a basis for jurisdiction. That Foreign Defendants participated in "a nationally coordinated campaign in which a number of activities and national candidate appearances occurred within the Commonwealth" is similarly happenstance unrelated to a deliberate decision by Foreign Defendants to direct potentially actionable conduct at Pennsylvania.

Plaintiffs also fail to satisfy the second element of the specific jurisdiction standard, which requires a showing that Plaintiffs' claims arise from or relate to Foreign Defendants' in-state activities. The claims contained in the Second Amended Complaint are premised on alleged failures to compensate field organizers for campaign-related work completed on behalf of Plaintiffs' respective state party employers within Plaintiffs' respective home states. Plaintiffs do not allege that any unpaid overtime stemmed from work conducted at the behest of Foreign Defendants in the Commonwealth, and do not challenge the veracity of Foreign Defendants' affidavits affirming that field organizers worked exclusively in their respective states. There is,

thus, no reasonable basis upon which Plaintiffs could argue that their claims for unpaid wages arose from or related to in-state activity by Foreign Defendants. Plaintiffs' bald allegations of a collusive scheme amongst Defendants to withhold owed wages fails to plead facts that would connect any alleged conspiracy to Foreign Defendants' limited contacts with Pennsylvania.

For all of the foregoing reasons, this Court finds no basis upon which to exercise specific jurisdiction over Foreign Defendants. Plaintiffs fail to establish a prima facie case of either general or specific jurisdiction as it relates to the foreign state Democratic Parties. Foreign Defendants' Motions to Dismiss the Second Amended Complaint are granted for want of personal jurisdiction.

### III. **Jurisdictional Discovery**

Plaintiffs petition this Court for leave to conduct jurisdictional discovery if the Court finds Plaintiffs unable to meet their burden to establish jurisdiction. (ECF No. 90, p. 9.) "A plaintiff's right to conduct jurisdictional discovery should be sustained 'if a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state.'" Bell v. Fairmont Raffles Hotel Int'l, No. 12-757, 2013 U.S. Dist. LEXIS 166937 *1, *20 (W.D. Pa. November 25, 2013) (citing Toys "R" Us, Inc. v. Step Two, S.A. 318 F.3d 446, 456 (3d Cir. 2003)). "However, a trial court 'has discretion to refuse to grant jurisdiction[al] discovery' and 'may deny jurisdictional discovery where a plaintiff has failed to meet its burden of making out a threshold prima facie case of personal jurisdiction.'" Id. (citations omitted). This Court finds that Plaintiffs fail to satisfy their burden and fail to demonstrate that additional discovery would bolster Plaintiffs arguments in support of jurisdiction. This Court therefore denies Plaintiffs' request to conduct jurisdictional discovery.

## CONCLUSION

The record before this Court cannot support a finding of personal jurisdiction over Foreign Defendants. Foreign Defendants' limited activity within the Commonwealth are insufficient for an independent finding of jurisdiction, and Plaintiffs fail to demonstrate that Defendant DNC's in-state contacts should be imputed to Foreign Defendants by way of the alter ego theory of personal jurisdiction. As Plaintiffs have not made a prima facie showing of jurisdiction, this Court finds no basis in fact or in law for subjecting Foreign Defendants to the expense of further jurisdictional discovery. Foreign Defendants' Motions to Dismiss are granted.

A corresponding Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II    J.