FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETHANY KATZ, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION |
|     v. : | NO. 16-5800 |
| : | |
| DNC SERVICES : | |
| CORPORATION, et al., : | |
|     Defendants. : | |

Jones, II    J.                                                  February 1, 2018

### MEMORANDUM

Plaintiffs claim to represent a class of former campaign workers who were hired by several state democratic parties during the 2016 presidential election. According to Plaintiffs, these state parties colluded with the Democratic National Committee to overwork and underpay field organizers in violation of various federal and state wage laws. Presently before the Court are Defendants DNC Services Corporation and Pennsylvania Democratic Party's Motions to Dismiss the Second Amended Complaint for Failure to State a Claim. After a thorough review of the record, this Court grants both parties' Motions, without prejudice, and with leave to amend within fourteen days.

### RELEVANT BACKGROUND

Named Plaintiffs are former field organizers who were employed by seven different state democratic parties in the months leading up to the 2016 presidential election. (ECF No. 68, ¶ 23.) As field organizers, Plaintiffs were responsible for completing a host of campaign related activities, including canvassing, contacting voters telephonically and in person, and soliciting volunteers. (ECF No. 68, ¶ 101.) Plaintiffs were also tasked with collecting voter information and uploading the data into a database accessible by all other state democratic parties. (ECF No. 68, ¶ 105.) This database was maintained by Defendant DNC and jointly operated by all other

1

Defendants, who would occasionally sell access to the database to third party organizations. (ECF No. 68, ¶ 109.) Plaintiffs allege that they regularly worked upwards of twelve hours in a day on behalf of their respective state party employers but were only paid a flat monthly rate regardless of the total number of hours worked. (ECF No. 68, ¶ 117-128.)

Based on the foregoing, Plaintiffs filed the Second Amended Complaint on March 7, 2017, naming as defendants DNC Services Corp. – doing business as Democratic National Committee – ("Defendant DNC") and the state democratic parties of Pennsylvania ("Defendant PDP"), Florida ("Defendant FDP"), Missouri ("Defendant MODP"), Virginia ("Defendant VDP"), North Carolina ("Defendant NCDP"), Arizona ("Defendant ADP"), and Michigan ("Defendant MIDP"). (ECF No. 68.) In the Second Amended Complaint, Plaintiffs advance individual, class, and collective action claims against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA"), various state wage statutes, and state common law torts. (ECF No. 68.) Plaintiffs allege that the state party defendants conspired with one another and with Defendant DNC to unlawfully designate Plaintiffs, and those similarly situated, as exempt employees under the FLSA and applicable state wage statutes, thereby denying Plaintiffs full and appropriate compensation. (ECF No. 68, ¶ 39.)

On November 19, 2017, this Court dismissed all out-of-state defendants for want of personal jurisdiction. (ECF No. 121.) Presently before the Court are two Motions to Dismiss the Second Amended Complaint, as filed by the only remaining defendants in this action – Defendant DNC and Defendant PDP. (ECF Nos. 79 and 84.) Defendant DNC argues Plaintiffs fail to establish DNC Services Corporation as Plaintiffs' employer (ECF No. 84, p. 4), and both Defendants argue Plaintiffs fail to establish Plaintiffs' coverage by the Fair Labor Standards Act. (ECF No. 84, p. 14; ECF No. 79, p. 12.) Plaintiffs filed a timely consolidated Response in

Opposition to both Motions (ECF No. 90), and both Defendant DNC and Defendant PDP timely filed Replies. (ECF Nos. 97 and 101.) The Court considers all the foregoing and details its conclusions below.

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). After the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## DISCUSSION

The crux of Plaintiffs' Second Amended Complaint are claims against Defendants for violations of the FLSA's overtime provision. The FLSA requires employers to pay overtime wages to all covered employees who work in excess of forty hours in a given workweek. 29

U.S.C. § 207(a)(1). Defendants DNC and PDP challenge the sufficiency of the pleadings to establish viable FLSA claims, which the Court considers herein.

