**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BETHANY KATZ, on behalf of herself and all those similarly situated, 325 Thornbrook Ave. Rosemont, PA 19010 <br><br><br> Plaintiffs, <br><br> v. <br><br> DNC SERVICES CORPORATION d/b/a DEMOCRATIC NATIONAL COMMITTEE 430 South Capitol St. Southeast Washington, DC 20003 <br><br> and <br><br> PENNSYLVANIA DEMOCRATIC PARTY 1801 Market St. Ste. 1500 Philadelphia, PA 19103 <br><br> Defendants. | INDIVIDUAL, COLLECTIVE, AND CLASS ACTION COMPLAINT <br><br> DOCKET NO: 16-5800 <br><br><br> **JURY TRIAL DEMANDED** |

**THIRD AMENDED**
**INDIVIDUAL, COLLECTIVE, AND CLASS ACTION CIVIL COMPLAINT**

Named Plaintiff Bethany Katz ("Named Plaintiff") individually and on behalf of herself and those similarly situated, by and through undersigned counsel, hereby complains as follows against Defendants DNC Services Corp. d/b/a Democratic National Committee ("Defendant DNC") and the Pennsylvania Democratic Party ("Defendant PDP").

This case seeks compensation on behalf of all Organizers who were paid directly by Defendant PDP and who worked for Defendants tirelessly while being denied overtime compensation guaranteed by federal and state law. Specifically, Named Plaintiff alleged that she

1

and other Organizers were employed in non-exempt positions to assist in a nationally coordinated Democratic "ground game" which sought to increase the Democratic vote.

Even while Defendants campaigned to enhance and expand the ability of low and middle income people to be paid a fair salary and overtime, those same principles were ignored in denying their own Organizers overtime pay for the extremely long hours required by campaign work. Organizers are dedicated people who worked for Defendants because they were and remain committed to Defendants' platform, program, and ideals; they bring this lawsuit not to challenge those ideals but to vindicate them, and in so doing, do their part to ensure the continued viability of the rights created by and enshrined in the Fair Labor Standards Act of 1938 and the other laws alleged herein to be violated.

The Organizers' job duties consisted of assisting in voter registration, building and maintaining *Votebuilder,* a nationwide database of personal and voting information, handing out paperwork and forms to potential voters in person, reminding potential voters of deadlines, and soliciting volunteers.  Organizers were expected and did work long hours and weekends, and regularly worked in excess of 80 to 90 hours per workweek.  Rather than hiring additional staff to reduce the extraordinary workload assigned to Organizers, and rather than paying overtime as required by the FLSA and Pennsylvania state law, Defendants instead willfully engaged in a course of conduct in violation of state and federal law by requiring Organizers to work long hours without providing any overtime compensation to Organizers.  Defendants unlawfully and erroneously treated Organizers as exempt employees under state and federal law.

### INTRODUCTION

1.     Named Plaintiff has initiated the instant action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA").  Named Plaintiff asserts that Defendants erroneously designated Named Plaintiff and those similarly situated ("Collective Action Plaintiffs") as

exempt employees under the FLSA, and consequently, failed to pay overtime premiums for hours worked beyond 40 per workweek by Named Plaintiff and Collective Action Plaintiffs.

2.      Additionally, Named Plaintiff Katz has initiated the instant action to redress violations by Defendants of the Pennsylvania Minimum Wage Act ("PMWA") and for civil conspiracy.  Named Plaintiff Katz asserts that Defendants erroneously treated Named Plaintiff Katz and other similarly situated Pennsylvania employees ("Pennsylvania Plaintiffs") as exempt employees under the PMWA, and consequently, failed to pay overtime premiums for hours worked beyond 40 per workweek by Named Plaintiff Katz and Pennsylvania Plaintiffs, and that Defendants conspired to deny Named Plaintiff Katz and Pennsylvania Plaintiffs their lawful wages due.

## JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FLSA, 29 U.S.C. § 201 *et seq.*  This Court has supplemental jurisdiction over Plaintiffs' state law claims because those claims arise out of the same nucleus of operative fact as the FLSA claims.

4.      This Court may properly maintain personal jurisdiction over Defendant PDP because Defendant PDP is domiciled in the Commonwealth of Pennsylvania.

