IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETHANY KATZ, on behalf of herself and all those similarly situated,<br>  *Plaintiffs*,<br><br>  v.<br><br>DNC SERVICES CORPORATION, et al.,<br>  *Defendants*. | CIVIL ACTION<br>NO. 16-5800 |

**Jones, II  J.**                   **September 27, 2019**

## **MEMORANDUM**

Pending before the Court are Defendant DNC Services Corporation d/b/a Democratic National Committee (" Defendant DNC") and Defendant Pennsylvania Democratic Party's ("Defendant PDP") independent Motions to Dismiss the Third Amended Complaint ("TAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Named Plaintiff Bethany Katz ("Katz") seeks to represent a putative class of former field campaign organizers ("Organizers") in the 2016 presidential election who were allegedly denied overtime pay to which they were entitled in violation of the Fair Labor Standards Act ("FLSA" or "Act") and Pennsylvania Minimum Wage Act ("PMWA").[2] Defendants previously filed Motions to Dismiss the Second Amended Complaint (ECF Nos. 79 and 84), which the Court granted as to (1) Defendant DNC because Katz failed to establish that Defendant DNC employed her, and as to (2) Defendant PDP because Katz failed to plead that the FLSA governed her employment.

---

[1] Although this is Katz's Third Amended Complaint, it is only the second time the Court has tested the sufficiency of her allegations under Federal Rule 12. *See* Feb. 1st Mem. (ECF No. 129).

[2] The Court will refer to Katz and the Organizers independently herein as the Court has not yet decided whether to conditionally certify this matter as an FLSA collective action. *See* ECF Nos. 156, 157.

Feb. 1st Mem.

After reviewing the pending Motions to Dismiss (ECF Nos. 139, 140), all responses thereto (ECF Nos. 143, 149, 150), Katz's Motion for Judicial Notice (ECF No 153), and all responses thereto (ECF Nos. 154, 155), the Court will grant Defendant DNC's Motion to Dismiss because Katz has again failed to plausibly plead Defendant DNC was her employer during the relevant time period. The Court will deny Plaintiff's Motion for Judicial Notice as it is now moot after Defendant DNC's dismissal. The Court will grant Defendant PDP's Motion to Dismiss, in part, and strike any allegations regarding a common law conspiracy claim from the Third Amended Complaint. The Court will deny the remainder of Defendant PDP's Motion to Dismiss and permit the FLSA and PMWA claims by Katz and the putative class of Organizers to proceed as to Defendant PDP alone.

## STANDARD OF REVIEW

Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). This inquiry requires courts to separate factual allegations from legal conclusions and determine whether the well-pled facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to

'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234-35).

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Given the posture of the case, the Court will present the following facts in a light most favorable to Plaintiffs.

**A. Defendants' Organizational Hierarchy**

Defendant DNC is the governing body of the Democratic National Party. TAC at ¶ 10 (ECF No. 135). As such, "it raises money, hires staff, and coordinates strategy to support candidates throughout the United States for local, state, and national office and . . . direct[s] the operations of many state parties, including Defendant PDP." TAC, ¶ 10. Pursuant to a Joint Fundraising Agreement entered into by Defendant DNC and Hillary for America ("HFA") in August 2015, DNC's operational control was turned over to HFA. TAC, ¶¶ 14, 18-19. Consequently, during the 2016 election, HFA controlled "DNC's finances, strategy, money raised, and staffing decisions." TAC, ¶¶ 14, 18-19. The Hillary Victory Fund (the "HVF"), an arm of HFA, controlled any fundraising monies received by Defendant DNC from the state parties, including Defendant PDP. TAC, ¶¶ 14, 24. The Joint Fundraising Agreement also provided that "HFA personnel [would] be consulted and have joint authority over strategic decisions over the staffing, budget, expenditures and general election related communications." TAC, ¶ 25.

