**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BETHANY KATZ, *individually and on behalf of those similarly situated,* | No: 16-5800 |
| Plaintiffs, | |
| v. | |
| DNC SERVICES CORP., *et al.*, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT
AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS AND
COLLECTIVE**

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

   A.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 1

   B.   Summary of the Settlement Terms. .................................................................. 4

      1.   The Settlement Fund .............................................................................. 4

      2.   The Rule 23 Settlement Classes ............................................................ 4

      3.   The Notice and Payment Process ........................................................... 5

      4.   Releases ................................................................................................. 6

      5.   Attorney's Fees and Costs and Service Awards .................................... 6

      6.   Claims Administrator ............................................................................ 7

   C.   Alleged Facts Regarding the Dispute ............................................................... 7

II.   LEGAL ARGUMENT ............................................................................................... 8

   A.   Preliminary Approval is Appropriate ............................................................... 8

   B.   The Rule 23 Settlement Class Should Be Provisionally Certified for Purposes of Settlement. ................................................................................................................ 10

      1.   The Proposed Settlement Class Meets the "Typicality" Requirement of Rule 23(a)(3). 11

      2.   The Proposed Settlement Class Meets the "Adequacy" Requirement of Rule 23(a)(4). 12

      3.   The Proposed Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3). ...................................................................... 12

   C.   The Court Should Preliminarily Approve the Proposed Settlement Under Rule 23. ....... 14

   D.   The Court Should Approve the Proposed Settlement Under the FLSA. ........................ 16

      1.   The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute. ......................................................................................................... 16

      2.   The Parties Have a *Bona Fide* Dispute ..................................................... 17

      3.   The Proposed Settlement is Fair and Reasonable ...................................... 17

      4.   The Settlement is Consistent with Public Policy ....................................... 18

   E.   The Service Payments Are Reasonable and Appropriate. ................................ 19

   F.   The Court should preliminarily approve the Class Counsel's fees and costs request. ..... 20

   G.   The Court Should Approve the Proposed Form of Notice and the Parties' Notice Plan .. 21

   H.   The Court Should Appoint Angeion Group, Inc. as Claims Administrator .................... 23

III.  CONCLUSION ....................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Aboud v. City of Wildwood*,
   No. 12-7195 (JS), 2013 U.S. Dist. LEXIS 70083 (D.N.J. May 17, 2013) ............................ 23

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................................... 10

*Arpi v. Sternbach Holdings, L.L.C.*,
   No. 12 Civ. 6764 (KBF), 2012 U.S. Dist. LEXIS 183648 (S.D.N.Y. Dec. 10, 2012) .......... 23

*Austin v. Pa. Dep't of Corr.*,
   876 F. Supp. 1437 (E.D. Pa. 1995) ........................................................................... 15

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ..................................................................................... 12

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................... 20

*Bredbenner v. Liberty Travel, Inc.*,
   No. 09-4587 (MF), 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011) ................ 17, 18, 20

*Bullock v. Adm'r of Estate of Kircher*,
   84 F.R.D. 1 (D.N.J. 1979) ........................................................................................ 15

*Castagna v. Madison Square Garden, L.P.*,
   No. 09-cv-10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ........ 18

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................................... 9

*Clark v. Ecolab Inc.*,
   No. 06 Civ. 5672 (PAC), 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ............. 18

*Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*,
   418 F.3d 277 (3d Cir. 2005) ..................................................................................... 12

*Court Awarded Att'y Fees*,
   108 F.R.D. 237 (3d Cir. 1985) ................................................................................. 20

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) ............................................................................... 19

*Curiale v. Lenox Grp., Inc.*,
   CIVIL ACTION NO. 07-1432, 2008 U.S. Dist. LEXIS 92851 (E.D. Pa. Nov. 14, 2008) .... 14

iii

*Curiale v. Lenox Grp., Inc.*,
    CIVIL ACTION NO. 07-1432, 2008 U.S. Dist. LEXIS 92851 (E.D. Pa. Nov. 14, 2008), n.4
    ................................................................................................................................... 14

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ......................................................................................... 10

*D.R. by M.R. v. E. Brunswick Bd. of Educ.*,
    109 F.3d 896 (3d Cir. 1997) ....................................................................................... 19

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ......................................................................................... 8

*Eisen v. Carlisle & Jacquelin* ,
    417 U.S. 156 (1974) .................................................................................................... 23

*Farris v. JC Penney Co.*,
    176 F.3d 706 (3d Cir. 1999) ....................................................................................... 16

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ...................................................................................... 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 9

*Henderson v. Volvo Cars of N. Am., L.L.C.*,
    No.: 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013) ....................... 20

*Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.* ,
    No. 11-md-02284, 2013 U.S. Dist. LEXIS, 18332 (E.D. Pa. Feb. 11, 2013) ........................ 14

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ....................................................................................... 20

*In re Austrian & German Bank Holocaust Litig.* ,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................................... 10

*In re Diet Drugs Prods. Liab. Litig.*,
    369 F.3d 293 (3d Cir. 2004) ....................................................................................... 22

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ......................................................................................... 14

