THE HONORABLE GENE E. K. PRATTER

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETHANY KATZ, et al., | Case No. 16-5800 |
| Plaintiffs, | |
| v. | |
| DNC SERVICES CORPORATION d/b/a DEMOCRATIC NATIONAL COMMITTEE et al., | |
| Defendants. | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement" or "Settlement") is made and entered into by and between Plaintiff Bethany Katz, on behalf of herself and the Settlement Class (defined below) she represents under Rule 23 of the Federal Rules of Civil Procedure and pursuant to Section 16(b) of the Fair Labor Standards Act, and Defendant Pennsylvania Democratic Party ("Defendant" or "PDP"), subject to the Court's approval.

## RECITALS

On November 9, 2016, Named Plaintiff (defined below) filed a Complaint alleging that Defendant[1] violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), by failing to pay overtime for all hours worked. The Complaint also alleged Rule 23 class action claims that

---

[1] Named Plaintiff had also named the Democratic National Committee ("DNC") as a defendant, although the DNC was later dismissed as a defendant. *See* ECF No. 158. In addition, on March 7, 2017, Named Plaintiff filed a Second Amended Complaint against several other state party defendants. ECF No. 68, all of which the Court dismissed as defendants on November 19, 2017, for want of personal jurisdiction. ECF No. 121.

Defendant violated the Pennsylvania Minimum Wage Act ("PMWA") (collectively, the "Litigation"). Defendant denies these allegations.

On February 16, 2018, after the Court had dismissed several of the claims and all other state parties named as defendants in the lawsuit, Named Plaintiff filed a Third Amended Complaint, in which she again asserted individual, class, and collective action claims against the PDP and DNC[2] under the FLSA, 29 U.S.C. §§ 201, et seq. and PMWA, 43 P.S. §§ 331.101 et seq. The TAC is the operative complaint in this Litigation. In the TAC, Ms. Katz sought to represent "all persons who performed worked or work as organizers or in similar positions in the Commonwealth of Pennsylvania who were treated as exempt from overtime by . . . Defendant PDP and who worked in this capacity at any point in the three (3) years preceding the date the instant action was initiated." ECF No. 135 at 13.

On March 13, 2018, the PDP filed a Motion to Dismiss the TAC. ECF No. 140. On September 28, 2018, Named Plaintiff filed a motion seeking to conditionally certify a collective action under the FLSA. ECF No. 156.

On September 27, 2019, the Court granted in part and denied in part the PDP's Motion to Dismiss, dismissing with prejudice Ms. Katz's civil conspiracy claim, but permitting Ms. Katz's FLSA and PMWA claims to proceed against the PDP. *See* ECF No. 158. In the same order, the Court also dismissed defendant the Democratic National Committee as a defendant in the Litigation, leaving PDP as the sole defendant. *Id.*

Shortly thereafter, PDP filed an interlocutory appeal, and the Court stayed the case until September 29, 2020. ECF Nos. 163, 172. On September 29, in lifting the stay, the Court ordered the PDP to respond to Ms. Katz's motion for conditional certification. ECF No. 172. On March

---

[2] As noted above, the claims against the DNC were dismissed with prejudice from the lawsuit, although Ms. Katz did not thereafter formally amend her complaint to remove the DNC as a defendant.

30, 2021, the Court issued an order granting conditional certification. ECF No. 192.

On April 26, 2021, the Court ordered that the notice to opt-in to the collective class be sent to Pennsylvania state party organizers who worked for PDP between November 9, 2013, to present. PDP compiled a list consisting of approximately 817 organizers during this period. To date, 114 opt-in consent notices have been filed with the Court.

On April 27, 2022, the parties engaged in mediation via Zoom with Kenneth J. Benson, a former United States Magistrate Judge for the United States District Court for the Western District of Pennsylvania. Following additional discussions after the mediation, the parties have reached the agreement set out herein. The Parties and their counsel believe that the interests of all concerned are best served by compromise, settlement, and dismissal of the Litigation with prejudice, without the expense, delay, diversion, and risk of protracted and complex litigation, and they have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests.

## 1.    DEFINITIONS

1.1.    The term "Settlement Class Members" means all persons who worked for PDP in Pennsylvania from November 9, 2013, to December 31, 2021 in a Field Organizer capacity (the "Covered Position"). The Settlement Class Members include all persons identified through PDP's payroll records (the "Data") for whom the Data reflect any work hours in a Covered Position since November 9, 2013 to December 31, 2021. There are approximately 831 Settlement Class Members. Defendant represents that any person hired as a Field Organizer after the end of the class period (December 31, 2021) has been classified as non-exempt and paid overtime pursuant to the terms of a Collective Bargaining Agreement.

1.2.    The term "Named Plaintiff" means Bethany Katz.

3

1.3.    The term "Class Counsel" means the undersigned Plaintiffs' lawyers, Swartz Swidler, LLC.

1.4.    The term "Parties" means Named Plaintiff and Defendant.

1.5.    The "Class Settlement Fund" is a total of Three Million, Five Hundred Thousand Dollars and Zero Cents ($3,500,000.00), which Defendant shall pay in according to the terms of this Settlement Agreement, and will be payable in seven installments of approximately $500,000 per year over the six (6) year period following the Effective Date (defined below) in accordance with the schedule set forth in Paragraph 10.4.1.

1.6.    The "Net Class Fund" is the amount to be distributed to Settlement Class Members (including Named Plaintiff) after the amounts of court-approved Service Award, Attorneys' Fees and Actual Expenses, and Settlement Administration Costs, defined below in this Agreement, are deducted from the Class Settlement Fund.

1.7.    The "Released Party" means Defendant, Defendant's predecessors, successors, parents, subsidiaries, and affiliated entities including their former and present officers, directors, agents, employees, attorneys, insurers, representatives, and benefit plans.

1.8.    "Released Claims" means any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Settlement Class Member might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to payment of wages due or paid for hours worked (including but not limited to overtime and minimum wage), wage/hour recording, and related relief through December 31, 2021, except to the extent that any such claim may not be waived as a matter of law. The Released Claims specifically include without

4

limitation: exemplary damages, liquidated damages, attorneys' fees, and penalties arising under federal, state, or local wage/hour laws, including but not limited to the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, and their respective implementing regulations. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including December 31, 2021  The Released Claims do not include claims of employment discrimination, retaliation, or civil rights violations (including without limitation claims arising under Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act) or other claims related to employment but not related to hours worked or the payment of wages.

1.9.    "Business Days" means weekdays (Monday through Friday), excluding weekends and paid holidays observed by PDP.

