**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BETHANY KATZ, *et al.*, | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| DNC SERVICES CORPORATION, *et al.*, | : | |
| *Defendants* | : | **No. 16-5800** |

## <u>MEMORANDUM</u>

Pratter, J.                                                           April *14*, 2023

### Introduction

This case involves the alleged underpayment of overtime wages by the Pennsylvania Democratic Party during the 2014, 2016, 2018, and 2020 elections for employees who worked as Organizers during these elections. The Pennsylvania Democratic Party allegedly avoided paying Organizers overtime wages by classifying them as exempt from the overtime requirements. The Plaintiffs—all of whom worked as Organizers, or in similar positions, in the Commonwealth of Pennsylvania and who were treated as exempt from overtime pay by the Pennsylvania Democratic Party—ask the Court to certify their proposed class. The Plaintiffs seek damages under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act.

Under the terms of the proposed settlement agreement, in exchange for payments from the Pennsylvania Democratic Party, the Plaintiffs agree to release the Pennsylvania Democratic Party from any and all wage and hour claims arising out of, or resulting from, the conduct asserted in the lawsuit. For the reasons that follow, the Court provisionally certifies the class for settlement purposes and preliminarily approves the Settlement Agreement, subject to a final approval hearing.

BACKGROUND

Named Plaintiff Bethany Katz worked for the Pennsylvania Democratic Party as a Field Organizer during the 2016 presidential election.[1] Ms. Katz alleges that she and the other Organizers worked 60–80 hours per workweek during the 2016 presidential campaign. The parties do not dispute that prior to July 1, 2020, Organizers received a salary which ranged between $3,000–$3,500 per month and were paid no overtime premiums for overtime hours worked.

Ms. Katz initiated this action to recover unpaid overtime wages. She filed a complaint alleging individual, class, and collective action claims against the Pennsylvania Democratic Party. She alleges that the Pennsylvania Democratic Party violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by failing to pay for all overtime hours worked. Ms. Katz also alleges that the Pennsylvania Democratic Party violated the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. §§ 331.101 *et seq.* Ms. Katz seeks to represent "all persons who performed worked or work [sic] as organizers or in similar positions in the Commonwealth of Pennsylvania who were treated as exempt from overtime by . . . Defendant [Pennsylvania Democratic Party] and who worked in this capacity at any point in the three (3) years preceding the date the instant action was initiated." Mot. for Prelim. Approval, at 2.

The Pennsylvania Democratic Party filed a motion to dismiss, and Ms. Katz filed a motion seeking to conditionally certify a collective action under the FLSA. The Court granted in part and denied in the part the Pennsylvania Democratic Party's motion to dismiss, allowing Ms. Katz's FLSA and PMWA claims to proceed.[2] Shortly after the Court entered this Order, the Pennsylvania

---

[1]     "Organizers have various duties, which generally involve recruiting and managing teams of volunteers and facilitating contact of potential voters throughout the campaign for purposes of voter registration and to encourage voters to vote for democratic candidates." Mot. for Prelim. Approval, at 7.

[2]     The Court granted the motion to dismiss Ms. Katz's civil conspiracy claim with prejudice, and also dismissed the Democratic National Committee as a defendant in the litigation.

Democratic Party filed an interlocutory appeal, and the Court stayed the case until September 29, 2020. On September 29, 2020, the Court lifted the stay and ordered the Pennsylvania Democratic Party to respond to Ms. Katz's still-pending motion for conditional certification, which the Court subsequently granted.

After granting conditional certification, the Court ordered that the notice to opt-in to the collective class be sent to Pennsylvania state party Organizers who worked for the Pennsylvania Democratic Party between November 9, 2013 to April 26, 2021. The Pennsylvania Democratic Party compiled a list of approximately 817 organizers, and to date, 114 opt-in consent notices have been filed.