I. **The Second Amended Complaint Fails to Establish Defendant DNC as the Employer of any Named Plaintiff.**

Defendant DNC challenges the sufficiency of the pleadings to establish DNC Services Corporation as the employer of any one of Named Plaintiffs or those similarly situated. (ECF No. 84, p. 4.) In the Second Amended Complaint, Plaintiffs allege that Defendant DNC was "vertically integrated" with the state democratic parties, and as a result, jointly employed all plaintiff-organizers. (ECF No. 68, ¶ 99.) The FLSA recognizes that a plaintiff "may stand in the relation of an employee to two or more employers at the same time," and encourages courts to assess "all the facts" of a particular case to determine defendants' employer status. 29 C.F.R. § 791.2(a). To determine whether a given defendant qualifies as a "joint employer" for the purposes of FLSA liability, courts in the Third Circuit primarily consider four factors: (1) the defendant's authority to hire and fire employees; (2) the defendant's authority to promulgate work rules and assignments, and set conditions of employment; (3) defendant's involvement in day-to-day supervision of employees, including employee discipline; and (4) defendant's control over employee records. In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012). After thorough review of the pleadings and the applicable standard, this Court agrees that the facts alleged are insufficient to establish Defendant DNC as Plaintiffs' joint employer.

    A. **Joint Employer Status**

As it relates to the first factor, this Court finds no indication in the record that Defendant DNC had the authority to hire or fire any of the field organizers employed by the state democratic parties. Plaintiffs allege that Defendant DNC "directed" the state democratic parties

to hire and retain field organizers, (ECF No. 68, ¶ 39), but allege no actual involvement by DNC in the interviewing, hiring, or onboarding process. There are no facts to suggest that Defendant DNC reviewed potential hires' applications, attended interviews with prospective employees, or placed DNC hires in employment positions within the state democratic parties. Without more, that individual state parties independently recruited and hired Plaintiffs at Defendant DNC's behest is insufficient to demonstrate authority to hire or fire.

The Court is similarly unpersuaded by the allegations in support of the second Enterprise factor, namely the defendant's "authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours." In re Enterprise, 683 F.3d at 469. Plaintiffs allege that Defendant DNC directed the state parties as to the job qualifications and duties of organizer-employees and directed the state parties to classify the organizers as over-time exempt. (ECF No. 68, ¶ 39.) Plaintiffs do not allege, however, that Defendant DNC was involved in determining Plaintiffs' hourly compensation rate, benefit package, or work schedule. Cf. In re Enterprise, 683 F.3d at 466 (noting that the defendant indirectly supplied administrative services to its subsidiary, including employee benefit packages). Nor do Plaintiffs allege that Defendant DNC authored and distributed employee handbooks or manuals. Cf. In re Enterprise, 683 F.3d at 466 (noting that the defendant's human resources department provided training materials and performance review guidelines to its subsidiaries). Even where the record revealed each of these facts, the Enterprise court still affirmed the district court's holding that the defendants were not the plaintiffs' joint employers. In re Enterprise, 683 F.3d at 470. Thus, in the absence of any such allegations, this Court certainly cannot find that the second Enterprise factor weighs in favor of a finding of joint employment.

Plaintiffs advance absolutely no evidence in support of the third or fourth Enterprise factors. To the contrary, Plaintiffs essentially plead that the state democratic parties were entirely self-governing. (ECF No. 68, ¶ 32-38) (alleging that Defendants PDP, FDP, NCDP, MODP, VDP, ADP, and MIDP are "responsible for governing" [their respective] party and "rais[e] money, hir[e] staff, and coordinat[e] strategy to support candidates" throughout their respective states.). There are no facts that would suggest any interaction between Defendant DNC and the plaintiff-organizers, let alone significant control by Defendant DNC over Plaintiffs' day-to-day employment experience. There are similarly no facts that plead centralized control by Defendant DNC over any of Plaintiffs' "payroll, insurance, ta[x]" or disciplinary records. See In re Enterprise at 469 (describing the fourth Enterprise factor).The factual record therefore overwhelmingly militates against a finding of sufficiency as it relates to Enterprise factors three and four.