5.      This Court may properly maintain personal jurisdiction over Defendant DNC because Defendant DNC regularly conducted and conducts business in this Commonwealth such that assertion of jurisdiction over Defendant DNC comports with traditional notions of fair play and substantial justice.  Additionally, the acts and transactions complained of herein arise out of the actions of the Defendant DNC in the Commonwealth of Pennsylvania.

6.      Venue is properly laid in this judicial district pursuant to 29 U.S.C. § § 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

7.      Named Plaintiff Katz is an adult individual with an address as set forth above in the caption.

8.       "Collective Action Plaintiffs" refers to individuals who are current and/or former employees of Defendants who were paid directly by the Pennsylvania Democratic Party who held the job title of "Organizer," "Field Organizer," and/or who performed job duties consistent with that of an "Organizer" and/or "Field Organizer" within the last three (3) years.

9.      "Pennsylvania Plaintiffs" refers to individuals who are current and/or former employees of Defendants who held the job title of "Organizer," "Field Organizer," and/or who performed job duties consistent with "Organizer" and/or "Field Organizer" in Pennsylvania within the last three (3) years.

10.      Defendant DNC is responsible for governing the Democratic National Party, and raises money, hires staff, and coordinates strategy to support candidates throughout the United States for local, state, and national office and, at all times relevant hereto, directed the operations of many state parties, including Defendant PDP.

11.      Defendant PDP at all times relevant hereto was responsible for governing the Pennsylvania Democratic Party.  At the direction of Defendant DNC and non-party Hillary For America, Defendant PDP raised money, hired staff, and coordinated strategy to support candidates throughout the Commonwealth of Pennsylvania for local, state, and national office.

## JOINT/SINGLE EMPLOYER

12.   In the spring and summer of 2016, the DNC directed certain Democratic state parties, including the PDP, and the Organizers employed by Defendant PDP, to focus on old-school organizing, and to get them to do registration drives and voter database improvements.

13.   The DNC specifically provided certain Democratic state parties, including the PDP, with the funds to hire Organizers that were directed to, among other things, update individual voter information for the DNC.

14.   The Hillary For America ("HFA") and the Hillary Victory Fund ("HVF") essentially controlled all the funding for the DNC, both prior to and after Hillary Clinton received the nomination.

15.   The HVF was a joint fundraising entity entered into between Defendants, HFA, and more than 30 state democratic parties.

16.   HFA was the entity responsible for running Hillary's campaign, and worked in conjunction with Defendants to utilize Defendant PDP's Organizers to get Hillary elected.

17.   HFA and HVF essentially controlled all of the activities of the DNC, directing it to push downhill to the State parties, including the PDP, to focus on the national elections, and on getting Hillary elected.

18.   HFA signed a Joint Fundraising Agreement with the DNC in August 2015 setting up the HVF and providing HFA with operational control over the DNC through the 2016 national election.

19.   Pursuant to the joint fundraising agreement between HFA and the DNC, the HFA would control the DNC's finances, strategy, money raised, and staffing decisions.

20.     The DNC, at the direction of HFA and HVF, directed certain state parties, including the PDP, to have the Organizers perform the functions that they performed.

21.     During the 2016 presidential campaign, HFA exercised control over Defendant DNC, which in turn controlled Defendant PDP.  HFA and Defendant DNC maintained the ability to direct the day-to-day activities of Defendant PDP's employees, including Named Plaintiff and other Organizers.  As an example of this control, Named Plaintiff was required, as part of her job duties as an Organizer for Defendant PDP, to call voters in Florida and North Carolina in support of HFA's and Defendant DNC's effort to get Hillary elected in those states.

22.     The DNC also determined how much each State Party should pay the Organizers in each State, including Pennsylvania, thus coordinating a pay scale of either $3,000 per month – as it was in Pennsylvania -- or $2500 per month for each Organizer. The amounts paid by the States was one or the other, which was not coincidence, but was in fact directed by the DNC.

23.     In further support of the control exercised by HFA and the HVF over the DNC, and thus the DNC over PDP, when plaintiff Katz requested to be paid overtime for the work she performed, Defendant PDP advised it needed to get permission from "Brooklyn" (the code name for the HFA and HVF) to provide an answer.

24.     Further proof of the control exercised by the DNC over the State parties, including the PDP, is that essentially all the monies raised by the State parties, including the PDP, was funneled to the DNC and Brooklyn through the HVF.