Defendant PDP "[is] responsible for governing the Pennsylvania Democratic Party." TAC, ¶ 11. However, during the 2016 election, it "raised money, hired staff, and coordinated strategy to support candidates throughout the Commonwealth of Pennsylvania for local, state, and national office . . . [a]t the direction of Defendant DNC and non-party Hillary for America

[HFA]." TAC, ¶ 11. Consequently, although Defendant PDP generally governed itself, during the relevant time period it did so "[a]t the direction of Defendant DNC and non-party Hillary For America [HFA]." TAC, ¶ 11.

Accordingly, during the 2016 presidential campaign "HFA and HVF essentially controlled all of the activities of [Defendant] DNC . . . which in turn controlled Defendant PDP." TAC, ¶¶ 17, 21.

### B. The Pennsylvania Coordinated Campaign

From August 2015 until August 2016, although Katz and the Organizers were directly employed by Defendant PDP some of their duties related to the Pennsylvania Coordinated Campaign, which was tasked with implementing "Pennsylvania campaign efforts" under the brand of Hillary for Pennsylvania. TAC, ¶¶ 35, 41, 44, 67. HFA oversaw the Pennsylvania Coordinated Campaign, but "Defendant DNC coordinate[d] and direct[ed] strategic initiatives directly with Defendant PDP." TAC, ¶¶ 21, 27, 44. Consequently, as part of this arrangement, Defendant DNC "direct[ed] Defendant PDP to hire and retain organizers" and Defendant DNC "direct[ed] Defendant PDP regarding the qualifications and job duties of organizers." TAC, ¶ 44. Additionally, when Defendant PDP began hiring field organizers for the 2016 election it did so with funds provided by Defendant DNC, and as a result, Defendant DNC determined the amount of certain "critical staff salaries" for Defendant PDP. This included setting the salaries of field organizers employed by Defendant PDP at $2,500 or $3,000 per month. TAC, ¶¶ 13, 22, 44.

Katz and some of the other Organizers were hired after Defendant PDP deferred its hiring responsibilities to non-party HFA and Defendant DNC. TAC, ¶¶ 27, 43. To facilitate this process, Defendant DNC posted job applications for field organizers on its website and sent

applications to its supporters. TAC, ¶ 47. Additionally, after field organizers were hired, Katz and her colleagues were trained, in part, by HFA and DNC employees. TAC, ¶¶ 27, 43, 47. Indeed, employees of both non-party HFA and Defendant DNC remained in Pennsylvania after training Katz and the Organizers to "oversee[] and direct[] the Pennsylvania campaign efforts, includ[ing] the work of the Organizers. TAC, ¶¶ 34-40.

During their training, Katz and the Organizers were prepared for their job duties on the "PA Coordinated Campaign," which included: (1) promoting Defendants' "platform, program, and ideals" during the 2016 election, TAC, p. 2; (2) making "several calls per week" to voters in and outside of Pennsylvania to get-out-the-vote via an automated dialer system; (3) posting on social media at least once a week; (4) and collecting survey data from registered voters in and outside of Pennsylvania to input into an online database jointly operated by Defendant DNC and Defendant PDP known as "Votebuilder." TAC, ¶¶ 21, 26-27, 73-75, 84-85. Katz and the other Organizers would input survey answers into Votebuilder from locations within Pennsylvania, though Katz believes the database was maintained in Washington D.C. TAC, ¶¶ 75, 78, 80-81. Votebuilder synthesized and aggregated voter information in one database, thus reducing the time a campaign would have to spend on obtaining this information itself. TAC, ¶ 90. Access to Votebuilder was sold and licensed to certain campaigns and other third-party organizations, including the Bernie 2016 campaign, which purchased access to information about Iowa's voters for $120,000. TAC, ¶¶ 76, 85-86, 89, 97. Katz does not know the details of the licensing fee structure, but she believes the revenues from these licenses generated over $500,000 in 2016. TAC, ¶ 98.

In fulfilling their job duties, Katz and the other Organizers worked more than 40 hours per week without receiving overtime premium pay or any other extra compensation. TAC,

¶¶ 110-111. Indeed, Katz and the Organizers were told during their training that they would be required "to work 7 days per week and well in-excess of 40-hours per week." TAC, ¶ 30.