*In re High-Tech Emple. Antitrust Litig.*,
    No. 11-CV-2509-LHK, 2013 U.S. Dist. LEXIS 180530 (N.D. Cal. Oct. 30, 2013) .............. 23

*In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.* ,
    No. 11-md-02284, 2013 U.S. Dist. LEXIS 18332 (E.D. Pa. Feb. 11, 2013) ........................ 14

*In re Ins. Brokerage Antitrust Litig.*,

579 F.3d 241 (3d Cir. 2009) ................................................................ 19

*In re Janney Montgomery Scott L.L.C. Fin. Consultant Litig.*,
   No. MASTER FILE: 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ...... 20

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   No. 1914, 2011 U.S. Dist. LEXIS 101995 (D.N.J. Sept. 9, 2011) ........................................ 20

*In re Safety Components Int'l Secs. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ....................................................................... 21

*In re SmithKline Beckman Corp. Sec. Litig.*,
   751 F. Supp. 525 (E.D. Pa. 1990) ....................................................................... 21

*In re Traffic Exec. Ass'n—E. Railroads*,
   627 F.2d 631 (2d Cir. 1980) ............................................................................. 9

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ............................................................................. 8

*Jamison v. Butcher & Sherrerd* ,
   68 F.R.D. 479 (E.D. Pa. 1975) .......................................................................... 15

*Johnston v. HBO Film Mgmt.*,
   265 F.3d 178 (3d Cir. 2001) ............................................................................ 12

*Keller v. TD Bank, N.A.*,
   CIVIL ACTION NO. 12-5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) ....................... 15

*Krell v. Prudential Ins. Co. of Am.*,
   148 F.3d 283 (3d Cir. 1998) ............................................................................ 10

*Lachance v. Harrington*,
   965 F. Supp. 630 (E.D. Pa. 1997) ..................................................................... 22

*Larson v. AT&T Mobility L.L.C.*,
   687 F.3d 109 (3d Cir. 2012) ............................................................................ 23

*Lenahan v. Sears, Roebuck & Co.* ,
   No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006) .................................... 16

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) .................................................................... 16, 17

*Maywalt v. Parker & Parsley Petrol. Co.* ,
   67 F.3d 1072 (2d Cir. 1995) ............................................................................ 9

*Morales v. PepsiCo, Inc.*,
   No. 11-6275 (AET), 2012 U.S. Dist. LEXIS 35284 (D.N.J. Mar. 13, 2012) ........................ 16

*Mullane v. Cent. Hanover Bank & Tr. Co.* ,
    339 U.S. 306 (1950) ......................................................................................................... 22

*Officers for Just. v. Civil Serv. Com.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................................. 9

*Pinner v. Schmidt*,
    617 F. Supp. 335 (E.D. La. 1985) ................................................................................... 23

*Salinas v. U.S. Xpress, Inc.*,
    No. ?DOCKET?, 2018 WL 1477127 (E.D. Tenn. ?MONTH? ?DAY?, 2018) ..................... 15

*Speed Shore Corp. v. Denda*,
    605 F.2d 469 (9th Cir. 1979) ............................................................................................. 9

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................................ 8-9

*Weigner v. New York*,
    852 F.2d 646 (2d Cir. 1988) ........................................................................................... 22

*Williams v. Aramark Sports, L.L.C.*,
    No. 10-1547, 2011 U.S. Dist. LEXIS 102173 (E.D. Pa. Sept. 8, 2011) ............................ 11

## Rules

Fed. R. Civ. P. 12 ........................................................................................................... 8

Fed. R. Civ. P. 23 .................................................................................................... *passim*

# I.     INTRODUCTION

Subject to this Court's preliminary and final approval, Plaintiff and Defendant, the Pennsylvania Democratic Party ("PDP"), (collectively, "the Parties") have reached a settlement in this matter for $3,500,000. The Parties reached the settlement following more than six years of litigation, extensive motion practice, and a prolonged mediation. If approved, the settlement will provide monetary payments to Plaintiff, all FLSA opt-in Plaintiffs, and all putative Rule 23 class members, representing all Organizers who were employed by PDP during the applicable class period. The terms of the proposed settlement are set forth in the Settlement Agreement. *See* Exhibit 1-A.

Plaintiffs respectfully ask the Court to (1) grant preliminary approval of the class and collective action settlement; (2) certify the proposed Rule 23 classes for settlement purposes; (3) appoint Plaintiffs' Counsel as Class Counsel; (4) approve the proposed notice attached as Exhibit A to the Settlement Agreement and direct their distribution; (6) appoint Angeion as the Claims Administrator; and (7) preliminarily approve Plaintiffs' requests for attorney's fees, costs, and Service Awards. Defendant PDP does not oppose this motion.

## A.     FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 2016, Named Plaintiff Bethany Katz filed a Complaint alleging that Defendant[1] violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), by failing to pay overtime for all hours worked. The Complaint also alleged Rule 23 class action claims that

---

[1] Named Plaintiff had also named the Democratic National Committee ("DNC") as a defendant, although the DNC was later dismissed as a defendant. *See* ECF No. 158. In addition, on March 7, 2017, Named Plaintiff filed a Second Amended Complaint against several other state party defendants. ECF No. 68, all of which the Court dismissed as defendants on November 19, 2017, for want of personal jurisdiction. ECF No. 121.