## 2.    NO ADMISSION OF LIABILITY; COMPROMISE ACKNOWLEDGEMENT

2.1.    The Parties agree that this Agreement is entered into solely on the basis of a compromise of disputed claims, and this Agreement is not, and is not to be construed as, an admission by any Party of any liability whatsoever. Nor is it, and nor will it be construed as, an admission of any act or fact whatsoever, including any violation of federal, state, local, or common law, statute, ordinance, directive, regulation or order. This Agreement, and any communications, papers, proceedings or orders related to this Agreement, are settlement documents and shall be inadmissible in evidence in any proceeding, other than an action or proceeding to approve, interpret or enforce this Agreement.

2.2.    The Parties have investigated the facts and law during this Litigation, including obtaining and reviewing declarations and statements from the Named Plaintiff and other Settlement Class Members regarding job duties, hours worked and/or recorded, and wages paid;

reviewing documents related to Defendant's policies and practices; analyzing emails and other documents related to the Settlement Class Members' job duties and decision-making authority; and analyzing Defendant's payroll records. The Parties have also analyzed the applicable law and the damages claimed by Named Plaintiff. Relying on their fact investigations, analyses, and the law, the Parties have engaged in arm's length settlement negotiations.

2.3.    Named Plaintiff believes the claims asserted in the action have merit. However, Named Plaintiff recognizes the expense and length of continued litigation through prolonged discovery, vigorous motions practice concerning, *inter alia*, the possibility that either the FLSA collective action and/or the Rule 23 class action may not be certified or may later be decertified, summary judgment motions practice regarding Defendant's FLSA coverage and exemption defenses and other liability issues, the difficulties in proving off-the-clock work claims, if any, on a class-wide basis, the trial, and possible appeals. Named Plaintiff has also taken into account the uncertain outcome and the risk of any litigation, as well as the delays inherent in such litigation and the likelihood of protracted appellate review. Named Plaintiff believes that the settlement reached confers substantial benefits and that the settlement is fair, reasonable, adequate, in accordance with the law, and in the best interests of the Settlement Class Members.

2.4.    Defendant maintains that it has complied with its obligations under the FLSA and Pennsylvania state and local law and believes Named Plaintiff's claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs will fail. Defendant maintains that the asserted claims are inappropriate for collective treatment under 29 U.S.C. § 216(b) or class treatment under Fed. R. Civ. P. 23, except for purposes of settlement. Defendant further maintains that it is not subject to jurisdiction/coverage under the statutes cited in the Complaint, including the FLSA. Defendant has vigorously contested the claims, but Defendant

6

has taken into account the uncertainty and risks inherent in any litigation and believes that further litigation would likely be protracted, expensive, and contrary to its best interests. Substantial amounts of time, energy, and other resources have been and, absent settlement, will continue to be committed to Defendant's defenses against the claims asserted in this Litigation. In light of these factors, Defendant believes that settlement is the best way to resolve the disputes among the Parties while minimizing its own further expenditures.

2.5.    The settlement will not be considered a concession or admission by Defendant of any violation of federal, state, or local law, statute, regulation, rule or order or any obligation or duty at law or in equity. Defendant's agreement to resolve the claims of all Settlement Class Members will not be considered an admission or concession that collective or class action treatment would have been appropriate in this Litigation for any purpose other than settlement, or that collective or class action treatment would be appropriate in any other action.

2.6.    Nothing in this Agreement will be deemed a concession or admission by any Party as to the amount of time the Settlement Class Members worked, including any amount of time in excess of 40 hours in a workweek.

2.7.    Class Counsel, after consultation with Named Plaintiffs, have independently determined that settlement and dismissal of the claims asserted in this Litigation are proper under the circumstances of this Litigation and the terms of this Agreement.

2.8.    This Agreement, including the Notice of Class and Collective Action Settlement ("Notice") attached hereto as Exhibit A, contains all of the agreements between the Parties and their respective counsel relating to the settlement of the Litigation. There are no undisclosed side agreements between the Parties or their counsel. At all times, the negotiations leading to the Agreement were adversarial, non-collusive, and at arm's length.

**3.      TIMELINE FOR SETTLEMENT**

3.1.    The Parties contemplate the following timeline of settlement events:

a.       After the Parties execute this Agreement, Named Plaintiff will submit a Joint Motion for Preliminary Approval of Settlement as set forth in Paragraph 5.3 of this Agreement on or before the deadline set by the Court. The date on which the Court issues an order granting such motion is referred to herein as the "Preliminary Approval Date." Class Counsel will draft the motion and supporting memorandum and will submit it to Defendant for review at least five (5) Business Days prior to filing the Joint Motion and that Named Plaintiff will agree to reasonable edits from Defendant.

b.       Within fifteen (15) Business Days after the Preliminary Approval Date, Defendant will provide the Class List (defined below) to the Settlement Administrator (defined below) and Class Counsel, as set forth in Paragraph 4.2 of this Agreement.

c.       Within fourteen (14) calendar days after it receives the Class List from Defendant, the Settlement Administrator will distribute the Notice (defined below), as set forth in Paragraph 6.1 of this Agreement. The date on which the Settlement Administrator distributes the Notice is referred to herein as the "Notice Distribution Date."

d.       Settlement Class Members, exclusive of any Named Plaintiff, shall have sixty (60) calendar days from the Notice Distribution Date to submit an Opt Out Statement (defined below) or object to the Settlement, in accordance with Paragraphs 7.1 and 8.1 of this Agreement. Any Settlement Class Member who timely submits an Opt Out Statement will not receive a Settlement Payment (defined below) and will not be deemed to have released any of the Released Claims.

e.       No later than seven (7) calendar days before the Final Approval Hearing

(defined below), or by such other date set by the Court, Named Plaintiff shall file a Petition for Attorneys' Fees and Actual Expenses, in accordance with Paragraphs 9.1 and 9.4 of this Agreement.

f.      No later than seven (7) calendar days before the Final Approval Hearing, or by such other date set by the Court, Named Plaintiff shall file a Joint Motion for Final Approval of Settlement, as set forth in Paragraph 9.2 of this Agreement. The Court's order granting such motion is referred to herein as the "Final Approval Order," and the date such order is issued by the Court is referred to herein as the "Final Approval Date."

g.      Within seven (7) calendar days after the Final Approval Date, the Settlement Administrator shall provide the Settlement Administrator Report as defined in and in accordance with Paragraph 10.3 of this Agreement.

h.      The "Effective Date" shall be the date on which the Final Approval Order is not subject to further appeal or review.

i.      Within thirty (30) calendar days after the Effective Date, Defendant will deposit the First Installment (defined below) into the Class Settlement Fund into the QSF (defined below), in accordance with Paragraph 10.5 of this Agreement. The remaining installments (i.e., the Second through Seventh Installments) will be deposited in accordance with the schedule set forth in Paragraph 10.4.1.