The parties have engaged in extensive discovery relating to the Pennsylvania Democratic Party's affirmative defenses as well as class-wide damages and liability. During discovery, the Pennsylvania Democratic Party provided: (1) the number of Organizers it employed each workweek during the 2014, 2016, 2018, and 2020 elections;[3] and (2) its compensation policies with respect to Organizers. Ms. Katz and Swartz Swidler, LLC used this information to create models for alleged overtime damages under the FLSA and PMWA.

In April 2022, the parties attended a mediation via Zoom with former United States Magistrate Judge Kenneth J. Benson, from the Western District of Pennsylvania. The mediation did not result in a settlement, but the parties continued settlement discussions with the mediator following the mediation. A settlement-in-principle was reached in September 2022. The proposed settlement provides payment to all of the Plaintiffs and the putative class members in exchange for the Pennsylvania Democratic Party paying $3.5 million into a fund to be applied to the settlement, which shall be paid in seven installments over six years.

---

[3]     According to Ms. Katz, "Organizers" are hired by the Pennsylvania Democratic Party during only midterm and presidential elections. Most Organizers are generally employed from April to November.

LEGAL STANDARD

Class actions "may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Before approving a class settlement, the court must first hold a preliminary approval hearing. *In re Innocoll Holdings Public Ltd. Co. Sec. Litig.*, No. 17-cv-341, 2022 WL 717254, at *1 (E.D. Pa. Mar. 10, 2022). "If the court had not previously certified a litigation class, the court must decide whether to preliminary certify the proposed settlement class. The court must also assess the settlement itself and the plan for notifying class members of it." *Id.* (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800, 804–05 (3d Cir. 1995)).

A proposed class must be ascertainable, meaning the class members can be clearly identified. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). A proposed class must also satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 316722, at *2 (E.D. Pa. Jan. 24, 2019). Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." It must also be possible to maintain the class action under at least of Rule 23(b)'s subsections. *Fulton-Green*, 2019 WL 316722, at *2.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court must also receive sufficient information to allow it to "determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). As to notice, the parties must demonstrate that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for the purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). A court may

4

provisionally certify the class at the preliminary stage while "leaving the final certification decision for the subsequent fairness hearing." *Hall v. Accolade, Inc.*, No. 17-cv-3423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019).

"If a court determines that it likely will be able to approve the settlement and certify the class, it should direct notice in a 'reasonable manner to all class members who would be bound by the proposal.'" *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *2 (E.D. Pa. July 31, 2021) (quoting Fed. R. Civ. P. 23(e)(1)(B)); *see also In re: Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2014 WL 12614451, at *2–4 (E.D. Pa. Dec. 19, 2014) (conditionally certifying class, preliminarily approving settlement, and directing notice to proposed class). The notice to the proposed class must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

A settlement must be "fair, reasonable, and adequate;" this is determined by considering several factors, including whether (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

## DISCUSSION

I. **Motion for Preliminary Certification of the Class for Settlement Purposes**

   A. **The Class is Ascertainable**

Perhaps obviously, to have a class settlement, there must first be a class. *See In re Gen. Motors*, 55 F.3d at 800. The proposed class must be ascertainable, such that the class members can be clearly identified. *Byrd*, 784 F.3d at 163. The settlement class here consists of all individuals who worked for the Pennsylvania Democratic Party as an Organizer at any point between

November 9, 2013 to December 31, 2021. The Settlement Class Members have been identified through the Pennsylvania Democratic Party's payroll records for whom this data reflects any hours in an Organizer capacity between November 9, 2013 to December 31, 2021. The criteria for deciding who is in the class are simple and objective. Thus, the class is ascertainable.

### B. Rule 23(a)

The proposed class must also satisfy the four prerequisites set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy. *See In re Wawa*, 2021 WL 3276148, at *2. All of these prerequisites are met here.

#### 1. Numerosity

First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Agreement provides that there are approximately 831 Settlement Class Members who have been identified. It would be impracticable and inefficient for each of these 831 Organizers to join the present action, or to bring their own individual actions, to allege wage and hour claims relating to the Pennsylvania Democratic Party's failure to pay overtime. So, the numerosity requirement is satisfied.