The Enterprise court cautioned against blind application of the Enterprise factors, and instead instructed a thorough consideration of "all relevant evidence." In re Enterprise, 683 F.3d at 469. Even looking beyond the allegations specifically related to the delineated factors, this Court finds nothing in the record that supports finding an employment relationship between Defendant DNC and the plaintiff-organizers.  At best, the facts before the Court reflect a relationship of willful and mutual collaboration between the state and national democratic parties, which is not itself enough to satisfy Enterprise and qualify Defendant DNC as Plaintiffs' employer.

  **B.**  **Single Employer Status**

In addition to arguing for joint employer status, Plaintiffs further allege that Defendant DNC and the individual state parties functioned as a "single employer" over the plaintiff-

organizers. (ECF No. 68, ¶ 12.) To this end, Plaintiffs essentially advance the same corporate enmeshment theory this Court rejected in its disposition of the foreign state parties' Motion to Dismiss for Want of Jurisdiction. While the standards for "alter ego" and "single employer" differ, the underlying considerations overlap significantly. The single employer test asks the court to consider (1) the interrelation of operations between the corporations; (2) whether the corporations share common management; (3) whether there was centralized control of labor relations; and (4) whether there existed common ownership or financial control. <u>Nesbit v. Gears Unlimited, Inc.</u>, 347 F. 3d 72, 84 (3d Cir. 2003). In the interest of brevity, this Court will refer the parties to its previous Memorandum for the Court's reasoning behind this second rejection of Plaintiffs' argument. Therein, this Court thoroughly examined each of the pleaded facts related to the aforementioned factors and concluded then, as it does now, that Plaintiffs' allegations are insufficient to find that Defendant DNC and the state parties functioned as one.

Having found that Plaintiffs fail to plead sufficient facts to establish Defendant DNC as Plaintiffs' employer, this Court finds that the Second Amended Complaint fails to state a claim against Defendant DNC upon which relief may be granted. Defendant DNC's Motion to Dismiss is granted.

II. **The Second Amended Complaint Fails to Establish Plaintiffs were Covered Employees under the Fair Labor Standards Act.**

Following dismissal of Foreign Defendants on jurisdictional grounds and dismissal of Defendant DNC on substantive grounds, the only remaining Defendant is Defendant PDP – Plaintiff Katz's former employer. Defendant PDP's primary argument in favor of dismissal is that Plaintiffs fail to plead FLSA coverage and therefore cannot prevail on a claim against Defendant PDP for alleged FLSA violations. (ECF No. 79, p. 12.) A FLSA claim cannot proceed

absent a showing that either the employee's or the employer's activities fall within the Act's protection. Razak v. Uber Techs. Inc., No. 16-573, 2016 U.S. Dist. LEXIS *1, *14 (E.D. Pa. October 7, 2016). Upon consideration of the facts alleged in the Second Amended Complaint, and for the reasons that follow, this Court finds that Plaintiffs fail to establish either individual or enterprise coverage under the FLSA.

### A. Individual Coverage

Individual coverage is limited to employees "who in any workweek [are] engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). To demonstrate eligibility for individual coverage, the employee "must be directly participating in the actual movement of persons or things in interstate commerce." Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006). "This strict requirement effects the [FLSA's] legislative purpose to leave local business to the protection of the state." Dean v. Pac. Bellwether, LLC, 996 F. Supp. 2d 1044, 1048 (D. N. Mar. I. 2014) (citing Walling v. Jacksonville Paper, Co. 317 U.S. 564, 572 (1943)).