25.     The Joint funding agreement between HFA and the DNC provided that HFA personnel will be consulted and have joint authority over strategic decisions over the staffing, budget, expenditures, and general election related communications, data, technology, analytics, and research.

6

26.     To implement the Joint Funding agreement, the DNC had to direct the State parties to cooperate with Brooklyn, which meant that the DNC was directing the employees of Defendant PDP, including Named Plaintiff and other organizers.

27.     On July 16, 2016 the Clinton campaign released its list of staffers for HFA as well as the "coordinated party campaign" for Pennsylvania. In addition to HFA staff focusing on Pennsylvania, there was a "PA Coordinated Campaign" with Ryan Matthews as the Pa Victory 2016 Coordinated Campaign Director, HFA employee Victoria Perrone as the Pa Victory 2016 Coordinated Campaign Operations Director, and HFA employee Chelsie Ouellette as the Pa Victory 2016 Organizing Director, among others. Chelsie Ouellette, Victoria Perrone, and Ryan Matthews were instrumental in hiring and training the Organizers to work at the direction of DNC and PDP.

28.     Victoria Perrone offered Named Plaintiff employment as an Organizer for Defendant PDP.  Ms. Perrone copied Ryan Matthews on the offer letter.

29.     On June 3, 2016, Chelsie Ouellette, then employed by HFA, sent Named Plaintiff and other organizers a welcoming email, entitled "Welcome to Pennsylvania" and directing them to attend a training session and to bring necessary documents for their employment and payroll.

30.     Ms. Ouellette, while employed by HFA, ran the training session and informed Named Plaintiff and other Organizers how to perform their job duties and explained to them during training that their schedule required them to work 7 days per week and well in-excess of 40-hours per week.

31.     Ms. Ouellette was dual-employed by HFA and Defendant PDP as the Organizing Director and in that role she led and managed a staff of over 400 individuals who were directly

employed by Defendant PDP and/or HFA, including Named Plaintiff and all other Organizers directly employed by Defendant PDP.

32.     Other HFA employees presented during the training session, and trained Named Plaintiff and other organizers how to perform their job.

33.     The coordinated campaign in Pennsylvania operated under the brand Hillary for Pennsylvania, and operated a single Facebook site and Twitter account, @HillaryforPA.

34.     The two directors of the Pennsylvania coordinated campaign were HFA employees Corey Dukes as the State Director and DNC/HFA employee Erin Wilson, the Deputy State Director.

35.     The Pennsylvania coordinated campaign also employed HFA National Regional Director of Organizing Victoria Zyp on the ground in Pennsylvania as part of the Pennsylvania campaign leadership team charged with overseeing and directing the Pennsylvania campaign efforts, include the work of the Organizers.

36.     The Pennsylvania coordinated campaign also employed DNC Regional Operations Director Abby Compton on the ground in Pennsylvania as part of the Pennsylvania campaign leadership team charged with overseeing and directing the Pennsylvania campaign efforts, include the work of the Organizers.

37.     The Pennsylvania coordinated campaign also employed DNC employee Eden Tesfaye as Director of Special Projects, who worked on the ground in Pennsylvania as part of the Pennsylvania campaign leadership.

38.     The Pennsylvania coordinated campaign also employed DNC employees Sean Meloy and Aaron Weinberg as specific constituent outreach directors.

39.     The Pennsylvania coordinated campaign also employed HFA employee Trip Yang and DNC employees Tim Hegedus, Robin Wallace, and Gabe Garbowit as Out-Of-State Organizers to bring Delaware and New Jersey volunteer canvassers into Pennsylvania, necessitating interaction and coordination with the work of the Organizers.

40.     The Pennsylvania coordinated campaign also employed DNC employee Joe DiSimone as part of its get-out-the-vote efforts.

41.     The Pennsylvania coordinated campaign relied on Organizers, including Named Plaintiff Katz, who were ostensibly employed by Defendant PDP, to reach its strategic goals.

42.     As a result, DNC employees and HFA employees directed the hiring of, oversaw, and directed the work of Organizers employed directly by Defendant PDP, including Named Plaintiff.