## DISCUSSION

To survive a motion to dismiss an FLSA claim, a plaintiff must plausibly plead a *prima facie* case, alleging: (1) an actionable employer-employee relationship; (2) engagement in commerce or in the production of goods for commerce by either the employee or the employer; and (3) the employer's failure to pay the employee the federal minimum wage or overtime. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147-148 (3d Cir. 2014). Defendant PDP concedes that it employed Katz, PDP Mot. Dismiss at 10 (ECF No. 139), but disputes that she is covered by the FLSA, arguing that neither she nor it were engaged in commerce as defined by the Act. PDP Mot. Dismiss, 2. Defendant DNC argues that it did not employ Katz and that it should be dismissed from this action. DNC Mot. Dismiss at 1-2 (ECF No. 140).

The Court agrees with Defendant DNC and will grant its Motion to Dismiss with prejudice for the reasons that follow. The Court substantially disagrees with Defendant PDP, and will deny its Motion to Dismiss after finding that Katz plausibly pled that she did engage in commerce as defined in the FLSA. As Katz need not plausibly plead that both she and Defendant PDP were engaged in commerce, the Court will not address this inquiry as to Defendant PDP. Additionally, the Court will continue to exercise supplemental jurisdiction over Katz's state-law PMWA claim as to Defendant PDP alone.

**I.     The Third Amended Complaint Fails To Establish That Defendant DNC Employed Plaintiffs**

   A. <u>Joint Employer Status</u>

Defendant DNC has reasserted its challenge of the pleadings sufficiently establishing it as the employer of Katz or any of the other Organizers during the relevant time period. In the TAC,

Katz alleges that Defendant DNC and Defendant PDP are "joint employers" under the "*Enterprise* test" employed in this circuit. *In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 468 (3d Cir. 2012). Under the *Enterprise* test, courts are to consider a non-exhaustive list of factors when determining whether "two or more employers exert significant control over the same employees" such that it can be said "they share or co-determine those matters governing essential terms and conditions of employment." *Id*. These factors include the alleged joint employer's: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments and set conditions of employment; (3) involvement in the day-to-day supervision of employees, including employee discipline; and (4) control over employee records. *Id*.

Prior to evaluating these elements with respect to Defendant DNC, the Court must address Katz's attempt to impute the conduct of non-party HFA to Defendant DNC by alleging their "joint authority," "vertical integration," and "single employer/alter ego" relationship. *See* TAC at ¶¶ 14-17, 68-69. First, as to non-party HFA and Defendant DNC's alleged joint authority and/or joint employer status, Katz does not actually plead that non-party HFA exercised such a significant amount of control over Katz and the Organizers that it satisfies the *Enterprise* factors. Katz pleads that HFA had operational control over Defendant DNC pursuant to the Joint Fundraising Agreement. Katz also pleads that HFA employees were involved in the hiring and training of Katz and the Organizers, and that HFA employees oversaw the Organizers work as it related to the Pennsylvania Coordinated Campaign. However, aside from cursorily stating that Defendant DNC and non-party HFA were joint employers with joint authority over Katz and the Organizers, Katz provides no other factual support demonstrating that HFA was a joint employer of Katz and the Organizers. Moreover, nowhere in her Opposition to the

Defendants' Motion to Dismiss ("Opposition") does Katz actually argue that HFA was her joint employer. Thus, Katz is attempting to use non-party HFA's purported joint employer contacts with Katz and the Organizers to establish a joint employer relationship between them and Defendant DNC. However, she conspicuously and fatally fails to plead that non-party HFA was their joint employer. The alleged Joint Fundraising Agreement and non-party HFA's alleged operational control over Defendant DNC does not permit Katz to collapse two independent legal entities into one and aggregate their contacts with the Plaintiffs to establish that Defendant DNC was their joint employer.