Defendant violated the Pennsylvania Minimum Wage Act ("PMWA") (collectively, the "Litigation"). Defendant denies these allegations.

On February 16, 2018, after the Court had dismissed several of the claims and all other state parties named as defendants in the lawsuit, Named Plaintiff filed a Third Amended Complaint, in which she again asserted individual, class, and collective action claims against the PDP and DNC[2] under the FLSA, 29 U.S.C. §§ 201, et seq. and PMWA, 43 P.S. §§ 331.101 et seq. The TAC is the operative complaint in this Litigation. In the TAC, Ms. Katz sought to represent "all persons who performed worked or work as organizers or in similar positions in the Commonwealth of Pennsylvania who were treated as exempt from overtime by . . . Defendant PDP and who worked in this capacity at any point in the three (3) years preceding the date the instant action was initiated." ECF No. 135 at 13.

On March 13, 2018, the PDP filed a Motion to Dismiss the TAC. ECF No. 140. On September 28, 2018, Named Plaintiff filed a motion seeking to conditionally certify a collective action under the FLSA. ECF No. 156.

On September 27, 2019, the Court granted in part and denied in part the PDP's Motion to Dismiss, dismissing with prejudice Ms. Katz's civil conspiracy claim, but permitting Ms. Katz's FLSA and PMWA claims to proceed against the PDP. *See* ECF No. 158. In the same order, the Court also dismissed defendant the Democratic National Committee as a defendant in the Litigation, leaving PDP as the sole defendant. *Id.*

Shortly thereafter, PDP filed an interlocutory appeal, and the Court stayed the case until

---

[2] As noted above, the claims against the DNC were dismissed with prejudice from the lawsuit, although Ms. Katz did not thereafter formally amend her complaint to remove the DNC as a defendant.

September 29, 2020. ECF Nos. 163, 172. On September 29, in lifting the stay, the Court ordered the PDP to respond to Ms. Katz's motion for conditional certification. ECF No. 172. On March 30, 2021, the Court issued an order granting conditional certification. ECF No. 192.

On April 26, 2021, the Court ordered that the notice to opt-in to the collective class be sent to Pennsylvania state party organizers who worked for PDP between November 9, 2013, to present. PDP compiled a list consisting of approximately 817 organizers during this period. To date, 114 opt-in consent notices have been filed with the Court.

Prior to mediation, the Parties engaged in discovery relating to Defendant's affirmative defenses as well as class-wide damages and liability. During discovery, Defendant produced information regarding the number of Campaign Organizers it employed each workweek during the 2014, 2016, 2018, and 2020 elections, as well as its compensation policies with respect to such workers. It also provided information regarding the amount it paid each employee. Class Counsel and Named Plaintiff used such information, along with information from their own investigation and through interviews with dozens of class members, to create models for alleged overtime damages under the FLSA and Pennsylvania law. Plaintiff's Counsel also reviewed the information, documents, and other records provided by PDP during discovery to evaluate the strengths and weaknesses of Plaintiffs' claims regarding the merits, damages, and suitability for collective and class action certification.

On April 27, 2022 the Parties attended an all-day mediation over Zoom conducted by Kenneth J. Benson, a former United States Magistrate Judge for the United States District Court for the Western District of Pennsylvania. Although the mediation did not result in settlement, the Parties continued settlement discussions with the assistance of Judge Benson, and ultimately reached a deal in principle in September. The proposed settlement provides payment to all

3

Plaintiffs and putative class members in exchange for PDP paying $3.5 million into a fund to be applied to the settlement, which shall be paid over seven installments over six years. Plaintiffs now seeks preliminary approval of the proposed settlement.

**B.     Summary of the Settlement Terms.**

**1.     The Settlement Fund**

Pursuant to the Settlement Agreement, PDP will make seven (7) five-hundred thousand dollars ($500,000) payments, totaling $3.5 million, into a settlement fund (the "Class Settlement Fund") over a six-year period to resolve the class and collective action claims of Class Members. Settlement Agreement § 1.5. The Gross Settlement Amount covers payments to (1) 114 Plaintiffs who submitted consent forms to join the collective action for claims under the FLSA, (2) all Organizers who worked for Defendant PDP from November 9, 2013 through December 31, 2021[3], *see* Settlement Agreement § 1.1; (3) Court-approved Service Awards, (4) Court-approved attorneys' fees and costs, and (5) the Claims Administrator's fees. The Net Class Fund represents the portion of the Gross Settlement Amount allocated for Participating Class Members, which is the Class Settlement Fund less Court-approved Service Awards, Court-approved attorneys' fees and costs, the Claims Administrator's fees, and the reserve fund. *Id.* at § 1.6.

**2.     The Rule 23 Settlement Classes**

Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(3) for settlement purposes only. Specifically, Plaintiffs seek certification of a class of all individuals who worked

---

[3] Organizers are generally hired by Defendant PDP only during midterm and presidential elections (held in even years).  Moreover, most organizers are generally employed only from April to November. Thus, though the release covers a large amount of time (6 years), it is important to consider that generally, PDP only employed organizers during election years, and only for about half of each such year.