j.      Within fourteen (14) calendar days after Defendant funds an installment into the QSF, the Settlement Administrator shall mail the Settlement Payments to Settlement Class Members who do not opt out in accordance with Paragraph 7.1, and pay Class Counsel approved expenses and a pro rata amount of their Attorneys' Fees as set forth in the Final Approval Order. In the First Installment, the Settlement Administrator shall also mail the Service Award to Named

Plaintiff.

k.      The deadline for Named Plaintiff and Settlement Class Members to cash Settlement Payments and Service Award will be one hundred and eighty (180) calendar days after the date the applicable installment of the Settlement Payments and the Service Award are issued by the Settlement Administrator. This one hundred and eighty (180) day period shall be called the "Cashing Period." Any Settlement Class Member who, with regard to any installment cashes their Settlement Check if so deposited pursuant to Paragraph 3.1(l), will be deemed to have opted in to the FLSA collective action in accordance with Paragraph 14.2. During the Cashing Period, the Settlement Administrator shall reissue Settlement Checks at the request of any Settlement Class Member; any such Settlement Class Member will have until the end of the Cashing Period, or thirty (30) calendar days after the Settlement Administrator mails the reissued Settlement Check, whichever is later, to cash the Settlement Check. During the Cashing Period, the Settlement Administrator will provide the Parties, upon request, a list of all Settlement Class Members who have not cashed their Settlement Payments and Service Award.

l.       Even if the Cashing Period has ended, if the funds which would have been provided to the Settlement Class Member remain in the QSF, the Settlement Administrator shall reissue a check, when requested by the Settlement Class Member. In such circumstances, the check shall have an expiration date of thirty (30) days from the date of issuance. The Settlement Administrator shall notify the Parties, by written email, of each such instance of a reissued check outside of the Cashing Period, within three (3) days of issuing such check.

m.      Any funds not cashed or deposited by a Settlement Class Member shall be added to the QSF and redistributed to other Class Members at the time of the next future installment.  Any unclaimed funds remaining after the final installment shall be redistributed to

Settlement Class Members who deposited their final installment check if economically feasible to do so.  Any remaining amounts not redistributed shall be donated to ACLU-PA.

4.      **APPOINTMENT OF SETTLEMENT ADMINISTRATOR**

4.1.      The Parties agree that, subject to the approval of the Court, the Parties will retain the firm of Angeion Group, Inc. to act as the independent Settlement Administrator, provide Notice as applicable to Settlement Class Members, open and manage a Qualified Settlement Fund ("QSF") under Section 468B of the Internal Revenue Code (the "Code") and Treas. Reg. § 1.468B-1 *et seq.*, distribute Settlement Payments and Service Award, and perform other tasks consistent with the orders of the Court or this Agreement. Defendant will be consulted by Class Counsel and/or the Settlement Administrator with respect to any issues that arise with regard to settlement administration, and the Parties agree to work together in good faith to resolve such issues. The Settlement Administrator will be paid for all Settlement Administration Costs out of the Class Settlement Fund in accordance with Paragraph 11.3. Class Counsel represents that the Settlement Administrator has committed that Settlement Administration Costs will not exceed $150,000, inclusive of the Settlement Administrator's fee and costs necessary to administer the Agreement. The Parties' expectation is that any additional costs incurred by the Settlement Administrator shall be absorbed by the Settlement Administrator, though the Settlement Administrator may seek approval to obtain additional amounts for unexpected or unforeseen costs; if the Court were to approve such costs, the Settlement Administrator would recover such funds from the Reserve Fund only. The parties agree that Defendant shall not be responsible, and shall be held harmless for, any claim by the Settlement Administrator for reimbursement of Settlement Administration Costs in excess of those approved for payment by the Court from the Class Settlement Fund.

4.2.      The Settlement Administrator shall set aside amounts from each installment of the

7 installment payments (totaling $150,000) which shall be used to pay the Settlement Administrator for its costs and fees incurred associated with administering the Settlement.  The amount to be set aside shall be as follows: $37,000 from the First Installment, $20,000 each from installment 2-6, and $13,000 from the Seventh Installment.  Provided, however, that if there is more than $13,000 set aside following receipt of the Seventh Installment,, the excess shall be distributed to the class and no additional amount shall be set aside from the final payment. Similarly, if more than $0 remains set aside but less than $13,000, only the difference between $13,000 and the amount already set aside shall be added, so that the final amount set aside after receipt of the final payment shall equal exactly $13,000.

4.3.    Any fee or cost provided to the Settlement Administrator in administering the settlement shall be paid only from the amount set aside. The Settlement Administrator shall not pay any fee or cost to itself until at least 15 calendar days after it has provided an invoice to Class Counsel showing all services it has rendered for which it seeks to be paid, and shows the amount charged for each service/item.  If Class Counsel objects in writing to any portion of the invoice, the Settlement Administrator shall confer with Class Counsel to resolve the dispute, and if the dispute cannot be resolved, shall submit the dispute to the Court for resolution.

4.4.    No later than the date set forth in Paragraph 3.1(b) above, Defendant will provide the Settlement Administrator and Class Counsel with a complete and accurate Class List, which shall provide, based on its payroll records: the (i) name, (ii) best known e-mail address, (iii) best known mailing address, (iv) known telephone number(s), and (v) Social Security Number of each Named Plaintiff and Settlement Class Member; and (vi) total number of workweeks each Named Plaintiff and Settlement Class Member worked for Defendant in a Covered Position during the Covered Period based on Defendant's records (the "Class List").

4.5.     The actions of the Settlement Administrator shall be governed by the terms of the Agreement and the Preliminary Approval Order, with the latter taking precedence in the event of conflict. Class Counsel and Defendant's counsel may provide relevant information and guidance as needed by the Settlement Administrator in the performance of its duties and engage in related communications with the Settlement Administrator with notice and copies to one another, but without notice or copies to the Settlement Class Members or the Court, unless requested by the Court.

## 5.     PRELIMINARY COURT APPROVAL OF SETTLEMENT

5.1.     For settlement purposes only, the Parties agree that: (a) a settlement class may be certified in the Rule 23 class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, consisting of all Settlement Class Members; and (b) an FLSA collective may be certified in accordance with 29 U.S.C. § 216(b), consisting of all Settlement Class Members (the "Settlement Class"). If this Agreement and the settlement it memorializes are not finally approved by the Court, or if any appeal results in a reversal of the Final Approval Order that affects: (i) the amount to be paid by Defendant under this Agreement; (ii) the releases given by Named Plaintiff or Settlement Class Members who do not opt out; or (iii) any other material aspect of the settlement set forth in this Agreement, then the Parties' agreement concerning certification stated in this Paragraph 5.1 shall become null and void, and any court order certifying a Rule 23 class or FLSA collective based on this Agreement shall be vacated without prejudice to the right of the Parties to seek or oppose certification and/or decertification.