#### 2. Commonality

Second, the class must share "common" "questions of law or fact." Fed. R. Civ. P. 23(a)(2). The common legal question shared among the class members here "is whether [the Pennsylvania Democratic Party] violated the Pennsylvania Minimum Wage Act [and/or the FLSA] by requiring its Organizers to work more than 40 hours per workweek while only providing a set salary without overtime premiums." Mot. for Prelim. Approval, at 10–11. This "central" question, more than suited for "classwide resolution," would "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis omitted) (citation omitted). Although the extent of the potential damages differs amongst class members

based on the length of time each member was employed as an Organizer, this is not at odds with the "commonality" requirement. *See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 308 (E.D. Pa. 2012) (finding that the commonality requirement was met because "while each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation," this resulted from the same wrong perpetrated by the defendant). Thus, the commonality requirement is also satisfied.

### 3. Typicality

Third, the lead plaintiffs' claims must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Here, Ms. Katz's claims are typical of those of the class. Her claims, and the claims of the class members, are based on the compensation structure of the Pennsylvania Democratic Party, which paid Organizers a set salary without additional pay for overtime hours worked.[4] Ms. Katz and the class members contend that they worked 60–80-hour workweeks and are entitled to payment for the overtime hours they worked in excess of the 40-hour workweek for which they were paid a set salary.

### 4. Adequacy

Finally, the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Ms. Katz asserts that she has common interests with the putative class members because her claims arise from the same factual and legal circumstances as the claims of the class. Ms. Katz has vigorously pursued the interests of the class by bringing this action and obtaining a favorable settlement. Further, she is represented by counsel who has zealously and competently represented the class's interests. Ms. Katz has no conflicts with the rest

---

[4]   "[P]rior to July 1, 2020, Organizers for [the Pennsylvania Democratic Party] received a set salary which ranged between $3,000–$3,500/month and were paid no overtime premiums for overtime hours worked." Mot. for Prelim. Approval, at 7.

of the class. *See In re Gen. Motors*, 55 F.3d at 800–01. She inspires no unique defenses, nor has any special incentives. *Cf. id.* at 780–81, 800–01. Thus, her "interests are sufficiently aligned with" those of the class. *Id.* at 800. Likewise, Swartz Swidler, LLC, the proposed class counsel, "are qualified and serve the interests of the entire class." *Id.* at 801. Swartz Swidler, LLC certainly has "adequate experience," and has "vigorously prosecuted the action . . . at arm's length," having gone through three amended complaints, a motion to dismiss, extensive discovery, mediation, and lengthy settlement negotiations to reach the present settlement-in-principle. *Id.*

Based on the information submitted, the Court is satisfied that Ms. Katz and her counsel, Swartz Swidler, LLC, will adequately represent the interests of the proposed class. The Court will allow Ms. Katz to be appointed as class representative and Swartz Swidler, LLC to be appointed as class counsel.

### C. **Rule 23(b)(3)**

"After meeting all four prerequisites set forth in Rule 23(a), the . . . Plaintiffs must still satisfy at least one subsection of Rule 23(b)." *In re Wawa*, 2021 WL 3276148, at \*4. Here, the Organizers situate themselves into the third category, claiming that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. **Common Issues Predominate Over Individual Issues**

"To assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (internal quotation marks omitted). This

analysis requires the Court to "examine the essential elements of [the] claims on behalf of the . . . [c]lass, as well as the evidence they propose to use." *Id.*

Ms. Katz contends that the predominance standard is established here because the Pennsylvania Democratic Party's classification of the Organizers as exempt salaried employees while requiring them to work significant overtime hours is common to all of the class members and harmed the class members in the same way. Further, as the Pennsylvania Democratic Party argues, it is common to all class members that they must first establish that they are covered under the FLSA before the Court can reach the question of whether they were properly classified as exempt.