From the alleged facts, it is apparent that the majority of Plaintiffs' work as field organizers was comprised of intrastate activities. Plaintiffs nevertheless allege that their engagement in interstate commerce was sufficient to confer individual coverage under the FLSA. (ECF No. 90, p. 27.) Plaintiffs' argument for individual coverage is premised on three aspects of Plaintiffs' employment with their respective state democratic parties. First Plaintiffs allege that organizers' job duties included making calls to out-of-state contacts. (ECF No. 68, ¶ 102.) Plaintiffs argue that this aspect of their work constituted interstate communication sufficient for FLSA coverage. (ECF No. 90, p. 26.) While the FLSA explicitly extends coverage to those employees who use instrumentalities of interstate commerce as part of their employment, the Act

8

couches its protection in the requirement that workers "*regularly* use the mails, telephone, or telegraph" to communicate across state lines. 29 C.F.R. § 779.103 (emphasis added); See also, 29 C.F.R. § 776.10(b). Plaintiffs fail to allege repeated, much less regular, interstate calls, and without more, the existing allegations are insufficient to establish FLSA individual coverage. See e.g. Reagor v. Okmulgee Cty. Family Res. Ctr., Inc., 501 F. App'x 805, 810 (10th Cir. 2012) (finding that the plaintiff failed to plausibly allege individual coverage in part because Plaintiff "[did] not assert that her use of the telephone was a regular and recurrent part of her duties.").

Second, Plaintiffs allege that organizers were required to input voter information into a central database accessible by both Defendant DNC and other out-of-state democratic parties. (ECF No. 68, ¶ 101.) Plaintiffs argue that by "accessing and entering data into the Votebuilder," Plaintiffs "provided information across state lines" during the course of their employment. (ECF No. 68, ¶¶ 101, 105.) The FLSA recognizes that interstate transmission of intelligence or information can constitute engagement in commerce for the purposes of individual coverage. 29 C.F.R. § 779.103. But Plaintiffs fail to cite a single case that holds intrastate use of a document that is accessible by out-of-state actors constitutes interstate "*movement* of persons or things" as contemplated by the Act. Plaintiffs do not allege they mailed, emailed, or otherwise actively transported the Votebuilder information across state lines. To the contrary, Plaintiffs fail to allege any facts related to the means by which Votebuilder is accessed and used by the state parties. By Plaintiffs' logic, any employee who ever saved a document to ICloud or ever uploaded a document to the internet would come under the FLSA's protection for having "moved" information across state lines. Without binding authority to say otherwise, the Court finds this allegation too vague to support a finding of individual coverage under the FLSA.

9

Finally, Plaintiffs allege that by updating and maintaining Votebuilder, which is reportedly of commercial value to Defendans, Plaintiffs were sufficiently engaged in the "production of goods for commerce" to satisfy FLSA requirements for individual coverage. (ECF No. 90, p. 27.) "Employees whose work is closely related and directly essential to the production of goods for commerce are individually covered under the FLSA." Thorne, 448 F.3d at 1269 (citing 29 C.F.R. § 776.18(b)). Plaintiffs fail to provide any support – beyond conclusory statements – for their contention that intangibles like voter information could be considered a "good" within the meaning of the FLSA. And even if this Court were willing to consider an electronic database a "good," the pleadings are insufficient to establish how integral Plaintiffs work was to the production thereof. As was the case with Plaintiffs' prior alleged bases for individual coverage, Plaintiffs fail to allege any facts bearing on the extent to which Plaintiffs' work with Votebuilder is reasonably considered "closely related and directly essential" to the database's production. Without more, this Court cannot reasonably find sufficient facts to support an argument for individual coverage here either.

Plaintiffs' arguments in support of individual coverage are largely untenable. The Second Amended Complaint fails to adduce sufficient factual content to establish Plaintiffs as individually covered under the FLSA. Accordingly, the Court now turns to the sufficiency of the pleadings to establish FLSA coverage by other means.