43.     Defendant PDP at times deferred hiring and termination decisions of Organizers to HFA and Defendant DNC.

44.     Defendant DNC coordinates and directs strategic initiatives directly with Defendant PDP, including in strategizing and focusing on voter registration drives, get-out-the-vote initiatives, canvassing, and phone calling.  Defendant DNC's coordination and direction includes directing Defendant PDP to hire and retain organizers to assist in voter registration drives, get out the vote initiatives, canvassing, and phone calling.  Defendant DNC further directs Defendant PDP regarding the qualifications and job duties of organizers, and further directs Defendant PDP to classify organizers as overtime-exempt under state and federal law.

45.     Upon information and belief, many of the strategic initiatives for which organizers of PDP, as well as other state democratic parties, including Named Plaintiff, perform

job duties are initiatives which are designed and implemented by Defendant DNC and which are performed to benefit Defendant DNC.

46.     Upon information and belief, Defendants share resources and funds to assist in Defendant DNC's nationally coordinated campaign.

47.     Defendant DNC participated in hiring organizers for Defendant PDP by posting a job application for field organizers on its website and sending the job application to its national email list of supporters and former employees.

48.     Specifically, on or about May 13, 2016, Defendant DNC sent a mass email to its email list, from Amy K. Dacey, the DNC's Chief Executive Officer, stating that the DNC was looking for Field Organizers to help elect Democrats in key battleground states and providing a link to an online job application. Pennsylvania was one of, if not *the*, key battleground state in the 2016 election.

49.     On information and belief, Defendant DNC participated in hiring organizers for Defendant PDP by vetting, reviewing, and forwarding completed organizer job applications to Defendant PDP.

50.     On May 21, 2016, the Chairwoman of Defendant DNC Debbie Wasserman Shultz admitted that the DNC was providing "critical staff salaries" to the state Democratic parties, including upon information and belief, Defendant PDP, and was training state party staff in key communications, digital, and organizing skills.

51.     Defendant DNC controlled Defendant PDP by providing guidance and training through the DNC's sub-committee ASDC (Association of State Democratic Chairs), providing weekly conference calls to Defendant PDP and other state parties related to data management,

HR employment policies, including the paying of minimum wage, overtime, and the use of volunteers, budgeting, training, *VoteBuilder,* and constituency outreach.

52.     Specifically, in an August 25, 2016 conference call (which was recorded and is publicly available) between Defendant DNC and the state parties, including Defendant PDP, the DNC's attorneys Neil Reiff, Graham Wilson, and Ben Stafford provided HR policy guidance to the state parties, explained that federal wage and hour law applied to individuals directly employed by the state parties, that they are entitled to minimum wage under federal wage and hour law, and they are entitled to premium overtime pay under federal wage and hour law unless they are exempt, that time must be paid for if supervisors and managements suffer or permit the work, and that work means the exertion of labor on behalf of the state party's behalf.

53.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

54.     Named Plaintiff brings this action for violations of the FLSA as an individual action and as collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were employed as organizers or in job titles with similar duties, who were paid directly by Defendant PDP and who were classified by Defendants as "exempt" from the overtime requirements of the FLSA.

55.     Named Plaintiff and Collective Action Plaintiffs are similarly situated, have substantially similar non-managerial job duties, have substantially similar pay provisions, and are all subject to Defendants' unlawful policies and practices as described herein.

56.     There are numerous similarly situated current and former employees of Defendants who were compensated improperly for overtime work in violation of the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant lawsuit and the opportunity to join the present lawsuit.

57.     Similarly situated employees are known to Defendants, are readily identifiable by Defendants, and can be located through Defendants' records.

58.     Therefore, Named Plaintiff should be permitted to bring this action as a collective action for and on behalf of herself and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

59.     Named Plaintiff Katz brings this action for violations of the Pennsylvania Minimum Wage Act and for civil conspiracy as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who performed worked or work as organizers or in similar positions in the Commonwealth of Pennsylvania who were treated as exempt from overtime by Defendant DNC and/or Defendant PDP and who worked in this capacity at any point in the three (3) years preceding the date the instant action was initiated.

60.     The class is so numerous that the joinder of all class members is impracticable. Named Plaintiff Katz does not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is at least forty.

61.     Named Plaintiff Katz's claims are typical of the claims of the Pennsylvania Plaintiffs, because Named Plaintiff Katz, like all Pennsylvania Plaintiffs, was an employee of Defendants within the last three years in Pennsylvania, held the job title of "organizer," was

classified by Defendants as an exempt employee, and was not paid overtime premiums for hours worked beyond 40 per workweek.