Second, to the extent the Joint Fundraising Agreement did in fact give operational control to non-party HFA that was in actuality exercised by non-party HFA, Katz has not plead that the one-year agreement between these entities created a vertically integrated, single employer, alter-ego relationship. And even if she had, setting aside for a moment the issue of whether the FLSA permits an alter ego theory of liability, *see Chen v. Century Buffet and Restaurant*, No. 09-1687, 2011 WL 1539916, at *2 n.1 (D.N.J. April 21, 2011), alleging the existence of an agreement – a legal conclusion – does not equal factual averments from which this Court may determine that the relationship existed as a matter of law. Under the alter ego test utilized in this circuit, Katz needed to plead factors such as Defendant DNC's: gross undercapitalization, failure to observe corporate formalities, nonfunctioning officers and directors, absence of corporate records, and that Defendant DNC was merely a facade for the operations of HFA. *See Am. Bell Inc. v. Fed'n of Tel. Workers of Pa.*, 736 F.2d 879, 886 (3d Cir. 1984). Katz has not only failed to plead any of these elements, had she attempted to so, they would have facially contradicted her attempts to plead that Defendant DNC was Katz's joint employer. Moreover, Katz alleges that this relationship between Defendant DNC and non-party HFA only existed from August 2015 until

August 2016.  However, she identifies no legal precedent providing for an intermittent and periodic vertically integrated, single employer, alter ego relationship that comes into existence every four years.

Consequently, when reviewing the factors for a joint employer relationship below, the Court will not impute non-party HFA's conduct to Defendant DNC and will only consider the allegations regarding Defendant DNC's independent conduct with respect to Katz and the Organizers.  "Direct control over the employee" is required to find a joint employer relationship.  *In re Enterprise Rent-A-Car*, 683 F.3d at 469.  And Katz, at best, has alleged non-party HFA and Defendant DNC's membership in a common enterprise, which is insufficient to show that either entity was Plaintiffs' joint employer.  *Richardson v. Bezar*, No. 15-0772, 2015 WL 5783685, at *2 (E.D. Pa. Oct. 5, 2015).

1. *Authority to Hire and Fire*

Katz argues that the TAC now plausibly alleges "that Defendant DNC was involved in the hiring, retaining, and training of field organizers for Defendant PDP."  Pl. Opp'n at 13 (ECF No. 143).  She then identifies several allegations in the TAC affirming that involvement.  *Id*.; *see also* TAC at ¶¶ 13, 22, 36-37, 44, 47, 49-50.  However, the alleged sharing of funds and provision of "critical staff salaries," does not permit the Court to reasonably infer that the redistribution of money – a fungible commodity that could be applied to salaries as easily as it could be applied to the purchase of stationary – evidences the authority to hire and fire.  *See* TAC at ¶¶ 46, 50.  Additionally, posting job applications for field organizers and then participating in the training of those hired, does not plausibly allege that Defendant DNC could have hired those individuals or that it had the authority to fire them if they failed to fulfill their job duties.  *See* TAC at ¶¶ 44, 46, 50.

Finally, to the extent Katz is arguing that Defendant DNC exerted sufficient indirect control over her and the Organizers to satisfy this factor, the well pled allegations fail to support this argument as well.  Shared resources amongst two separate legal entities with a common goal, without more, does not plausibly plead the actual authority – indirect or not – to hire and fire Katz and the Organizers.  *See* DNC Mem. Mot. Dismiss at 12 (ECF No. 140-2); DNC Reply at 4 (ECF No. 146-1).  Though, these allegations do speak to the next factor.  But as ***involvement*** does not constitute ***actual authority***, this factor does not weigh in favor of finding a joint employer relationship.