PDP as an Organizer at any point between November 9, 2013 – December 31, 2021. Settlement Agreement § 1.1.

Settlement Class Members, including all individuals who previously filed FLSA consent forms to join the litigation as collective members, will be paid $100 *plus* a *pro rata* portion of the Net Settlement Fund pursuant to an allocation formula based on the length of their employment during the Class Period.

Any amounts remaining from unclaimed checks will be distributed class members who are located and negotiate their checks.  Any remaining amounts following the final distribution will be donated to the *cy pres* recipient, the ACLU-PA. *Id.* § 3.1m.

### 3.     The Notice and Payment Process

To effectuate the settlement, within 15 business days after the Court's preliminary approval of the Settlement Agreement, PDP will provide the Claims Administrator and Class Counsel an electronic file listing the necessary information to identify, send notice, and pay each individual who is entitled to a settlement payment. *Id.* §§ 3.1(b); 4.2. Within fourteen (14) days after receipt of such list, the Claims Administrator will distribute the Notice to each Class Member, informing him or her of his or her rights under the Settlement Agreement, including: (1) the terms of the settlement agreement; (2) the scope of the proposed release; (3) the method by which to object and/or opt-out.; and (4) the date and time of the final fairness hearing, as well as their right to appear at such hearing. Exhibit A of Settlement Agreement. The Settlement Agreement provides that each Class Member may opt out or object by writing or emailing the Claims Administrator within 60 days of the date the Notice is distributed. *Id.* § 3.1(d). Following the close of the opt-out and objection period, Plaintiffs will file a motion for final settlement approval, file a motion for

attorney's fees and costs, and will respond to any objections raised by Class Members. *Id.* § 9.1(e); 9.1(f).

After the Court grants final approval and the Settlement Agreement becomes effective, PDP will provide the first installment payment of $500,000, which will be distributed by the Claims Administrator. Additional installment payments of $500,000 each shall be paid on March 15th (or if such day is a weekend, the Monday immediately following) of each year through 2029. *Id.* § 10.5.

### 4.    Releases

Class Members will release any and all claims they have that relate to payment of wages due or payment for hours worked (including but not limited to overtime and minimum wage), wage/hour recording, and related relief through December 31, 2021. *Id.* at § 1.8. The Notices explain the full scope of the release to Class Members.

### 5.    Attorney's Fees and Costs and Service Awards

In recognition of their service to Plaintiffs and Class Members, the Settlement Agreement provides that Named Plaintiff Katz may seek a service award of $10,00.00. *Id.* at § 11.6. This amount is disclosed on the Settlement Notice.

The Settlement Agreement further provides that Representative Plaintiffs' counsel will seek one-third of the Gross Settlement Amount as attorneys' fees, as well as their reasonable out-of-pocket costs and expenses. Representative Plaintiffs' Counsel will fully brief the basis for their fees and costs requests when they file Plaintiffs' motion for final approval. The Settlement Agreement provides that Counsel's costs shall be reimbursed from the First Installment Payment, but that its fees shall be paid proportionately with each Installment Payment.

6.      **Claims Administrator**

The Parties recommend the Court appoint Angeion Group, LLC as the Claims Administrator. Angeion has estimated its cost to administer this settlement to be: $109,325, and has agreed to cap its fee to $150,000 absent unforeseen circumstances. Swidler Decl. at ¶ 18. The Settlement Agreement provides a set aside for each installment payment, and returns excess amounts set aside in the final payment. Settlement Agreement § 4.2. The Court should authorize Angeion to be paid in accordance these provisions.

C.      **Alleged Facts Regarding the Dispute**

Named Plaintiff Katz worked for PDP as a Field Organizer during the 2016 presidential election. Organizers have various duties, which generally involve recruiting and managing teams of volunteers and facilitating contact of potential voters throughout the campaign for purposes of voter registration and to encourage voters to vote for democratic candidates. Outreach to voters occurs in-person, including door-to-door, online including through social media, and through telephone communications. Named Plaintiff contends that she and other Organizers worked between 60-80 hours per workweek during the campaign. It is undisputed that prior to July 1, 2020, Organizers for PDP received a set salary which ranged between $3,000-$3,500/month, and were paid no overtime premiums for overtime hours worked.

Based on the base salary as well as the number of overtime hours worked between April and November of each election year, Plaintiffs estimated that if they prevailed at trial and convinced the jury that they averaged 60-80 hours of work per workweek, they would recover approximately $11.8 million. Defendant alleged that Plaintiffs were not entitled to overtime because Defendant, a political party, was not engaged in commerce sufficient to trigger coverage under the FLSA and, regardless, that Organizers were properly classified as exempt from overtime

7

requirements under state and federal law.  Furthermore, Defendant argued that state law was preempted by federal election law which regulates political parties and their expense payments. Defendant further argued that requiring it to pay overtime would violate First Amendment associational rights.  Although Plaintiffs prevailed on these arguments for purposes of the Rule 12 motion proceedings, this Court determined the issues were sufficiently novel and open to interpretation that it certified its order for interlocutory appeal, despite the Third Circuit ultimately rejecting the Petition.  Had Defendant prevailed on such defenses, either on appeal or at summary judgment or trial, Plaintiffs and the Class would have received no compensation.