5.2.     This Agreement will become final and effective only upon the occurrence of all of the following events: (a) the Agreement is executed by Named Plaintiff, Defendant, Class Counsel, and counsel for Defendant; (b) the Court approves the material terms of the settlement as set forth

in the Agreement and enters, without material change, the Preliminary Approval Order described in Paragraph 5.3; (c) the Notice is sent to the Settlement Class Members; (d) Settlement Class Members are afforded the opportunity to exclude themselves from the Settlement by submission of an Opt Out Statement; (e) Settlement Class Members are afforded the right to file written objections; and (f) the Court holds the Final Approval Hearing and enters a Final Approval Order (including approval and final certification of a Rule 23 settlement class and FLSA collective as set forth above) which enter the terms of this Settlement Agreement as a stipulated judgment and dismiss this case with prejudice, and sufficient time passes such that the Final Approval Order is no longer appealable, or, if an appeal is filed, the Final Approval Order is finally approved upon appeal.

5.3.    No later than the date set forth in Paragraph 3.1(a) above, the Parties will jointly submit this Agreement to the Court with an appropriate Joint Motion for Preliminary Approval of Settlement. In such motion, the Parties will request that the Court enter an order: (1) preliminarily approving the settlement reached by the Parties in this Litigation as embodied in this Agreement; (2) approving the form of the Notice to Settlement Class Members; (3) appointing Angeion Group, Inc. as the Settlement Administrator; (4) appointing Plaintiffs' Counsel as Class Counsel; and (5) setting a Final Approval and Fairness Hearing (the "Final Approval Hearing") no earlier than one hundred twenty (120) days after entry of the Preliminary Approval Order. Class Counsel agrees to include arguments that the settlement is fair and that the Named Plaintiff supports it, and Class Counsel agree to make the same representations during the Preliminary Approval hearing as may be required.

5.4.    Defendant shall provide notice to the appropriate governmental authorities in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715.

5.5.    If the Court denies the Joint Motion for Preliminary Approval of Settlement, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, this Settlement Agreement will be null and void and the Litigation will resume as if no settlement had been attempted.

## 6.    DISTRIBUTION OF SETTLEMENT CLASS NOTICE

6.1.    No later than the date set forth in Paragraph 3.1(c) above, the Settlement Administrator will e-mail and mail to each Settlement Class Member the Notice. The Settlement Administrator will run the mailing addresses from the Class List through the National Change of Address ("NCOA") database of the United States Postal Service ("USPS"). The Notice will inform the Settlement Class Members that they have a deadline, which will be sixty (60) calendar days from the mailing of the Notice to object or opt out as described in Sections 7 and 8 below ("Response Deadline").

6.2.    The Settlement Administrator will conduct an address trace on all Settlement Class Members whose Notice is returned undeliverable and will resend the Notice to all updated addresses obtained through the trace. The Response Deadline will be extended by fifteen (15) calendar days from the date such Notice is re-mailed. Unless a Notice is returned to the Settlement Administrator by the USPS as undeliverable, each Notice shall be deemed mailed and received by the Settlement Class Member to whom it was sent seven (7) calendar days after mailing.

## 7.    OPT OUT PROCEDURE

7.1.    If a Settlement Class Member intends to opt out of the Litigation, they must mail or e-mail a written statement, signed by the Settlement Class Member or his or her legal representative, ("Opt Out Statement") to the Settlement Administrator that states substantially as follows: "I request to be excluded from the settlement in *Katz v. DNC et al.*, Case No. 2:16-cv-

05800 (United States District Court for the Eastern District of Pennsylvania)." The Settlement Class Member must also include their name, address, email address, and telephone number(s). To be effective, the Opt Out Statement must be e-mailed or mailed to the Settlement Administrator via First Class United States Mail, postage prepaid and postmarked by the Response Deadline.

7.2.    The Settlement Administrator shall retain copies of any Opt Out Statements and provide them to Defendant and Class Counsel within three (3) Business Days after receipt. The Settlement Administrator shall serve a final list of all Opt Out Statements to the Parties within three (3) Business Days after the Response Deadline.

7.3.    The Settlement Administrator shall, within five (5) Business Days after the Response Deadline, provide to Defendant and Class Counsel a declaration under oath providing a list of all individuals from whom it has received a timely Opt Out Statement. Class Counsel shall file the declaration with the Court within 3 business days of receipt.

7.4.    Any Settlement Class Member who does not timely submit an Opt Out Statement pursuant to this Agreement will be deemed to have accepted the settlement terms set forth in this Agreement and will have forever waived their right to opt out of the Settlement Class.

7.5.    The Parties agree that Named Plaintiff may not exclude herself from the Settlement Class.

7.6.    Any Settlement Class Member who submits a timely and valid Opt Out Statement shall not: (1) be bound by any orders or judgments entered in this Litigation; (ii) be entitled to benefits or relief under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to the Settlement or appeal from any order of the Court.

7.7.    Subject to Paragraph 7.8, any Settlement Payment allocated to a Settlement Class Member who submits a timely and valid Opt Out Statement shall be reallocated to those Settlement

Class Members who do not opt out on a pro-rata basis prior to the distribution of Settlement Checks (defined below) in accordance with Section 12 below.

7.8.    In the event Settlement Class Members representing ten percent (10%) or more of the Settlement Class submit timely Opt Out Statements to the Settlement Administrator, Defendant may, at its option, void the Agreement by providing notice to that effect to Class Counsel no later seven (7) calendar days before the Final Approval Hearing. If Defendant chooses to void the Agreement, Defendant shall bear any Settlement Administration Costs incurred by the Settlement Administrator to that point.

## 8.    OBJECTIONS TO SETTLEMENT

8.1.    Only Settlement Class Members, excluding Named Plaintiff, may object to the Settlement. To object to the Settlement, such individual must e-mail or mail to the Settlement Administrator either a written objection to the Settlement or a written notice of their intention to appear and object at the Final Approval Hearing no later than the Response Deadline. The statement must set forth in clear and concise terms the legal and factual arguments supporting the objection, and any reasons not included in the statement will not be considered. The statement must also include the name, address, email address, and telephone number(s) for the individual making the objection. The Settlement Administrator will provide the Parties with copies of each objection by email within two (2) business days of receipt.