To succeed in bringing an FLSA action, the Organizers must first establish that they are "covered" by the FLSA's overtime wage provision. *See Razak v. Uber Techs., Inc.*, No. 16-cv-573, 2016 WL 5874822, at *5 (E.D. Pa. Oct. 7, 2016). The FLSA extends coverage for unpaid overtime claims only to an employee who in any workweek is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). The Pennsylvania Democratic Party argues that none of the Organizers can establish that they are covered under the FLSA because the Pennsylvania Democratic Party is a political party engaged solely in campaign and political activities, not in commerce. So, it is common to all of the Organizers that to succeed on a failure to pay overtime claim, they must establish that they are covered under the FLSA. *See Razak*, 2016 WL 5874822, at *5.

When an employee is covered under the FLSA, the FLSA "requires employers to pay employees overtime when they work more than forty hours per week." *Wolfslayer v. Ikon Office Sols., Inc.*, No. 03-cv-6709, 2004 WL 2536833, at *2 (E.D. Pa. Nov. 8, 2004) (citing 29 U.S.C. §

207(a)(1) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.")). Certain employees are exempt from this overtime requirement, including those who are employed in a *bona fide* administrative capacity, meaning such employees are not entitled to overtime pay. 29 U.S.C. § 213(a)(1). "To show that an employee is an exempt 'administrative employee,' an employer must demonstrate that an employee earns at least $250.00 per week and meets both a 'duties' test and a 'salary basis' test." *Wolfslayer*, 2004 WL 2536833, at *2. To succeed on a claim for overtime pay, the plaintiff must establish that her duties did not comport with those of an administrative employee under the FLSA, or that the employer's compensation scheme treated her as an hourly employee rather than a salaried employee. *Id.* at *3.

The Court need not go into detail about the elements of these tests because it is not necessary for the approval of the proposed class for settlement purposes. What matters at this stage is that the "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Ms. Katz and the Pennsylvania Democratic Party agree that the Organizers had the same duties and were paid the same salary, between $3,000–$3,500 per month, for a 40-hour workweek. Because the Organizers' duties and compensation were the same, the analysis under the above tests regarding whether Organizers are exempt would be the same for each individual Organizer. Thus, these common questions of law and fact predominate.

This Court has also held that "[w]hether [class members] worked more than 40 hours per week without proper overtime compensation can be determined from generalized proof consisting of [the defendant's] own payroll records" as a class-wide matter. *Talarico v. Pub. P'ships, LLC*,

No. 17-cv-2165, 2022 WL 1524109, at \*9 (E.D. Pa. May 12, 2022); *see also Carr v. Flowers Foods, Inc*, No. 15-cv-6391, 2019 WL 2027299, at \*15 (E.D. Pa. May 7, 2019) (finding inquiry into whether Plaintiffs worked more than 40 hours a week without adequate compensation "is susceptible to class-wide proof"); *Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 129 (E.D. Pa. 2018) ("Plaintiffs may rely on defendants' payroll records to establish common evidence of unlawful payroll practices."). Thus, if the Organizers were not exempt and were entitled to overtime pay, the Court would be able to determine, as a class-wide matter, whether the Organizers worked more than 40 hours a week based on the Pennsylvania Democratic Party's payroll records.

### 2. Superiority

Rule 23(b)(3) sets forth factors that courts may consider in assessing whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These factors include: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

After considering these factors, the Court concludes that resolving this matter via a class action is far better than having each of the 831 Organizers bring his or her own suit. This will prevent courts from having to relitigate the exact same questions in each individual suit, including whether Organizers are covered under the FLSA and if so, whether they are exempt employees or are entitled to overtime pay. Further, by resolving this as a class action, the Organizers are able to recover their overtime pay efficiently in one action.

The Court concludes that Ms. Katz has established that the proposed class warrants preliminary class certification for the purposes of settlement having met the requirements of Rule 23(a) and 23(b)(3).