### B. Enterprise Coverage

Enterprise coverage extends to any employee who "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). As a threshold matter, this Court finds that Plaintiffs fail to establish that Defendant PDP – a Section 527 nonprofit – functioned as an "enterprise" within the meaning of the FLSA. For Defendant PDP to

be considered an enterprise, it must satisfy three elements: 1) PDP must engage in related activities; 2) there must be unification of operation or common control; and 3) there must be a common business purpose. Reich v. Gateway Press,13. F.3d 685, 694 (3d Cir. 1994). As it relates to an alleged "business purpose," that Defendant PDP is a tax-exempt nonprofit is not, itself, dispositive. Reagor v. Okmulgee County Family Res. Ctr., Inc., 501 F. App'x 805, 809 (10th Cir. 2012) ("A non-profit may engage in business activities and therefore be an enterprise."). But when assessing the alleged business purpose of a nonprofit, the Court's focus is tailored. "[T]he court's inquiry must focus on whether the nonprofit enterprise is '*primarily* engaged in competition in the public with ordinary commercial enterprises." Genarie v. PRD Management, No. 04-2082, 2006 U.S. Dist. LEXIS 9705, *1 *30 (E.D. Pa. February 17, 2006)(internal citations omitted) (emphasis added); See also, Reagor, 501 F. App'x at 809 ("But the question is whether the non-profit is primarily engaging in competition in the public with commercial enterprises.") (internal citations committed).

By Plaintiffs' own account, Defendant PDP's primary focus is the election of democratic candidates to local, state, and national office. (ECF No. 68, ¶ 32.) Nothing in the Second Amended Complaint would suggest that commercial competition was a primary, secondary, or even tertiary endeavor for Defendant PDP. But even if this Court were to find that the pleaded facts established Defendant PDP as "enterprise," the pleadings fail to establish that Defendant PDP is the kind of enterprise to which FLSA coverage would extend. For enterprise coverage, the FLSA requires that the enterprise in question "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). Plaintiffs allege that through sale of merchandise and sale of access to Votebuilder, the Defendants

11

exceeded $500,000 in revenue. (ECF No. 68, ¶¶ 108, 110.) But Plaintiffs fail to allege Defendant PDP's annual gross volume of sales, individually.

The Court would only accept Defendants' combined revenue as satisfying the threshold if the Court found that Defendants operated as a single enterprise. It does not so find. The enterprise test detailed above is used to "determine whether to combine the dollar figures" of "a group of affiliated businesses for the purposes of applying the FLSA." Reich, 13 F.3d at 695. As addressed both above with respect to the single entity test, and more extensively in this Court's previous Memorandum addressing Foreign Defendants' Motion to Dismiss, this Court finds the pleadings insufficient to establish unified operation or common control between Defendant DNC and the individual state democratic parties. As such, for Defendant PDP's employees to benefit from enterprise coverage under the FLSA, Plaintiffs must allege that Defendant PDP's annual gross revenue is at least $500,000. The Second Amended Complaint is bereft of any facts from which this Court could reasonably glean the amount of money Defendant PDP allegedly made off the sale of merchandise or voter information. As a result thereof, Plaintiffs fail to plead sufficient facts for a finding of enterprise coverage.

Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such entitlement with its facts." Richardson v. Bezar, No. 15-772, 2015 U.S. Dist. LEXIS 135294 *1, *6 (E.D. Pa. October 5, 2015) (citing Fowler v. UPMC Shadyside, 578 F.3d 203, 2011 (3d Cir. 2009)) (internal quotations omitted). Plaintiffs, even on their third try, fail to adduce sufficient facts to demonstrate the plaintiff-organizers were covered – as individual employees or as employees of a qualifying enterprise – under the FLSA. In the absence of FLSA coverage, the Court must dismiss Plaintiffs' claims against Defendant PDP for violations of the FLSA's overtime provision. Having dismissed Plaintiffs sole federal claims, this

Court declines to exercise jurisdiction over Plaintiffs' state law claims. Defendant PDP's Motion is granted and the above captioned action is dismissed.

**CONCLUSION**

For all the foregoing reasons, this Court finds the pleadings insufficient to state a claim against either Defendant. The Court is reluctant to grant Plaintiffs a fourth "bite at the apple," but precedent dictates that amendment be permitted wherever it is not clearly inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, the Court will grant Defendants' Motions, without prejudice, and with leave to amend within fourteen days.

A corresponding Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II    J.