62.     Named Plaintiff Katz will fairly and adequately protect the interests of the Pennsylvania Plaintiffs because Named Plaintiff Katz's interests are coincident with, and not antagonistic to, those of the class.  Named Plaintiff Katz has retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

63.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendant PDP's records.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously.   Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.   Furthermore, the amount at stake for individual putative class members may not be great enough to enable all the individual putative class members to maintain separate actions against Defendants.

65.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.   Among the questions of law and fact that are common to the class are whether the duties of organizers qualify for any recognized exemption to overtime.

## **FACTUAL BACKGROUND**

66.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

67.     Named Plaintiff Katz was directly employed by Defendant PDP as a " field organizer" (a/k/a "organizer") from June of 2016 through August of 2016.

68.     Defendant DNC was a single employer/alter ego with non-party HFA from at least August 2015 through November 2016.

69.     Defendant PDP is vertically integrated with Defendant DNC and non-party HFA, and consequently, Defendant DNC and non-party HFA are a joint employer of all organizers employed by Defendant PDP.

70.     Collective Action Plaintiffs and the Pennsylvania Plaintiffs ("Class Plaintiffs") worked/work for Defendants during the last three years as organizers and/or field organizers.

71.     Named Plaintiff's job duties consisted of making phone calls to voters, assisting in voter registration efforts, soliciting volunteers, and canvassing. Named Plaintiff's job duties further included accessing and entering data into the *Votebuilder*.

72.     Named Plaintiff's job duties included making calls to individuals who were outside the state Named Plaintiff's were calling from.

73.     Named Plaintiff made several calls per week to individuals who were out of state when contacted, and Named Plaintiff then communicated with them across state lines.

74.     Named Plaintiff and other organizers were required, as part of their job duties, to post on Twitter and Facebook at least once per week to promote democratic candidates and solicit volunteers.   Named Plaintiff and other organizers were required to use hashtag "#ProudtobePA" when they posted.  These postings were made utilizing interstate wires and the internet and published to individuals throughout the United States.

75.     Additionally, at the direction of her supervisors, Named Plaintiff called voters in North Carolina and Florida to have Florida and North Carolina voters answer survey questions to

assist in predicting who they would vote for in the upcoming election. These calls were made via HubDialer, an automated dialer system which calls the voters automatically and then displays information about the callers on a computer screen. The answers to those questions were then entered into the computer by Named Plaintiff and other organizers, and that information was submitted to Defendants' nationwide database, which Named Plaintiff believes to be *Votebuilder*.

76.     *Votebuilder* is a national online database which contains information about every registered voter in each state. *Votebuilder* is exclusive to the Democratic organization and is used by every state Democratic Party. *Votebuilder is* standardized across states and campaigns.

77.     Among the valuable information provided in *Votebuilder* is the "likely party" that the voter will vote for in the upcoming election. *Votebuilder* determines the likely party based on certain information, including responses to survey questions which Named Plaintiff and other organizers asked of voters and recorded into *Votebuilder.*

78.     Upon information and belief, *Votebuilder* is maintained in Washington DC.

79.     By entering data into the *Votebuilder* system, Named Plaintiff provided information across state lines while employed by Defendants. Specifically, the information provided by Named Plaintiff was transmitted over state lines via interstate wire and internet communications.

80.     Specifically, Named Plaintiff, while in the Commonwealth of Pennsylvania, called voters both in and out of Pennsylvania, and would then record information about those voters into *Votebuilder*.

81.     Through *Votebuilder*, Named Plaintiff provided the information to Defendant DNC and other democratic parties, along with Defendant PDP, by moving such information through her computer to the nation-wide database.

82.     The information Named Plaintiff and other organizers entered into *Votebuilder* was then sold and licensed to candidates running for Democratic office throughout the United States – both inside and outside of Pennsylvania.

83.     Without the information entered by Named Plaintiff and other organizers, *Votebuilder* would have significantly less value and licensing and use fees would be less.

84.     *Votebuilder* is a common database maintained by Defendants and jointly operated and updated by all Defendants.

85.     Defendant DNC licensed *Votebuilder* to different campaigns – including in 2016, Hillary for America and Bernie 2016 – and licensed the system on behalf of multiple state democratic parties, including Defendant PDP.