2. *Authority to Promulgate Work Rules, Assignments, and Set Conditions of Employment*

Katz next argues that she has plausibly pled that Defendant DNC's instructions to Defendant PDP and the Organizers regarding "voter database improvements," and demographics to call to get-out-the-vote demonstrate the authority to promulgate work rules and assignments. Pl. Opp'n at 15-16; *see also* TAC at ¶¶ 12, 21.  Additionally, Katz contends that Defendant DNC's determination that Defendant PDP would pay Organizers $2,500 or $3,000 per month demonstrates the authority to set conditions of employment.  Pl. Opp'n at 10; *see also* TAC at ¶ 22.  However, setting aside for a moment the deficiencies noted above regarding the sharing of funds, Katz still fails to plausibly plead that Defendant DNC authored and distributed employee handbooks or manuals to Katz and the Organizers, provided them with benefit packages, or set their work schedules.  DNC Reply at 3-4; *accord* Feb. 1st Mem. and Op. at 5 (ECF No. 129). Katz alleges that Defendant DNC provided "guidance and training" to Defendant PDP on weekly conference calls regarding HR employment policies and paying minimum wage and overtime among other things.  TAC, ¶ 51.  However, again, for those plausibly pled allegations relating to this factor, Katz has at best pled Defendant DNC's involvement; not its actual authority.

Consequently, the Court finds this factor does not weigh for or against a finding of a joint employer relationship.

### 3. *Involvement in day-to-day supervision of employees, including employee discipline*

For this factor, Katz points to the same allegations that she argues supports a finding that Defendant DNC had the authority to hire and fire Katz and the Organizers. Pl. Opp'n at 11. Katz also argues that the presence of Defendant DNC's Regional Director in Pennsylvania to oversee the Organizers' efforts and Defendant DNC's involvement in the training and hiring of the Organizers, causes this factor to weigh in her favor. Pl. Opp'n at 11; *see also* TAC at ¶ 36. Additionally, Katz points to Defendant DNC's direction regarding which voters to call and requirement that the information gathered be input into Votebuilder. Pl. Opp'n at 11. Finally, Katz alleges that Defendant DNC's staff were deployed to Pennsylvania to "oversee[] and direct[] the Pennsylvania campaign efforts" and "work[] on the ground in Pennsylvania." TAC at ¶¶ 27, 36-38, 40 (internal quotations omitted); *see also* Pl. Opp'n at 11.

The majority of Katz's assertions regarding this factor consist of boilerplate allegations regarding "overseeing" and "directing" that are unsupported by facts. Such allegations are too broad to plausibly plead the specific allegations needed to demonstrate day-to-day supervision. DNC Mem. ISO Mot. Dismiss at 16-17. And, importantly, Katz also pled that non-party HFA oversaw the Pennsylvania Coordinated Campaign and directed Defendant DNC to get-out-the-vote for HFA. Consequently, to the extent Defendant PDP was acting on another's direction in this regard, Katz has pled that direction ultimately came from non-party HFA. However, as stated above, because Katz has not plausibly pled that non-party HFA was her or the Organizers' joint employer, any well pled conduct on this point will not be imputed to Defendant DNC. Consequently, this factor weighs in favor of Defendant DNC as involvement in hiring and

training does not equal day-to-day supervision and the Court will not give weight to conclusory assertions about Defendant DNC's "direction" and "oversight."

4. *Employee Records*

Katz has not plausibly pled any allegation or made any argument on this point. Pl. Opp'n at 12 n.4. Consequently, this factor weighs in favor of Defendant DNC.

5. *Totality of the Circumstances*

Finally, Katz argues that the *Enterprise* factors are not exhaustive and should be considered in light of the economic realities of the relationship between Defendant DNC and Defendant PDP. Pl. Opp'n at 12. She argues that the coordination between Defendant DNC and Defendant PDP regarding get-out-the-vote strategies and their implementation, sharing resources and funds, and joint creation, maintenance, and sale of voter information collected by Defendant PDP, warrants a finding that Defendant DNC and Defendant PDP were joint employers during the relevant time period under the totality of the circumstances. Pl. Opp'n at 12-13.