Furthermore, Defendant disagreed with Plaintiffs regarding the number of hours worked by its Organizers.  Though recognizing that its Organizers often worked more than 40 hours in a workweek, Defendant argued that Plaintiffs were overstating the number of hours worked, and argued that 45-55 hours per week or less was a more reasonable estimate of a typical workweek. If Plaintiffs prevailed at trial, but Defendant nevertheless convinced a jury that its estimate of hours was more reasonable, Plaintiffs would have received approximately $3-7 million.

## II.      LEGAL ARGUMENT

### A.      <u>Preliminary Approval is Appropriate.</u>

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the

8

preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Preliminary approval, which is what Plaintiff seeks here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. NEWBERG § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); NEWBERG § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

As explained herein, the Parties' proposed settlement meets all of the requirements for preliminary approval as well as for certification of the class and collective actions.

**B.**    <u>The Rule 23 Settlement Class Should Be Provisionally Certified for Purposes of Settlement.</u>

A settlement class will be certified if it meets the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See, e.g.*, *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 309 (3d Cir. 1998). Rule 23(e) requires Court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Notably, a class may be approved for settlement purposes even though that class might otherwise not pass muster under Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011). Here, the Parties' Rule 23 settlement class should be provisionally certified for purposes of settlement.

By reaching a favorable settlement prior to formal discovery, dispositive motions, or trial, the Parties seek to avoid significant expense and delay and instead ensure recovery for the class. *Ehrheart*, 609 F.3d at 594-95 (3d Cir. 2010) ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

As set forth below, the class action here meets the requirements of Rule 23(a) and (b)(3), and, accordingly, the Court should provisionally certify it for purposes of settlement. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

Here, there the common legal question is whether PDP violated the Pennsylvania Minimum Wage Act by requiring its Organizers to work more than 40 hours per workweek while only

providing a set salary without overtime premiums.  Though the extent of the potential damages differed amongst class members based on length of time each was employed, that class members may receive varying amounts is not at odds with the "commonality" requirement. *See, e.g.*, *Ripley*, 287 F.R.D. at 308 (relying on *Dukes*, 131 S. Ct. at 2551) ("while each [p]laintiff's recovery might be different due to the number of hours that he or she worked without proper compensation, the wrong was from [d]efendant's alleged common timekeeping and payroll policies that precluded proper compensation for overtime work.").

Thus, the "commonality" requirement is met.

### 1.    The Proposed Settlement Class Meets the "Typicality" Requirement of Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims and defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311. The cause of the injury claimed on behalf of the class must be a result of some alleged "common wrong." *Id.* at 312; s*ee also Williams*, 2011 U.S. Dist. LEXIS 102173, at *10 (finding typicality where named plaintiff "was paid under the same payroll policies as the rest of the [c]lass [c]embers, and those payroll policies form the basis of the [c]omplaints").

Here, the claims of Plaintiff are typical of the claims of the class. Plaintiff's claims and the class members' claims are all based on the compensation structure of PDP, which prior to PDP modifying its structure during the 2020 election cycle, paid Organizers a set salary without overtime premiums despite requiring Organizers to work well in excess of 40 hours per workweek.

Accordingly, the "typicality" requirement is met.

2.    **The Proposed Settlement Class Meets the "Adequacy" Requirement of Rule 23(a)(4).**

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "encompasses two distinct inquiries [1] whether the named plaintiffs' interests are sufficiently aligned with the absentees, and [2] [whether] it tests the qualifications of counsel to represent the class." *Cmty. Bank*, 418 F.3d at 303 (internal quotation marks omitted); a*ccord, e.g., Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185 (3d Cir. 2001); *Ripley*, 287 F.R.D. at 309.

Here, Plaintiff Katz has common interests with the putative class members for the same reasons she satisfies typicality: her claims arise from the same factual and legal circumstances as claims of the class. Additionally, Plaintiff has vigorously prosecuted the interests of the class by filing this action and obtaining a favorable settlement. Finally, Plaintiff is represented by counsel who have zealously and competently represented the class's interests and have extensive experience litigating employment class actions, including wage and hour class and collective actions. (*See* Swidler Decl. ¶¶ 8-12.) The adequacy requirement is therefore satisfied.

3.    **The Proposed Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3).**

Once the requirements of Rule 23(a) are satisfied, a court may certify a class under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members" (the "predominance" requirement), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "superiority" requirement). Fed. R. Civ. P. 23(b)(3). "The matters pertinent to these findings include:

12

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

*Id.*

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc). *Accord, e.g., In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, No. 11-md-02284, 2013 U.S. Dist. LEXIS 149323, at *18 (E.D. Pa. 2013). Here, predominance is established because Defendant's conduct in classifying its Organizers as exempt salaried employees while requiring them to work significant overtime is common to all class members and harmed all class members in the same way.