8.2.    The Settlement Administrator shall, within five (5) Business Days after the Response Deadline, provide to Defendant and Class Counsel a declaration under oath providing a list of all individuals from whom it has received a timely Objection, and shall the Objection, and any and all attachments to such Objection, to the declaration. Class Counsel shall file the declaration with the Court within 3 Business Days of receipt. Class Counsel will redact all personal

data identifiers and file the originals of any and all objections with the Court within three (3) Business Days after the Response Deadline

8.3.    An individual who files objections to the Settlement in accordance with Paragraph 8.1 ("Objector") has the right to appear at the Final Approval Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Final Approval Hearing must state their intention to do so in writing at the time he or she submits his or her written statement. An Objector may withdraw their objection at any time. No Objector may present an objection at the Final Approval Hearing based on a reason not stated in their written statement. A Settlement Class Member who has submitted an Opt Out Statement may not submit objections to the Settlement.

8.4.    The Parties may file with the Court written responses to any filed objections no later than three (3) Business Days before the Final Approval Hearing.

8.5.    At no time shall any Party or their counsel seek to solicit or otherwise encourage Settlement Class Members to submit written objections to the Settlement Agreement, request exclusion from the Settlement Class, or appeal the Court's final judgment.

8.6.    Any Objector whose objection is overruled will be paid their Settlement Payment under the Settlement.

8.7.    Individuals who fail to timely object in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objection to the settlement set forth in this Agreement, whether by appeal or otherwise.

9.    **FINAL APPROVAL AND FAIRNESS HEARING**

9.1.    No later than the date set forth in Paragraph 3.1(e), Class Counsel will file a Petition for Attorneys' Fees and Actual Expenses. Because the Settlement creates a fund which will provide

payments for more than six years following settlement, Class Counsel may seek to recover additional expenses incurred after the final installment has been distributed to Settlement Class Members by filing a motion with the Court. In the event such motion is granted, additional costs due to Class Counsel would be paid from the Reserve Fund only. Class Counsel may not be awarded additional expenses in excess of the amount available in the Reserve Fund.

9.2.     No later than the date set forth in Paragraph 3.1(f), Named Plaintiff will submit to the Court a memorandum of law and any necessary declarations, objections, or opt-out information in support of a Joint Motion for Final Approval of Settlement. Class Counsel will draft the motion and supporting memorandum and will submit it to Defendant for review no later than five (5) Business Days prior to the deadline for submission to the Court and will allow Defendant to make reasonable edits prior to filing. Class Counsel agrees to include arguments that the settlement is fair and that the Named Plaintiff supports it, and Class Counsel agree to make the same representations during the Final Approval hearing as may be required.

9.3.     In the Joint Motion for Final Approval of Settlement, Named Plaintiff will request that the Court, among other things: (1) state that there is a bona fide legal dispute between the Parties as to whether Settlement Class Members are owed any wages, overtime compensation, statutory damages, and related relief; (2) approve the Agreement, including all information contained in the Notice, as fair, reasonable, adequate, and binding on all Named Plaintiff and Settlement Class Members who did not opt out of the settlement, and with respect to the FLSA claims, binding on all Settlement Class Members who cash a Settlement Check; (3) approve the procedure for Defendant to pay the Class Settlement Fund into the QSF in accordance with Paragraph 10.5; (4) order administration of the QSF in accordance with Sections 10-13; (5) order entry of a Stipulation of Dismissal in accordance with this Agreement; (6) approve the Attorneys'

Fees and Actual Expenses in accordance with Paragraph 9.4; and (7) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement.

9.4.    Class Counsel will seek an award of Attorneys' Fees of $1,166,666 ("Attorneys' Fees"), which equals one-third (33 1/3%) of the Class Settlement Fund. Any fee payments approved by the Court shall be paid from the Class Settlement Fund defined in Paragraph 1.5 and on a pro rata basis over the installment period. In addition, Class Counsel will request no more than $50,000 for out-of-pocket expenses "Actual Expenses") from the Class Settlement Fund in accordance with Paragraph 11.2, which shall be paid out of the first installment. The Settlement Administration Costs will also come out of the Class Settlement Fund in an amount not to exceed $150,000.

9.5.    If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the Parties will proceed in accordance with Paragraph 27.1.

9.6.    In the event this Agreement does not become final, the Settlement Administrator will provide notice to the Settlement Class Members, in a form jointly agreed upon by the Parties, that the Agreement did not receive final approval and that, as a result, no Settlement Payments will be made to Settlement Class Members under the Agreement. Such notice shall be mailed by the Settlement Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Administrator in mailing the Notices. If the Agreement does not become final, all Settlement Administrator Costs shall be split equally between Class Counsel and Defendant.

9.7.    In the event a Final Approval Order consistent with the terms and conditions of this Agreement in all material respects is entered, Named Plaintiff, Class Counsel, and Defendant all

hereby waive any and all rights to appeal the Final Approval Order. The waiver in the preceding sentence does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

9.8.    Named Plaintiff and Class Counsel understand and agree that any fee payments made pursuant to Paragraph 9.4 will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of Named Plaintiff and Settlement Class Members, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of this Litigation. As an inducement to Defendant to enter into this Agreement, and as a material condition thereof, Named Plaintiff and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against the Released Party for attorneys' fees or costs arising from or relating to the Litigation. As a further inducement to Defendant to enter into this Agreement, and as a material condition thereof, Named Plaintiffs and Class Counsel further understand and agree that the fee and cost payments made pursuant to Paragraph 9.4 will be the full, final, and complete payment of all attorneys' fees and costs that are released, acquitted or discharged under this Paragraph, and warrant and represent that they will not, nor will any of their employees, agents or representatives of their firms, file any claims for attorneys' fees or costs, including but not limited to bills of costs or requests for attorneys' fees, for any fees and/or costs arising out of the Litigation, and Named Plaintiff and Class Counsel hereby irrevocably and  unconditionally release, acquit, and forever discharge Defendant of any liability for such fees and/or costs. Notwithstanding the aforementioned, as provided in Paragraph 9.4, Class Counsel may seek additional costs incurred after the final distribution of payment has been made to Settlement Class Members, which if sought, will be paid only if approved by the Court and will come only from the Reserve Fund.

10.   **QUALIFIED SETTLEMENT FUND**

10.1.   Defendant and the Settlement Administrator will cause to be established and maintained an interest-bearing QSF to be designated the *Katz v. PDP* QSF. The Parties agree that the QSF is intended to be a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1 *et seq*., and will be administered by the Settlement Administrator in accordance with the terms of this Agreement and in such a manner as to qualify and maintain the qualifications of the QSF under the aforementioned Code sections. The monies to establish, maintain, and fund the QSF will be part of the Settlement Administration Costs, which will be paid exclusively from the Class Settlement Fund in accordance with Paragraph 10.4.

10.2.   The Settlement Administrator will apply for the employer identification number required for the QSF and will provide that number to Defendant within two (2) weeks after receiving it. The Settlement Administrator will comply with all applicable tax filings, withholdings, payments, and reporting requirements of the QSF, including those required by the Code and applicable regulations thereunder. The Settlement Administrator will timely inform Defendant of any federal or state tax payment or filing obligations associated with or arising out of payments made by the QSF, although the Settlement Administrator shall be the one to make such payments in accordance with Paragraphs 13.1 and 13.2.