## II.   Motion for Preliminary Approval of the Settlement Agreement

The parties also ask the Court to preliminarily approve their settlement agreement in accordance with Rule 23(e). The terms of the settlement are set out in a settlement agreement, executed by the parties and their counsel, and later amended.[5]

### A. <u>Background</u>

#### 1. Settlement Agreement and Claims Process

The Settlement Agreement provides that

> [t]he "Class Settlement Fund" is a total of Three Million, Five Hundred Thousand Dollars and Zero Cents ($3,500,000.00), which Defendant shall pay in according to the terms of this Settlement Agreement, and will be payable in seven installments of approximately $500,000 per year over the six (6) year period following the Effective Date.

Executed Settlement ¶ 1.5. The "Net Class Fund" "is the amount to be distributed to Settlement Class Members (including Named Plaintiff) after the amounts of court-approved Service Award, Attorneys' Fees and Actual Expenses, and Settlement Administration Costs . . . are deducted from the Class Settlement Fund." *Id.* ¶ 1.6.

The Settlement Agreement also sets forth a detailed timeline of settlement events following the Court's preliminary approval of the proposed class and the proposed settlement agreement. First, within fifteen days after the Preliminary Approval Date—the date on which this Court issues an Order granting the motion for preliminary approval—the Pennsylvania Democratic Party will

---

[5]   The amendment to the settlement agreement modified only the selected *cy pres* recipient from the ACLU-PA to Community Legal Services – Philadelphia.

provide the Class List[6] to the Settlement Administrator and Class Counsel. Within fourteen days after receiving the Class List, the Settlement Administrator will distribute the Notice of Settlement to the Settlement Class Members. Settlement Class Members will then have sixty days to opt out of or object to the settlement. Settlement Class Members that timely opt out of the settlement will not receive a settlement payment.

The Effective Date of the settlement agreement will be the date of the Final Approval Order, which is to be entered only after this Court holds a Final Approval Hearing relating to the settlement agreement. Within thirty days of the Effective Date, the Pennsylvania Democratic Party will deposit the first of the seven installments of the $3.5 Million Class Settlement Fund into an interest-bearing qualified settlement fund, from which the Settlement Administrator will mail the Settlement Payments to the Settlement Class Members. Any remaining settlement amounts not distributed to Settlement Class Members shall be distributed to the named *cy pres* recipient, Community Legal Services – Philadelphia.[7]

### 2.  Attorneys' Fees, Class Representative Awards, and Administrative Fees

Swartz Swidler, LLC will seek an award of Attorneys' Fees of $1,166,666, which equals one-third (33 1/3%) of the Class Settlement Fund. The parties agree that Ms. Katz is entitled to a service award of $10,000 in recognition of her service to the Settlement Class Members.

---

[6]     The "Class List," which will be provided by the Pennsylvania Democratic Party to the Settlement Administrator and Class Counsel, shall provide, based on the Pennsylvania Democratic Party's payroll records: the (i) name, (ii) best known e-mail address, (iii) best known mailing address, (iv) known telephone number(s), and (v) Social Security Number of each Named Plaintiff and Settlement Class Member; and (vi) total number of workweeks each Named Plaintiff and Settlement Class Member worked for Defendant in a Covered Position during the Covered Period based on Defendant's records. Executed Settlement ¶ 4.4.

[7]     The ACLU-PA was originally named as the *cy pres* recipient, however after the preliminary approval hearing, the parties filed an Amendment to Settlement Agreement in which they replaced the ACLU-PA in paragraph 3.1(m) of the Settlement Agreement to Community Legal Services – Philadelphia. Community Legal Services – Philadelphia is a 501(c)(3) non-profit organization whose mission it is to provide free legal services to low-income Philadelphians. Neither party, nor any counsel, have an affiliation with Community Legal Services – Philadelphia.

The parties ask that the Court appoint the Angeion Group, Inc. as the Settlement Administrator. Angeion will be paid for all Settlement Administration Costs out of the Class Settlement Fund, however, Angeion has agreed to cap its fees for administration of the settlement at $150,000.