86.     While the exact licensing fees are unknown to Plaintiff at this time, the licensing fees collected by Defendants in licensing the information entered into the system by Named Plaintiff and other organizers are believed to be well into the millions of dollars and is sold to candidates throughout the United Sates.   For example, Bernie 2016 entered into a license agreement with Defendant DNC to utilize the information in *Votebuilder* for the 2016 campaign.

87.     In the licensing agreements with candidates, Defendant DNC identified itself as the owner of the voter information which is contained in *Votebuilder.*

88.     The licensing agreements provides certain candidates the use of information collected by Named Plaintiff and other organizers in Pennsylvania, along with information collected by organizers in other states.

89.     The portion of the agreement which has been made public shows that Bernie 2016 paid $120,000 to license the *Votebuilder* information for information collected in Iowa *alone*. *See* Agreement Between the DNC and Presidential Campaign Committees Regarding Use of DNC National Voter File Data, attached as Ex. A.

90.     *Votebuilder* cuts down on the time and money a candidate committee would have to spend acquiring data allowing them to spend precious time on other campaign activities.

91.     Defendants sell merchandise to the public, including T-shirts, hats, buttons, water bottles, posters, signs, and other items.

92.     Such items are sold to customers throughout the United States and are sold through online storefronts which rely on interstate wires and interstate communication.

93.     Additionally, Defendants were participants in the HVF enterprise, which operated and sold merchandise through the Hillary Clinton online store, http://shop.hillaryclinton.com/ (available at https://web.archive.org/web/20160402080202/http://shop.hillaryclinton.com/), the revenue from same being redistributed to Defendants' accounts from the HVF enterprise.

94.     On information and belief, Defendants' joint revenue from their joint merchandising sales exceeded $500,000 in 2016.

95.     On information and belief, Defendant PDP's annual revenue from selling merchandise exceeded $500,000 in 2016.

96.     On information and belief, Defendant DNC's annual revenue from selling merchandise exceeded $500,000 in 2016.

97.     Defendants license and sell access and data from *Votebuilder* to candidates and other third party organizations.

98.     Upon information and belief, the revenues generated from licensing and data sales from *Votebuilder* exceeded $500,000 in 2016.

99.     Defendants are not a recognized charity by the IRS and do not engage in charitable pursuits.

100.    Defendants also competed with private for-profit canvassing operations, for instance, the for-profit private company Grassroots Campaign, Inc.

101.    Grassroots Campaign Inc. employs organizers to canvass, increase visibility, and sign-up members for progressive groups, organizations, and political campaigns, and charges these groups, organizations, and campaigns for this service.

102.    Named Plaintiff's job duties did not relate to the management or general business operations of Defendants.

103.    Named Plaintiff's job duties did not allow the use of discretion and independent judgment with respect to matters of significance.

104.    Named Plaintiff had non-exempt job duties at all time while employed by Defendants.

105.    Collective Action and Class Plaintiffs' job duties consisted of making phone calls to voters, assisting in voter registration efforts, soliciting volunteers, and canvassing.

106.    Collective Action and Class Plaintiffs' job duties did not relate to the management or general business operations of Defendants.

107.    Named Plaintiff regularly worked more than 12 hours per day and at times worked more than 14 hours per day.

108.    Named Plaintiff regularly worked 7 days per workweek.

109.    Named Plaintiff regularly worked more than 80 hours per workweek.

110.    Defendants paid Named Plaintiff Katz a salary of $3,000 per month, and paid no extra compensation for any hours worked beyond 40 per workweek.

111.    Upon information and belief, Collective Action and Class Plaintiffs regularly worked more than 40 hours per workweek.

112.    Upon information and belief, Defendants paid Collective Action and Class Plaintiffs a salary, and paid no extra compensation for any hours worked beyond 40 per workweek.

113.    Defendants received a significant economic benefit in not paying extra compensation to Collective Action and Class Plaintiffs for any hours worked beyond 40 per workweek by lowering their wage costs.

114.    Defendants received a significant operational benefit by having Collective Action and Class Plaintiffs work beyond 40 hours per workweek without receiving additional overtime premium pay, as this allowed Collective Action and Class Plaintiffs to work significantly longer hours than they could have worked if Defendants had been paying an hourly overtime premium for all hours worked over 40 per workweek.