However, Katz's totality of the circumstances argument lacks weight where none of the delineated *Enterprise* factors weigh in her favor. Moreover Katz cannot reasonably argue that HFA controlled Defendant DNC and Defendant DNC controlled Defendant PDP, and then ignore HFA's existence to argue that Defendant DNC and Defendant PDP were joint employers executing a coordinated strategy between the two of them. And even if Katz could, the coordination and strategic involvement of separate legal entities with a common goal does not equal a joint employer relationship in and of itself. If it did, Defendant DNC inherently would be joint employers with each of its state affiliates. Accordingly, the Court finds that Katz has failed to establish that Defendant DNC was her employer under a joint-employer theory.

B. <u>Single Employer Status</u>

Alternatively, Katz argues that Defendant DNC and Defendant PDP constitute a single employer. In this circuit, courts determine whether two entities may be a single employer by considering: (1) the interrelation of operations; (2) whether there is shared common management; (3) whether there is a centralized control of labor relations; and (4) whether there is common ownership or financial control. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003). Katz identifies and reargues that the allegations demonstrating that Defendant DNC was a joint employer with Defendant PDP support a finding that Defendant DNC and Defendant PDP are a single employer. For the reasons identified above, these allegations are also not sufficient to establish that Defendant DNC and Defendant PDP acted as one.

Accordingly, as Katz has failed to plausibly plead that Defendant DNC was her employer under a joint employer or single employer theory, Defendant DNC's Motion to Dismiss is granted.

II. **The Third Amended Complaint Plausibly Pleads That Plaintiffs Were Covered Employees Under the FLSA**

As Defendant DNC has been dismissed from this case, the Court will now consider remaining Defendant PDP's reasserted argument that Katz's FLSA claim must fail because she cannot establish that she and the putative class are covered employees under the FLSA. Katz argues that she has established individual and enterprise coverage under the FLSA. However, she need only establish one or the other. *Razak v. Uber Techs, Inc.*, No. 16-573, 2016 WL 5874822 at *5 (E.D. Pa. Oct. 7, 2016). Upon consideration of those plausibly pled facts in the

TAC, the Court finds that Plaintiff has established individual coverage, and it will therefore not consider enterprise coverage.[3]

Where an employee has "engaged in commerce or in the production of goods for commerce" such that the employee directly "participat[ed] in the actual movement of persons or things in interstate commerce" whether those things be "tangibles or intangibles, and including information and intelligence," he or she is covered by the FLSA, regardless of the employer's status as an enterprise engaged in commerce. 29 U.S.C. §§ 206(a), 207(a); 29 C.F.R. § 779.103; 29 C.F.R. § 776.10(b); 29 C.F.R. § 776.20(b); *see Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 516-17 (1973); *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several states." 29 U.S.C. § 203. An employee may be engaged with commerce through his or her "regular" use of the telephone for "interstate communication." 29 C.F.R. § 779.103. Moreover, and importantly, individual coverage may be found even if the employee is not engaged in those activities for a business purpose. *See Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 467 (S.D.N.Y. 2006) (citing Opinion Letter No. FLSA 2005-12NA of Sept. 23, 2005, 2005 (DOLWH LEXIS 54; FOH § 11n01).

---

[3] Neither the FLSA nor case law clearly state whether enterprise coverage may apply to a political campaign. However, the Supreme Court has made clear that "[t]he statute contains no express or implied exception for commercial activities conducted by religious or other nonprofit organizations." *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985). Moreover, the FLSA broadly defines enterprise coverage as "the related activities performed . . . by a person or persons for a common business purpose." Thus, arguably, it could apply to a political campaign. Should discovery demonstrate that although Katz plausibly pled individual coverage the evidence of record does not support such a finding as a matter of law, the Court will conduct a more searching inquiry into the record as to whether Defendant PDP is "***primarily*** engaged in competition in the public with ordinary commercial enterprises." *Genarie v. PRD Management*, No. 04-2082, 2006 U.S. Dist. LEXIS 9705, at *1, *30 (E.D. Pa. Feb. 2006).