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d at 316 (internal quotation marks omitted); *see also, e.g., Imprelis*, 2013 U.S. Dist. LEXIS 149323, at *19; *Ripley*, 287 F.R.D. at 310. Here, class-wide resolution of this matter is superior because class-wide resolution will permit all class members to recover their unpaid overtime in an efficient and straight-forward fashion. Furthermore, the manageability of a class action – a component of the superiority inquiry – is a less important consideration when certification is sought of a settlement class, as is the case here. *See, e.g., Dugan*, 2013 U.S. Dist. LEXIS 136305, at *11.

Thus, the "superiority" requirement is met.

13

**C.**     **The Court Should Preliminarily Approve the Proposed Settlement Under Rule 23.**

In deciding a motion for preliminary approval of a Rule 23 class action settlement, a court considers whether: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  *E.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 11-md-02284, 2013 U.S. Dist LEXIS 18332, at *7 (E.D. Pa. Feb. 11, 2013); *Curiale v. Lenox Grp.*, No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at *26 (E.D. Pa. Nov. 14, 2008). The presence of these factors "establishes an initial presumption of fairness."  *GMC*, 55 F.3d at 785. *Accord, e.g., Imprelis*, 2013 U.S. Dist. LEXIS, 18332, at *8.  All of these factors are present here. Importantly, "the standard for preliminary approval is far less demanding" the standards imposed at final approval. *Curiale*, 2008 U.S. Dist. LEXIS 92851, at *27 n.4 (internal quotation marks omitted).

First, there is no question that the settlement negotiations here occurred at arm's length. Indeed, after the Parties were unsuccessful at settling their dispute following their mediation in April, they continued to communicate through Judge Benson, and with his assistance and only following many more informal conferences, were able to reach a resolution.

Second, there has been significant adversarial proceedings and discovery prior to the settlement, which permitted both Parties to fairly evaluation the risks associated with continued litigation.  The Parties exchanged significant class-wide discovery, which included, inter alia, information regarding the hours worked, duties, dates of employment, and pay of PDP's Organizers. Furthermore, the Parties engaged in early dispositive motion practice on several of

14

Defendant's affirmative defenses.  This discovery and motion practice enabled Plaintiff's counsel to evaluate the strengths and weaknesses of the claims and calculate estimates of class-wide damages.

Third, counsel for Plaintiffs have considerable experience and success in prosecuting, defending, and settling wage and hour claims, including Rule 23 class actions and FLSA collective actions. (*See* Swidler Decl. ¶ 5); *see also Keller v. T.D. Bank, N.A.*, 2014 WL 5591033 *15 (E.D. Pa. 2014) (Restrepo, J.) (finding Swartz Swidler "has considerable experience handling class and collective action disputes.") *Salinas v. U.S. Xpress, Inc.*, 2018 WL 1477127, *6 (E.D. Tenn. 2018) ("Plaintiffs' counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members"). The recommendation of settlement by such experienced counsel is entitled to significant weight.  *See, e.g., Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"); *Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) *citing Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481-82 (E.D. Pa. 1975) (finding that counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses").

Fourth, there have thus far been no objections to the proposed settlement, though, candidly, that may be because notice has not yet been sent to putative class members; that awaits the Court's certification of a settlement class, as discussed above, and approval of the form of notice, as discussed below. Named Plaintiff has expressed approval of the settlement.

In short, as the settlement was a product of arm's length negotiations, the negotiations followed the exchange of substantial discovery and contested motion practice, the counsel

15

involved are experienced with wage and hour collective and class action litigation, and the Plaintiffs have expressed their acceptance of the settlement, the Court should "apply an initial presumption of fairness" to the settlement and grant preliminary approval of same. *Warfarin*, 391 F.3d at 535. In light of the uncertainties and costs associated with protracted litigation, PDP has agreed to settle this action for a significant amount - $3,500,000. The settlement amount represents a fair value of the attendant risks of litigation, even though recovery could be greater if this case was won at trial and survived through appeal. If PDP prevailed in its defenses to the Plaintiff's claims, the putative class would recover nothing. And it is well-settled that a settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be won at trial. *See Lenahan v. Sears, Roebuck & Co.,* 2006 U.S. Dist. LEXIS 60307, at *48 (D.N.J. 2006) (approving $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial).

### D.   The Court Should Approve the Proposed Settlement Under the FLSA.

The decision to approve the settlement of an FLSA collective action lies within the trial court's discretion. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). In exercising that discretion, the Court should be mindful of the strong presumption in favor of settlement. *E.g., Farris v. J.C. Penney Co.*, 176 F.3d 706, 711 (3d Cir. 1999); *Morales v. PepsiCo, Inc.*, 2012 U.S. Dist. LEXIS 35284, at *3 (D.N.J. 2012).

#### 1.   The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute.

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 U.S. Dist.

16

LEXIS 38663, at *50 (citing *Lynn's*, 679 F.2d at 1354). Typically, courts regard the adversarial

nature of a litigated FLSA case to be an adequate guarantor of fairness. *Lynn's,* 679 F.2d at 1353-

54; *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *51. If the proposed settlement reflects a

"reasonable compromise of disputed issues," the court should approve the settlement. *Lynn's*, 679

F.2d at 1354; *accord Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52.