10.3.   No later than the date set forth in Paragraph 3.1(g), the Settlement Administrator will tender a report (the "Settlement Administrator Report") to Class Counsel and Defendant's counsel containing the following information: (1) the gross Settlement Payments to each Settlement Class Member, before deduction of the Settlement Class Member's share of taxes and withholding, which will be presented as the total amount and not broken down by installment; (2) the amount of the Settlement Payment attributed to wages; (3) the amount of the Settlement

Payment attributed to interest, liquidated damages, and non-wage recovery; and (4) the net Settlement Payment to each Settlement Class Member, after deduction of the Settlement Class Member's share of taxes and withholding; and (5) the amount of Defendant's portion of the payroll taxes on the Settlement Payment to be deducted from each installment by the Settlement Administrator, who shall remit such taxes to the appropriate taxing authorities on behalf of Defendant. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Paragraph.

10.4.   The Class Settlement Fund, calculated in accordance with the terms of this Agreement and paid in settlement of the Litigation, will include the following:

10.4.1.   Seven (7) installments of court-approved Settlement Payments to Named Plaintiffs and Settlement Class Members;

10.4.2.   the Attorneys' Fees and Actual Expenses of Class Counsel, as awarded by the Court;

10.4.3.   the Service Award, as awarded by the Court;

10.4.4.   Settlement Administration Costs;

10.4.5.   the Reserve Fund, which shall be an interest-bearing account held by the Administrator, and shall be funded by $35,000 from the first installment payment, which shall be used to pay for any amount(s) due to Settlement Class Members as a result of any error in the calculation of their payment, or for any other reason for which this Agreement explicitly authorizes; and

10.4.6.   those taxes that are withheld and tendered by the Settlement Administrator with respect to any Settlement Payments.

10.5.   No later than the date set forth in Paragraph 3.1(i), Defendant will send the First

Installment of the Class Settlement Fund and the employer's share of payroll taxes to the Settlement Administrator for deposit in the QSF. As transferor of the funds to be deposited in the QSF, Defendant will prepare and file the information statements concerning its payments to the QSF as required to be provided to the IRS pursuant to the regulations under Section 468B of the Code. The remaining installments will be deposited by PDP into the QSF as follows:

  10.5.1.  A Second Installment of $500,000, to be deposited by PDP on or before March 15, 2024.

  10.5.2.  A Third Installment of $500,000, to be deposited by PDP on or before March 17, 2025.

  10.5.3.  A Fourth Installment of $500,000, to be deposited by PDP on or before March 16, 2026.

  10.5.4.  A Fifth Installment of $500,000, to be deposited by PDP on or before March 15, 2027.

  10.5.5.  A Sixth Installment of $500,000, to be deposited by PDP on or before March 15, 2028.

  10.5.6.  A Seventh Installment of $500,000, to be deposited by PDP on or before March 15, 2029.

10.6.  The Settlement Administrator shall have full responsibility for all distributions from the QSF, which shall be calculated based on the data provided by Defendant, Defendant's counsel, Named Plaintiff, and Class Counsel shall not have any obligation or liability regarding distributions from the QSF to any Settlement Class Member.

10.7.  Any person who does not receive a Settlement Payment will have no recourse against Defendant, Defendant's counsel, Named Plaintiff, or Class Counsel for failure to receive

any payment due under this Agreement.

10.8.    The Parties shall have the right to inspect the records of the QSF, including, but not limited to, imaged copies of the front and back of endorsed checks and any correspondence between the Settlement Administrator and Settlement Class Members relating to disputes over payments.

10.9.    The QSF will terminate twelve (12) months after the Settlement Administrator initially mails the Settlement Checks in the Seventh Installment to Settlement Class Members.

## 11.    DISTRIBUTION OF CLASS SETTLEMENT FUND

11.1.    The Parties agree that the Class Settlement Fund will be distributed in accordance with this Section 11 and the Court's Final Approval Order.

11.2.    Class Counsel will be reimbursed for the Actual Expenses of Litigation in the amount approved by the Court, not to exceed $50,000, except as otherwise provided in Section 9.1.

11.3.    The Settlement Administrator will be paid Settlement Administration Costs in an amount not to exceed $150,000, and as approved by the Court.  The Settlement Administrator shall be paid as work is incurred and money set aside to pay the administrator shall occur as set forth in Section 4.2.

11.4.    Thirty-five Thousand Dollars ($35,000) shall be set aside from the first installment payment to fund the Reserve Fund.  Provided that if more than $5,000 remains in the Reserve Fund when the Final Distribution is made, the excess amount shall be added to the Net Class Fund to be distributed to Class Members.

11.5.    Class Counsel will receive an award of Attorneys' Fees in the amount approved by the Court, not to exceed one-third of the Settlement Fund.

11.6.    Subject to Court approval, the parties agree that $10,000 of the Class Settlement Fund will be paid as a "Service Award" to Named Plaintiff in recognition of her service to the Settlement Class Members. This amount shall be paid from the First Installment.

11.7.    The Attorneys' Fees set forth above shall be distributed by the Settlement Administrator to Class Counsel per instructions to be provided to the Settlement Administrator within seven (7) calendar days after Defendant funds the QSF, and on a pro rata basis for the installment period set out in Section 10.5.

11.8.    The Attorneys' Actual Expenses, set forth above, shall be distributed by the Settlement Administrator to Class Counsel per instructions to be provided to the Settlement Administrator within seven (7) calendar days after Defendant funds the QSF.

11.9.    After the amounts described in Paragraphs 11.2-11.8 are deducted, the remaining funds (the "Net Class Fund"), will be allocated among the Settlement Class Members (including Named Plaintiff) as set forth in this Agreement. Settlement Class Members shall not be required to submit a claim form to participate in this Settlement. Each Settlement Class Member's share of the Net Class Fund is referred to their "Settlement Payment." The minimum Settlement Payment to any Settlement Class Member who does not opt out will be $100.00, and will be distributed pro-rata based on the number of workweeks each Class Member was employed by Defendant in a Covered Position during the Covered Period, based on information provided by Defendant on the Class List. Defendant's sole responsibility in providing correct payments to Settlement Class Members is that Defendant must provide a complete and accurate Class List based on its payroll records. Notwithstanding the foregoing, any Settlement Class Member who was only classified by Defendant as non-exempt shall receive a minimum settlement payment of $100.00.

11.10.  The Settlement Administrator shall in all other respects be responsible for

calculating and paying the amount(s) due to each Class Member.