### 3. Notice

The Settlement Agreement sets out a reasonable path forward regarding notice to the members of the proposed class. Within 14 days of receipt of the Class List from the Pennsylvania Democratic Party, Angeion will e-mail and mail to each Settlement Class Member the Notice attached to the proposed settlement. The Notice will inform the Settlement Class Members that they have 60 calendar days from the mailing of the notice to object or opt out of the settlement. The Notice outlines both the objection and opt out processes and procedures. Angeion will track which Notices are returned as undeliverable and will resend the Notice to an updated address.

If a Settlement Class Member intends to opt out, they must mail or e-mail a written statement, signed by the Settlement Class Member or his or her legal representative, to Angeion that states substantially as follows: "I request to be excluded from the settlement in *Katz v. DNC et al.*, Case No. 2:16-cv-05800 (United States District Court for the Eastern District of Pennsylvania)." The written notice must also include the class member's name, address, e-mail address, and telephone number. To be effective, the Opt Out Statement must be e-mailed or mailed to Angeion via First Class United States Mail, postage prepaid and postmarked by the Response Deadline. Class Members that fail to opt out will be deemed as having accepted the settlement terms.

Settlement Class Members may also object to the settlement. To do so, they must e-mail or mail to Angeion a written objection to the Settlement or a written notice of their intention to appear and object at the Final Approval Hearing no later than the date set as the response deadline.

The objection must set forth the legal and factual arguments supporting the objection, and must include the class member's name, address, e-mail address, and telephone number.

## B. Rule 23(e)

Class actions "may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e)(2) provides that courts may approve proposed class settlements "only on finding that it is fair, reasonable, and adequate." The Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Here, these factors all weigh in favor of conditional approval.

### 1. Adequate Representation

Ms. Katz has adequately represented the class as the class representative. She has not taken part in any side deals, nor does this basic money settlement benefit her more than other class members. Ms. Katz does seek an additional $10,000 from the settlement as an award. But she has done a significant amount of work since initiating this action in 2016, regularly communicating with counsel and producing documents. So, this award is not patently unreasonable. The Court will render its final review of the proposed award at the time of the final approval hearing.

Class Counsel—Swartz Swidler, LLC—has also done a proper job. In this matter, Swartz Swidler, LLC successfully litigated the case with three amended complaints, disputed motions to dismiss, engaged in extensive class-wide discovery, engaged in mediation, and continued settlement discussions for months prior to reaching a settlement-in-principle in September 2022.

Swartz Swidler, LLC also has considerable experience prosecuting, defending, and settling wage and hour claims such as this one. Given that experience and counsel's familiarity with the facts of this case, counsel knows enough to professionally evaluate the merits of the case and settle on an appropriate amount.

### 2. Arm's-Length Negotiations

The settlement negotiations occurred at arm's length. Settlement communications were made through retired Magistrate Judge Benson. Discussions took place over several months, following an initial mediation, and included much back-and-forth. The parties aver that it is only with the assistance of the mediator that they were able to reach the present settlement. The Court is thus satisfied that the settlement negotiations took place at arm's length. *See, e.g., In re Wawa*, 2021 WL 3276148, at *8–9 (concluding that settlement negotiations took place at arm's length where "a highly-experienced mediator" assisted the parties in the negotiations).

### 3. Adequate Relief

Next, the "relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). The Pennsylvania Democratic Party will pay $3.5 million, to be paid in seven installments of $500,000 over six years. In exchange for this, the class members will release

> any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to a statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Settlement Class Member might have, known or unknown, asserted or unasserted, of any kind whatsoever that relate to payment of wages due or paid for hours worked (including but not limited to overtime and minimum wage), wage/hour recording, and related relief through December 31, 2021, except to the extent that any such claim may not be waived as a matter of law.

Executed Settlement ¶ 1.8. The Settlement Agreement defines released claims as including "exemplary damages, liquidated damages, attorneys' fees, and penalties arising under federal, state, or local wage/hour laws, including but not limited to the Fair Labor Standards Act, the

16

Pennsylvania Minimum Wage Act, and their respective implementing regulations." *Id.* Released claims do not include employment discrimination or retaliation claims, or civil rights violations. Though broad, the release has a nexus to the Pennsylvania Democratic Party's conduct here. Thus, the release is reasonable. *See Shlensky v. Dorsey*, 574 F.2d 131, 144 (3d Cir. 1978) (finding "agreement by the parties to release claims other than those pleaded in the complaint" to be enforceable so long as "the settlement as a whole was fair and reasonable").