115.    Upon information and belief, Defendants intentionally and willfully failed to pay overtime premium pay in order to secure the economic and operational benefits outlined above.

**COUNT I**
**<u>Violations of the Fair Labor Standards Act</u>**
**(Failure to Pay Overtime)**
**Named Plaintiff and Collective Action Plaintiffs v. Defendants**

116.    The foregoing paragraphs are incorporated herein as if set forth in full.

117.    At all times relevant herein, Defendant PDP was vertically and horizontally integrated with Defendant DNC and third party HFA[1], and together exercised significant control

---

[1] Named Plaintiff has not brought suit against HFA.

over the terms and conditions of employment and day-to-day work of the Named Plaintiff and Collective Action Plaintiffs.

118.    Accordingly, Defendant PDP, Defendant DNC, and third-party HFA are joint employers of Named Plaintiff and Collective Action Plaintiffs under the FLSA.

119.    At all times relevant herein, Defendants were and continue to be an "employer" within the meaning of the FLSA.

120.    At all times relevant herein, Named Plaintiff and Collective Action Plaintiffs were/are "employees" within the meaning of the FLSA.

121.    The FLSA requires employers, such as Defendants, to compensate employees, such as Named Plaintiff and Collective Action Plaintiffs, overtime at 1.5 times their regular rate for hours worked beyond 40 per workweek.

122.    Defendants misclassified Named Plaintiff and Collective Action Plaintiffs as exempt from the overtime mandate of the FLSA.

123.    Named Plaintiff and Collective Action Plaintiffs regularly worked more than 40 hours per workweek.

124.    Defendants failed to pay any overtime premiums for work beyond 40 hours per workweek to Named Plaintiff and Collective Action Plaintiffs.

125.    Defendants willfully failed to compensate Named Plaintiff and Collective Action overtime compensation.

126.    As a result of Defendants' failure to pay overtime premiums for overtime worked to Named Plaintiff and Collective Action Plaintiffs, Defendants have violated and continue to violate the FLSA.

**COUNT II**
**Violations of the Pennsylvania Minimum Wage Act**

**(Failure to Pay Overtime)**
**Named Plaintiff Katz and Class Plaintiffs v. Defendants**

127.    The foregoing paragraphs are incorporated herein as if set forth in full.

128.    At all times relevant herein, Defendant PDP was vertically integrated with Defendant DNC and non-party HFA, making Defendant PDP, Defendant DNC, and non-party HFA joint employers under the PMWA.

129.    Defendants violated the PMWA by failing to pay overtime premiums for work in excess of 40 hours per workweek performed by Named Plaintiff and Pennsylvania Plaintiffs

130.    As a result of Defendants' conduct, Named Plaintiff and Pennsylvania Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

(1)    Defendants are a joint employer and/or single employer under the FLSA;

(2)    Defendants PDP and DNC are a joint employer and/or single employer under the PMWA;

(3)    The instant matter will be adjudicated on a class and collective basis on behalf of all individuals currently or formerly employed as organizers and field organizers directly employed by the PDP;

(4)    Defendants are to be prohibited from continuing to maintain their policies, practices or customs in violation of state laws and principles of equity;

(5)    Defendants are to compensate, reimburse, and make Named Plaintiff, Collective Action Plaintiffs, and Pennsylvania Plaintiffs should be accorded those benefits illegally withheld;

(6)    Named Plaintiff, Collective Action Plaintiffs and Pennsylvania Plaintiffs are to be awarded liquidated damages as applicable under the laws they are suing under;

(7)     Named Plaintiff, Collective Action Plaintiffs and Pennsylvania Plaintiffs are to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law;

(8)     Any and all other equitable relief which this Court deems fit.

Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
Joshua S. Boyette, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: February 16, 2018

## DEMAND TO PRESERVE EVIDENCE

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Named Plaintiff's, Collective Action Plaintiffs', and Pennsylvania Plaintiffs' employment, to Named Plaintiff's, Collective Action Plaintiffs', and Pennsylvania Plaintiffs' cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

22

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Justin L. Swidler, Esquire, of the law firm of Swartz Swidler, LLC, is hereby designated trial counsel.

Respectfully Submitted,

<u>/s/ Justin L. Swidler</u>
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417