Katz reasserts in the TAC the same three categories of conduct supporting a finding of individual coverage as she did in the Second Amended Complaint: (1) regular use of the instrumentalities of commerce via her phone calls to out-of-state voters that solicited information about their voting preferences; (2) inputting voter information into Votebuilder from Pennsylvania, while the database was maintained in Washington, D.C.; and (3) updating and maintaining Votebuilder from Pennsylvania though it was located in Washington, D.C. Katz adds one new category of conduct in the TAC, alleging that she and the other Organizers also updated Twitter and Facebook with weekly posts that constitute interstate communication. Pl. Opp'n at 29; TAC at ¶ 74.

Of these categories of conduct, the Court will focus its analysis on Katz's alleged phone calls to out-of-state voters. There is a dearth of legal precedent in this field of law regarding posting on social media constituting interstate communications.[4] And Katz has again failed to fully address why voter information or Votebuilder constitute "goods" under the Act. Katz skips over the lack of legal support for this argument to the commercial value obtained by Defendant PDP, and argues, at base, that profiting from something makes it a good under the Act. Though the Court is not prepared to say that one or the other fails as a matter of law, it will not use them as the basis for denying Defendant PDP's Motion to Dismiss.

Katz has alleged that her job duties, including making several phone calls each week to out-of-state voters to obtain the likely party they will vote for, establishes individual coverage. Defendant PDP argues that although she and the Organizers may have made calls regularly as part of their job duties, Katz fails to allege they regularly made calls to *out-of-state* voters, rather than to voters who were out-of-state when they received the call or who had an out-of-state

---

[4] However, analogizing to the criminal context suggests there may be support for this argument. *See United States v. White*, 654 Fed. Appx. 956, 963 (11th Cir. 2016).

phone number. Pl. Opp'n at 17-19. Moreover, Defendant PDP argues that Katz's specific allegations regarding out-of-state voters were related to political activities and speech, thus they could not have been for a traditionally recognized commercial purpose. Feb. 1st Mem. and Op. at 19. Defendant PDP argues that its primary purpose is political, not commercial, and that the content of any out-of-state call (to the extent such calls were made) concerned this political, non-commercial activity. Given the outstanding issue regarding enterprise coverage, the Court will leave the resolution of any attendant First Amendment issues for another day on a more fully developed record. *See also* PDP Mot. Dismiss at 56-67.

The Court acknowledges Defendant PDP's arguments regarding the presentation and couching of Katz's allegations on this issue. However, when reading the TAC as a whole, taking those well-pled factual allegations as true, and construing the reasonable inferences those allegations support in Katz's favor, she has plausibly pled individual coverage on this basis. The Court will not require that she plead the magic language of "regular use" where the standard is demonstrating an entitlement to relief. At this posture, without having had the benefit of discovery, Katz has shown such an entitlement.

### III. The Third Amended Complaint Plausibly States a Claim

To state a claim for relief under the FLSA, Katz had to plead that she and the Organizers were employees, as defined by the FLSA, who were engaged in commerce and who were not paid in accordance with the Act. Katz has pled these elements. As to the final prong of this inquiry, Defendant PDP's failure to pay Katz and the Organizers in accordance with the FLSA, the TAC alleges that both Katz and the Organizers regularly worked more than 40 hours per week without being paid overtime. TAC, ¶¶ 107-109. TAC, ¶¶ 61, 110, 112. The Court finds

phone number. Pl. Opp'n at 17-19. Moreover, Defendant PDP argues that Katz's specific allegations regarding out-of-state voters were related to political activities and speech, thus they could not have been for a traditionally recognized commercial purpose. Feb. 1st Mem. and Op. at 19. Defendant PDP argues that its primary purpose is political, not commercial, and that the content of any out-of-state call (to the extent such calls were made) concerned this political, non-commercial activity. Given the outstanding issue regarding enterprise coverage, the Court will leave the resolution of any attendant First Amendment issues for another day on a more fully developed record. *See also* PDP Mot. Dismiss at 56-67.