### 2.      The Parties Have a *Bona Fide* Dispute.

The Parties' agreement settles several disputed legal and factual issues. Plaintiff filed the

action claiming that PDP failed to pay overtime wages to its Organizers and instead only paid them

a monthly salary.  At all times, PDP has disputed its liability on these claims, asserted a number

of substantive and procedural defenses to liability and, even assuming its liability, maintained that

damages were limited.  PDP's defenses included that:

- Defendant alleged that Plaintiffs were not covered employees within the meaning of the FLSA because they did not engage in interstate commerce;
- Defendant alleged that it was not a covered enterprise because it is a political party.
- Defendant alleged that Organizers were properly classified as exempt from the FLSA's overtime requirements.
- Defendant alleged that Organizers, while working overtime, did not work the extent of overtime claimed by Plaintiffs.
- Defendant alleged that even if its policies violated the FLSA, it did not violate the law willfully and had a good faith basis for believing its policies were in compliance with the FLSA; therefore, the statute of limitations would be only two-years, and Plaintiff would not be entitled to liquidated damages.

Thus, there are *bona fide* disputes between the Parties that were resolved through the arm's

length mediated settlement.  *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *50-52.

### 3.      The Proposed Settlement is Fair and Reasonable.

The terms of the proposed settlement are fair. As noted above, courts look to the adversarial

nature of a case as an indicator of the fairness of the settlement. *Lynn's,* 679 F.2d at 1353-54;

*Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *50-51; *Clark v. Ecolab*, 2010 U.S. Dist. LEXIS 47036, at *24 (S.D.N.Y. 2010). The Parties' settlement negotiations also demonstrate fairness. Former Judge Benson of the Western District of Pennsylvania facilitated the negotiations through an all day Zoom mediation and then through multiple telephone conferences.  The use of an independent mediator who is former federal judge "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *30.  *Accord, e.g., Castagna*, 2011 U.S. Dist. LEXIS 64218, at *14.

The settlement here carries other indicia of fairness.  Throughout the process, Plaintiff was represented by competent counsel experienced in wage-and-hour class litigation.  (Swidler Decl. § $$$). Furthermore, the settlement was consummated after contested motion practice and substantial investigation, which included, *inter alia*, the production of class-wide data, so that the parties were fully informed of the legal issues and evidence. Significantly, Plaintiff and the putative collective action members will receive the settlement money, avoiding the risks and delay inherent in continued litigation. These factors clearly establish fairness. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *29-30, 50-52.

Accordingly, the proposed settlement is fair and reasonable.

### 4.   The Settlement is Consistent with Public Policy.

Like other jurisdictions, the Third Circuit recognizes a strong public policy in favor of settlements, since "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts."  *D.R. by MR. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).

Here, the settlement is consistent with that policy because it resolves a pending case on behalf of a potential opt-in class of more than 800 class members and avoids a jury trial and likely

appeals.  Because the settlement represents a fair settlement of a *bona fide* dispute, public policy

weighs heavily in favor of approval.  *Id. See also Farris*, 176 F.3d at 711.

### E.   The Service Payments Are Reasonable and Appropriate.

Service payments are the norm in wage-and-hour class litigation. *Bredbenner*, 2011 U.S.

Dist. LEXIS 38663, at *64. Their purpose is to compensate representative plaintiffs "for the

services they provided and the risks they incurred during the course of the litigation." *Cullen v.*

*Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). Plaintiff Katz here took risks as the

Rule 23 and FLSA class representative. Her services included the filing of a hybrid collective/class

action that provides a large group of current and former PDP employees with the opportunity to

recover a portion of their allegedly unpaid compensation. Plaintiff Katz assisted counsel in

investigating the claims and provided documents and information to Class Counsel.  Plaintiff Katz

was further actively involved in the mediation and assisted in finding helpful witnesses.

At the final approval stage, Plaintiff intends to seek Court approval for the payment of

$10,000 to Plaintiff Katz. The Service Payment is well within the accepted range in this District

as numerous courts have awarded service awards equal to or higher than those proposed here.  *See*

*e.g., In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 282, 284 (3d Cir. 2009) ($10,000 service

award); *Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 (D.N.J. 2013)

(six named plaintiffs received service award of either $5,000 or $6,000); *In re Mercedes-Benz Tele*

*Aid Contract Litig.*, 2011 U.S. Dist. LEXIS 101995, at *16-17 (D.N.J. 2011) ($5,000 to each

representative plaintiff); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *68  ($10,000 for each

representative plaintiff).

**F.**     **The Court should preliminarily approve the Class Counsel's fees and costs request.**

The final decision regarding the reasonableness of class counsel's fees and costs should be made during the Final Approval Hearing, following notice to class members and the objection period. The reasonableness of such fees and costs are better evaluated after such period, as this Court will be made aware of any objections by then and class counsel will spend a substantial amount of additional time and effort working on this matter from the date of the instant motion through the date of the Final Approval Hearing.