11.11.   In the event an error in calculation occurs, the Settlement Class Member shall be paid from the Reserve Fund. The Parties agree that the payment due to each Class Member will be adjusted to account for the actual Court-approved amounts described in Paragraphs 11.2-11.8, following the Response Deadline, the pro rata reallocation of Settlement Payments for Settlement Class Members who submitted timely Opt Out Statements to Settlement Class Members who did not opt out.

11.12.   The Settlement Payment amounts to be paid from the Settlement Class Fund will be calculated by the Settlement Administrator based on the Class List.

11.12.1. Fifty percent (50%) of each Settlement Payment computed in accordance with Paragraph 11.8.1 will be allocated to back wages, and fifty percent (50%) will be allocated to liquidated damages and interest.

11.12.2. The Settlement Payments to be paid from the Net Class Fund in seven equal installments in accordance with this Section 11.

## 12.   DISTRIBUTION OF SETTLEMENT CHECKS

12.1.   Within fourteen (14) calendar days after Defendant funds each installment of the QSF, the Settlement Administrator will distribute a Settlement Payments to the Settlement Class Members for the applicable installment who did not timely opt out and any Service Award owed. The Settlement Payments will be paid by checks ("Settlement Check") that state that they are valid for one hundred eighty (180) calendar days ("Cashing Period"). In addition, the Settlement Administrator will issue for each Settlement Class Member an IRS Form W-2 showing the amount allocated to back wages and an IRS Form 1099-MISC, checking box 3 other income, showing the amount allocated to liquidated damages and interest (and any Service Award if applicable).

12.2.    Other than the withholding and reporting requirements stated in this Section 12, Settlement Class Members shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Settlement (including without limitation the Pennsylvania Personal Income Tax).

12.3.    The Settlement Administrator will be responsible for correcting or amending any payroll tax reporting associated with uncashed Settlement Checks and completing any reports or forms required to facilitate the return or credit to Defendant of associated excess employer payroll tax contributions.

## 13.    TAXES

13.1.    It is each Settlement Class Member's ultimate obligation to pay the employee's share of appropriate federal, state, and local income taxes on all payments that lawfully qualify as income. The Parties also agree that there must be proper withholding of federal, state, and local income taxes, and the employees' share of Federal Insurance Contribution Act ("FICA") and Medicare on all Settlement Payments representing back wages. The Settlement Administrator will be responsible for calculating, withholding, and depositing or remitting the required amounts for federal, state, and local income taxes on all payments representing back wages, and the employees' share of FICA and Medicare. The Settlement Administrator will be responsible for preparing and distributing all appropriate tax forms associated with payments made by the Settlement Administrator, including, as appropriate, IRS Form W-2 and IRS Form 1099-MISC.

13.2.    The Settlement Administrator will be responsible for calculating and paying applicable Federal Unemployment Tax Act ("FUTA"), State Unemployment Tax Act ("SUTA"), and the employer's share of FICA and Medicare on all Settlement Payments representing back wages and will remit those payments to the appropriate taxing authorities and will give Defendant

reasonable notice of such payments, which shall be deducted from the QSF. Within fourteen (14) calendar days following the Final Approval Date, the Settlement Administrator will provide to the Parties the Settlement Administrator Report informing them of its calculations, the amount of withholding, and amounts to be deposited and paid, in advance of any submission to government authorities or distributions to Settlement Class Members. The Parties will have fourteen (14) calendar days following the issuance of the Settlement Administrator Report to provide written notice to the Settlement Administrator that they agree with the calculations or to provide corrected calculations. If no such notice or corrected calculations are provided by the Parties, the Settlement Administrator may proceed with such submission or distribution on the assumption that its underlying calculations are correct.

13.3.   The Settlement Administrator shall provide the Parties with a copy of any communications sent to Settlement Class Members and a list of all Settlement Payments sent to Settlement Class Members, identifying for each Settlement Check the amount and payee.

13.4.   To the extent permitted by law, in no event shall any Settlement Payment to a Settlement Class Member or any Service Award create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

**14.     RELEASE BY SETTLEMENT CLASS MEMBERS**

14.1.   All Settlement Class Members who do not timely opt out and who cash a Settlement Check, on behalf of themselves and each of their heirs, representatives, successors, assigns and attorneys, shall be deemed to release and forever discharge all Released Claims against the Released Party (the "Release") for the time period they occupied a Covered Position up through the date that that the Joint Motion for Preliminary Approval of Settlement is filed. The Release shall become effective on the Effective Date.

14.2.   All Settlement Class Members who cash a Settlement Check will be deemed to have opted in to the FLSA wage claims in this Litigation by negotiating a Settlement Check or claiming a Settlement Payment. The Settlement Checks the Settlement Administrator issues to Settlement Class Members who have not previously filed a consent form to join the action shall contain the following additional notice on the back of the first check issued to each such Settlement Class Member:

> I understand that I have up to 180 days from the date I was mailed this Settlement Check to sign and cash this Settlement Check. By cashing this check, I consent to join the Fair Labor Standards Act claims in the lawsuit Katz v. DNC et al., 2:16-cv-05800, pending in the United States District Court for the Eastern District of Pennsylvania, I agree to be represented by Class Counsel, and I agree to be bound by the Settlement Agreement in that lawsuit. By cashing this check, I release the Released Claims against the Released Party in accordance with the Notice that I received in that lawsuit.

14.3.   Alteration, redaction, or deletion of this notice on the Settlement Check shall not affect the Release.

14.4.   Any Settlement Class Member who does not timely opt out and who cashes a Settlement Check will be deemed to have released all Released Claims with the sole exception of their FLSA claims (the "Limited Release").

14.5.   Named Plaintiff, on behalf of herself and her heirs, representatives, successors, assigns and attorneys, releases and forever discharges all Released Claims against the Released

Party. The Release shall become effective on the Effective Date.

## 15.   COMMUNICATIONS

15.1.   The Parties agree to maintain strict confidentiality pending the filing of the Motion for Preliminary Approval of Settlement. In particular, prior to the filing of the motion, Plaintiff shall not under any circumstances disclose the economic terms of this settlement without Defendant's prior consent.

## 16.   PUBLICITY

16.1.   Until they file a Motion for Preliminary Approval, the Parties and their counsel agree to maintain confidentiality as to the amount of the Settlement, and all terms of the settlement, except as to spouses, tax or financial advisors, attorneys, taxing agencies, or as otherwise required by law. Nothing in this Section shall prevent Defendant, Defendant's Counsel, Class Counsel, or Named Plaintiff from making any disclosure required by law. Nothing in this Section shall prevent the Parties from discussing the Settlement privately with any of the following: one another; the Court; Class Counsel; or their attorneys, tax or financial consultants, and spouses.