### a. Risk

The parties have been able to fully and fairly evaluate the risks associated with continued litigation as compared to settlement. The parties have engaged in significant adversarial proceedings—including motions to dismiss and dispositive motion practice on the Pennsylvania Democratic Party's affirmative defenses—and discovery prior to reaching this settlement-in-principle. The parties exchanged extensive class-wide discovery, including information regarding the hours the Organizers worked, the Organizers' duties, the class members dates of employment, and the Pennsylvania Democratic Party's pay of its Organizers. "This discovery and motion practice enabled [Swartz Swidler, LLC] to evaluate the strengths and weaknesses of the claims and calculate estimates of class-wide damages." Mot. for Prelim. Approval, at 15.

If litigation were to continue, the issue would be whether the Organizers were entitled to overtime under the FLSA. Ms. Katz argues that if she and the other plaintiffs prevailed at trial, they could recovery approximately $11.8 million. The Pennsylvania Democratic Party argues that the plaintiffs were not entitled to overtime because the Pennsylvania Democratic Party, a political party, was not engaged in commerce sufficient to trigger FLSA coverage. Further, even if FLSA coverage was triggered, the Pennsylvania Democratic Party argues that the Organizers were properly classified as exempt from overtime requirements under federal and state law.

While the potential recovery at trial is higher than the relief provided in the settlement agreement, Ms. Katz and Swartz Swidler, LLC agree that the $3.5 million settlement amount is reasonable and represents a fair value of the attendant risks of litigation, notably the risk that if the Pennsylvania Democratic Party is successful at trial, the putative class would receive nothing.

### b. *Distribution*

Further, class members will actually receive their money, as counsel has proposed an "effective[] . . . method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). First, Swartz Swidler, LLC will be reimbursed for the actual expenses of this litigation, not to exceed $50,000, and the Settlement Administrator will be paid settlement administration costs, not to exceed $150,000. The first installment of $35,000 will be set aside to fund the "Reserve Fund," an interest-bearing account held by the Settlement Administrator to be used to pay any amounts due to Settlement Class Members as a result of any error in the calculation of their payment. The proposal is for Swartz Swidler, LLC to receive an award of Attorneys' Fees of up to one-third of the settlement, and Ms. Katz to be paid a $10,000 service award.

After these amounts are deducted from the $3.5 Million Class Settlement Fund, the remaining funds (the "Net Class Fund") will be allocated to the Settlement Class Members. Each class member will get a minimum of $100.00, and the payment "will be distributed pro-rata based on the number of workweeks each Class Member was employed by Defendant [as an Organizer between November 9, 2013 to December 31, 2021], based on information provided by [the Pennsylvania Democratic Party] on the Class List." Executed Settlement ¶ 11.9. The Settlement Administrator will be responsible for calculating and paying the amount due to each Class Member. Fifty percent of each settlement payment will be allocated to back wages, and the other fifty percent will be allocated to liquidated damages and interest. The Court concludes that this method of distribution is sufficiently effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

### 4. Attorneys' Fees

Class Counsel—Swartz Swidler, LLC—will seek an award of Attorneys' Fees of $1,166,666, which equals one-third (33 1/3%) of the Class Settlement Fund. On its face, this award appears fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### 5. Equitable Treatment of Class Members Relative to Each Other

Finally, aside from the class representative, no class member will benefit more than the others. Fed. R. Civ. P. 23(e)(2)(D). Swartz Swidler, LLC has proposed an objective formula for calculating each Organizer's recovery "based on the . . . extent of their [individual] injuries." *In re Ikon Office Sols., Inc., Secs. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000). Each class member will be paid $100 plus a *pro rata* portion of the Net Class Fund pursuant to an allocation formula based on the length of their employment from November 9, 2013 to December 31, 2021. This formula does not appear to favor certain Organizers over others; however, if it does, the Court anticipates that objectors will speak up and assert such objections during the notice period.