The Court acknowledges Defendant PDP's arguments regarding the presentation and couching of Katz's allegations on this issue. However, when reading the TAC as a whole, taking those well-pled factual allegations as true, and construing the reasonable inferences those allegations support in Katz's favor, she has plausibly pled individual coverage on this basis. The Court will not require that she plead the magic language of "regular use" where the standard is demonstrating an entitlement to relief. At this posture, without having had the benefit of discovery, Katz has shown such an entitlement.

### III.     The Third Amended Complaint Plausibly States a Claim

To state a claim for relief under the FLSA, Katz had to plead that she and the Organizers were employees, as defined by the FLSA, who were engaged in commerce and who were not paid in accordance with the Act. Katz has pled these elements. As to the final prong of this inquiry, Defendant PDP's failure to pay Katz and the Organizers in accordance with the FLSA, the TAC alleges that both Katz and the Organizers regularly worked more than 40 hours per week without being paid overtime. TAC, ¶¶ 107-109. TAC, ¶¶ 61, 110, 112. The Court finds

that these allegations sufficiently plead a failure to pay Katz and the Organizers overtime in accordance with the FLSA.

## IV. State-Law Claims

### A. Pennsylvania Minimum Wage Act

As the Court has found that the TAC states an FLSA claim, the Court will continue to exercise supplemental jurisdiction over Plaintiff's state-law claim under the Pennsylvania Minimum Wage Act ("PMWA"). The PMWA requires that employees be paid one and one-half times their regular rate for any overtime worked. 43 P.S. §333.104(c). Defendant PDP argues that there is an irreconcilable conflict between the Federal Election Campaign Act ("FECA") and the PMWA, such that Katz's PMWA claim may not proceed. PDP Mot. Dismiss at 57. Defendant PDP claims that the relief sought by Katz "would be to burden and inhibit Federal election activity in Federal election campaigns by increasing the cost of running campaigns and potentially inhibiting certain candidates and parties from actually generating enough funds to finance an election campaign." PDP Mot. Dismiss at 57. Defendant PDP goes on to argue that Katz and the Organizers' employment was funded through "a nonprofit state political party during a Federal election cycle" and is thus subject to the restrictions and limitations of FECA.

However, Defendant PDP fails to identify which provisions of FECA will be violated if Katz obtains the relief she seeks. Moreover, to the extent the Court would be inclined to agree that FECA's "express and delineated restrictions and limitations" include not using regulated funds to pay a state-law overtime wage, the Court has difficulty marrying that interpretation with the FLSA's declination to preempt state minimum wage laws that offer greater protection than the FLSA. 29 U.S.C. §218(a). Additionally, as argued by Katz, FECA does not expressly forbid or limit FLSA claims, nor does FECA restrict the wage levels paid by a political campaign. Pl.

Opp'n at 43. Therefore, regardless of the source of the salaries of Katz and the Organizers, *see* PDP Reply at 9 n.11, Defendant has put forth a policy, but not a legal, argument for why the PMWA claim should be dismissed. At this posture, such an argument must fail.

### B. Conspiracy Claim

Defendant PDP argued in its Motion to Dismiss that Katz's conspiracy claims should be dismissed because the only two allegations related to the claim in the TAC appear to be included by mistake as there are no additional allegations pleading an entitlement to relief. Katz did not address this in her Opposition, and Defendant PDP argues in its Reply in support of its Motion to Dismiss that Katz's failure to respond in her Opposition not only waives her right to do so, it supports Defendant PDP's claim. The Court agrees. This claim, to the extent it is in fact raised in the TAC, is dismissed with prejudice and any related allegations will be stricken from the TAC.

### CONCLUSION

For the foregoing reasons, the Court will grant Defendant DNC's Motion and dismiss the Third Amended Complaint with prejudice as to it alone. The Court will grant, in part, and deny, in part, Defendant PDP's Motion. Counts I and II of the TAC will be permitted to proceed against Defendant PDP. Paragraphs 2 and 59 of the TAC, which identify a state-law claim for conspiracy, shall be stricken. *See* Rule 12(f); *see also Natale v. Winthrop Resources, Corp.*, No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008). An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II    J.