However, it is worth noting that the attorney's fees and costs in this matter are requested as a percentage of the settlement, which is the favored method for calculating attorney's fees in such cases.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins. Co. America Sales Practice Litig. Agent*, 148 F.3d 283, 333 (3d Cir. 1998); *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *52-53 (D.N.J. 2011) (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner*, 2011 U.S. Dist. LEXIS at *53 (citing *Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009)); *In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009); *Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006).

Even in cases where statutory attorney's fees attach, such as in FLSA cases, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored* because "regardless [of] how a total settlement structure is formally structured … every dollar

20

given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-22 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of "economic reality" of such arrangement).

In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *See In re Gen. Motors*, 55 F.3d at 822; *citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990). Here, class counsel intends to request a fee of thirty-three and one-third percent (33 1/3%) of the settlement fund, totaling $1,166,666. This percentage is in line with what is routinely provided in such cases. *See, e.g. Bredbenner*, 2011 U.S. Dist. LEXIS at *60-61; *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3% in common fund case and citing to ten cases from this Circuit holding the same).

Hence, while counsel will further substantiate this request prior to the Final Settlement Hearing (after any objections will be known), a preliminary determination that the fee request is fair is appropriate.

### G.    The Court Should Approve the Proposed Form of Notice and the Parties' Notice Plan.

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *LaChance v. Harrington*, 965 F. Supp. 630, 636 (E.D. Pa. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The form of notice must be sufficient to accomplish this purpose in accordance with the dictates of Fed. R.

Civ. P. 23(c)(2) and 23(e). Furthermore, "[a]lthough the notice need not be unduly specific … the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 308-10 (3d Cir. 2004) (internal quotations omitted). *Accord Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the form and method of the notices of the Parties' proposed settlement satisfies all due process considerations and meets the requirements of the Federal Rules of Civil Procedure. In particular, the Notice of Settlement (*see* Settlement Agreement, Exhibit A), provides detailed information about the settlement terms (including how the fund will be allocated). It also sets forth class counsel's intent to request attorneys' fees, reimbursement of expenses, a service payment for Named Plaintiff Katz, and detailed information about the claims being released. In addition, the Notices provide information about the date for the Fairness Hearing, settlement class members' rights to object (and deadlines and procedures for objecting), and the procedure to receive additional information. Further, the Notices provide potential class members with contact information for the claims administrator and undersigned counsel.

The proposed notice procedure also satisfies due process considerations. The proposed notice procedure, including individualized mailing, procedural safeguards such as skip tracing for undelivered notices (Settlement Agreement, § 6.2) has been recognized as the best notice that practicably can be given to absent class members. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974); *Lawson v. AT&T Mobility, LLC*, 687 F.3d 109, 123-24 (3d Cir. 2012); *In re Diet Drugs*, 369 F.3d at 308-310; *Grunin v. International House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir. 1975). The sixty (60) day deadline for submitting a claim form, opt-ing out, or objecting, with extra time built in for a second mailing likewise is generally acceptable. *See, e.g.,*

*Aboud v. City of Wildwood*, 2013 U.S. Dist. LEXIS 70083, at *23 (D.N.J. 2013) ("The court finds

that a 45-day opt-in period is appropriate here"); *Arpi v. Sternbach Holdings, LLC*, 2012 U.S. Dist.

LEXIS 183648, at *4 (S.D.N.Y. 2012) (45 days).

Accordingly, the form of the Notices and proposed notice procedures satisfy both due

process and the requirements of Rule 23 and should be approved.

### H.      The Court Should Appoint Angeion Group, Inc. as Claims Administrator.

The Settlement Agreement provides that the costs of administering the settlement shall be

paid from the Qualified Settlement Fund. Where a settlement agreement calls for the costs of

administration to be borne by the settlement fund, the Court should approve same. *See, e.g., In re

High-Tech Emple. Antitrust Litig*., 2013 U.S. Dist. LEXIS 180530, *19 (N.D. Cal. Oct. 30, 2013)

("[a]ll costs incurred in disseminating Notice and administering the Settlement shall be paid from

the Settlement Fund pursuant to the Settlement Agreement").

The Court should appoint Angeion Group, Inc. as the Settlement Administrator and should

order that it be paid from the settlement fund.

The Settlement Administrator will send settlement notices, perform the calculations

necessary to distribute the settlement, and provided the Court grants final approval, will hold the

fund in trust and issue checks and Forms W-2 and 1099 to all Settlement Class Members in

accordance with the Court's order and the Settlement Agreement.

Thus, Plaintiffs respectfully request that this Court order that Claims Administrator shall

be paid its reasonable fees and costs incurred out of the Settlement Fund, not to exceed $150,000.

### III.      CONCLUSION

For the reasons as stated above, Plaintiffs request that this Honorable Court grant their

motion and preliminarily approve the class and collective action settlement in this matter and

schedule a final settlement fairness, approximately 120 days after the Court's grants preliminary approval, or as soon thereafter as the Parties may be heard.

Respectfully submitted,

/s/ Justin Swidler
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
9 Tanner Street, Ste. 101
Haddonfield, NJ 08033
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: January 6, 2023

24