16.2.   Neither the Named Plaintiff nor Class Counsel will contact the media about the Settlement, or otherwise publicize any information about the Settlement in any type of media, including, but not limited to, press conferences, press releases, interviews, television or radio broadcasts, newspapers, or messages on the Internet, Facebook, Twitter, Instagram, TikTok or any other social media or website prior to the filing of the Motion for Preliminary Approval. If contacted by the media about the Settlement or this Agreement or the Litigation, counsel for any Party may respond only after the motion for Preliminary Approval has been filed and only by confirming the motion for settlement was filed and/or, if the Court has ruled on such motion, that the settlement was approved using language that has been approved by both Parties. Any additional

press release or other statement to the media or the public, made by either Party and/or their counsel, may only be made with prior approval by the other Party. Class Counsel may maintain information on its website limited to a statement of their representation of the Settlement Class Members in this matter, that the matter has been settled, and explaining the payment schedule provided for in this Agreement.

16.3.   Neither Named Plaintiff nor Class Counsel may undertake or support any indirect communications to otherwise accomplish communications efforts which would be prohibited under this Section 16 if done directly.

## 17.   DISMISSAL OF ACTION

17.1.   The Parties agree that upon the Court granting final approval of the Settlement, the Court shall enter a stipulated judgment effectuating the terms of this Settlement and in all other respects dismissing the Litigation with prejudice upon satisfaction of the conditions and timeline specified herein that result in the Court's entry of an Order Granting Joint Motion for Final Approval of Settlement.

## 18.   RESOLUTION OF FUTURE DISPUTES

18.1.   Named Plaintiff and Class Counsel confirm that they are not aware of any wage and hour actions, other than this Litigation, currently pending against Defendant or other Released Party for compensation for the time periods covered by this Litigation.

18.2.   The United States District Court for the Eastern District of Pennsylvania will have continuing jurisdiction to interpret and enforce this Agreement and to hear and adjudicate any dispute or litigation arising from the Agreement except as otherwise provided herein.

## 19.   DOCUMENTS

19.1.   Class Counsel will, 365 days after the Settlement Administrator mails the

Settlement Checks in the Seventh Installment to the Settlement Class Members, destroy or return to counsel for Defendant all documents and information (including electronically stored information) produced by Defendant during the course of the Litigation. This obligation supersedes any obligation, right, or timing otherwise provided for by Local Rule. This Paragraph does not apply to publicly filed material or attorney work product.

19.2.   Class Counsel agrees to not use any documents or information produced, or otherwise discovered through, this lawsuit outside of the present action.

## 20.    PARTIES' AUTHORITY

20.1.   The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to its terms and conditions, which the Parties agree are the result of lengthy, intensive arm's length negotiations.

20.2.   The Parties acknowledge that throughout the settlement negotiations that resulted in this Agreement they have been represented by counsel who are experienced in collective action litigation under the FLSA and class action litigation of the state law wage and hour claims at issue, and that this Agreement is made with the consent and advice of counsel who have prepared the Agreement.

20.3.   Upon approval by the Court, this Agreement shall bind Named Plaintiff and all Settlement Class Members who have not timely opted out of this Settlement pursuant to the opt out procedures described in Paragraph 7.1, subject only to the limitations of Paragraph 14.3.

20.4.   It is agreed that because the Settlement Class Members are so numerous, it is impossible or impracticable to have each Settlement Class Member execute the Agreement. The Notice will advise all Settlement Class Members of the binding nature of the Release or Limited Release (as applicable) of claims defined in Paragraph 1.8 and in Section 14 of this Agreement,

and that the Release or Limited Release (as applicable) will have the same force and effect upon every Settlement Class Member as if the Agreement were executed by each Settlement Class Member.

**21.   MUTUAL FULL COOPERATION**

21.1.   The Parties agree to cooperate fully to implement this Agreement, including but not limited to, executing such documents and taking such other action as is reasonably necessary to implement and effectuate the terms of this Agreement.

**22.   ENFORCEMENT ACTIONS**

22.1.   If any Party institutes any legal action, arbitration, or other proceeding against any other Party to enforce the provisions of this Agreement, the successful Party will be entitled to recover from the unsuccessful Party reasonable attorneys' fees and costs.

**23.   MODIFICATION**

23.1.   This Agreement and its Exhibit A may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

**24.   ENTIRE AGREEMENT**

24.1.   This Agreement and its Exhibit A constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representation or terms will modify, vary, or contradict the terms of this Agreement.

**25.   CHOICE OF LAW/JURISDICTION**

25.1.   This Agreement will be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Pennsylvania, both in its procedural and substantive aspects, and the continuing jurisdiction of the United States District Court for the Eastern District of Pennsylvania. This Agreement will be construed as a whole according to its fair

meaning and intent and not in favor of any Party, regardless of who drafted or was principally responsible for drafting the Agreement or any specific term or condition thereof.

## 26.    COUNTERPARTS

26.1.    This Agreement may be executed in counterparts, and when Defendant and Named Plaintiff have executed at least one counterpart, each counterpart will be deemed an original, and when taken together, will constitute one Agreement, which will be binding upon and effective as to all Parties.

## 27.    NO PRIOR ASSIGNMENTS; BINDING ON ASSIGNS

27.1.    The Parties represent, covenant and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged in this Agreement.

27.2.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, assigns, guardians, conservators, and court-appointed representatives.

## 28.    VOIDING THE AGREEMENT

28.1.    In the event this Agreement, or any amended version agreed upon by the Parties, is not approved by the Court, or as otherwise provided in Paragraphs 5.1, 5.5 or 7.8 above, the Agreement will be null and void in its entirety and the Parties will resume the Litigation and revert to their respective positions prior to the Agreement, unless expressly agreed in writing by the Parties to: (1) seek reconsideration or appellate review of the decision denying final approval; or (2) renegotiate in good faith appropriate revisions to such provisions rejected by the Court for a period not less than forty-five (45) calendar days following the date approval is denied and, if a

revised agreement is reached, re-submit the revised agreement for the Court's approval. The Parties will file a joint motion for a stay of the action during the period referred to in this Paragraph.

For Plaintiff Katz, the Collective, and the Putative Class

**Signature:** *Bethany Anne Katz*                    Jan 18, 2023
Bethany Anne Katz (Jan 18, 2023 17:36 EST)

**Email:** bethany.katz.12@gmail.com

**Signature:** *Justin Swidler*                    Jan 18, 2023
Justin Swidler (Jan 18, 2023 11:06 EST)

**Email:** jswidler@swartz-legal.com

For Defendant Pennsylvania Democratic Party

For Defendant Pennsylvania Democratic Party

_____                    1/23/2023
                                                   _____

Pennsylvania Democratic Party                      Date

By: Sharif Street
_____

*[Insert Signature Block]*