### C. The Court Should Grant Approval of the Settlement Under the FLSA

The parties argue that the Court should approve the settlement under the FLSA. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–54 (11th Cir. 1982). In *Lynn's Food*, the Eleventh Circuit Court of Appeals set forth two ways in which an FLSA claim can be settled. *Id.* Relevant to the present action is the second route for compromise of an FLSA action, which "is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations." *Id.* at 1353. The Eleventh Circuit provided that district courts may approve the settlement of an FLSA action if it is a fair resolution of a *bona fide* dispute. *Id.* at 1355. Courts within this district have relied on *Lynn's Food* in approving FLSA settlements. *See, e.g., Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 776–78 (E.D. Pa. 2016); *Lyons v. Gerhard's Inc.*, No. 14-cv-6693, 2015 WL 4378514, at *1 (E.D. Pa. July 16, 2015);

*Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014); *Cuttic v. Crozer-Chester Med. Cntr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); *but see Alcantara v Duran Landscaping, Inc.*, No. 21-cv-3947, 2022 WL 2703610, at *4 (E.D. Pa. July 12, 2022) (questioning district courts' reliance on *Lynn's Food* because "[i]t's not clear that *Lynn's Food* stands for the broad proposition that this Court and others have given it").

Under the *Lynn's Food* standard, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions' rather than a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *Cuttic*, 868 F. Supp. 2d at 466 (quoting *Lynn's Food*, 679 F.2d at 1354).

The Court will approve the proposed settlement agreement under the FLSA. First, the parties have a *bona fide* dispute, which centers around the applicability of the FLSA to the Organizers and the classification of the Organizers as exempt employees. Second, the settlement is fair and reasonable. The settlement negotiations were conducted at arm's length following extensive discovery and motions practice. Moreover, Swartz Swidler, LLC is experienced in prosecuting, defending, and settling similar wage and hour cases such that it was able to evaluate the fairness of the present settlement.

### D. *Cy Pres* Recipient

The parties name Community Legal Services – Philadelphia as the intended *cy pres* recipient of any remaining undistributed settlement funds. The Settlement Agreement provides that "[a]ny unclaimed funds remaining after the final installment shall be redistributed to Settlement Class Members who deposited their final installment check if economically feasible to do so. Any remaining amounts not redistributed shall be donated to [Community Legal Services –

Philadelphia]."[8] Executed Settlement Agreement ¶ 3.1(m); Amendment to Settlement Agreement ¶ 1. "The *cy pres* doctrine . . . may be used to direct excess funds to a third-party for a purpose related to the class injury." *Huffman v. Prudential Ins. Co. of Am.*, No. 10-cv-5135, 2020 WL 4530150, at *1 (E.D. Pa. Aug. 6, 2020). "In the normal *cy pres* scenario, parties may seek to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class." *Id.* (internal quotation marks omitted) (quoting *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 327 (3d Cir. 2019)). Approval of a settlement agreement which names a *cy pres* recipient "is warranted when the court finds that the settlement, taken as a whole, is fair, reasonable, and adequate from the perspective of the class [because i]nclusion of a *cy pres* provision by itself does not render a settlement unfair, unreasonable, or inadequate." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172–73 (3d Cir. 2013) (internal citations and quotation marks omitted).

The inclusion of the Community Legal Services – Philadelphia as the intended *cy pres* recipient does not change this Court's conclusion that the settlement agreement is fair, reasonable, and adequate. *See id.* at 172–73.

For all of these reasons, the Court concludes that the proposed settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

---

[8]       The *cy pres* recipient was changed in the parties' Amendment to the Settlement Agreement, replacing the ACLU-PA with Community Legal Services – Philadelphia.

CONCLUSION

For the foregoing reasons, the Court preliminarily certifies the class for settlement purposes and preliminarily approves the parties' Settlement Agreement. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE