## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETHANY KATZ, *et al.*, | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| DNC SERVICES CORPORATION, *et al.*, | : | |
| *Defendants* | : | **No. 16-5800** |

## MEMORANDUM

PRATTER, J.                                                                FEBRUARY _____, 2024

### INTRODUCTION

The Pennsylvania Democratic Party allegedly underpaid overtime wages to its workers during the 2014, 2016, 2018, and 2020 elections. The Court granted preliminary approval of the parties' proposed $3.5 million settlement in April 2023, with an order requiring class members to opt out or object within 60 days of the issuance of notice of the settlement. No class members have objected. Only four class members out of a class of 820 opted out. Following the notice period, named plaintiff Bethany Katz moved for final approval of the settlement agreement as well as attorneys' fees and costs, a service award, and settlement administrator fees. These motions are unopposed. The Court grants them.

### BACKGROUND

The Court outlined the background of this case in its April 2023 Memorandum Opinion. *See* Mem. Op. at 1-3, Doc. No. 244. In sum: the Pennsylvania Democratic Party allegedly avoided paying Organizers overtime wages by classifying them as exempt from overtime requirements. The Plaintiffs—all of whom worked as Organizers, or in similar positions, in the Commonwealth of Pennsylvania and who were treated as exempt from overtime pay by the Pennsylvania Democratic Party—seek damages under the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA). Under the terms of the proposed settlement

agreement, in exchange for seven payments of approximately $500,000 from the Pennsylvania Democratic Party over six years, the plaintiffs agree to release the Pennsylvania Democratic Party from any and all wage and hour claims arising out of, or resulting from, the conduct asserted in the lawsuit.

As mentioned above, the Court granted preliminary approval of the parties' settlement on April 14, 2023, and ordered that notice be distributed to the preliminarily approved class. Class members had 60 days to opt out or object to the settlement agreement. Not a single class member objected to any aspect of the settlement. Of 820 class members, only four opted out of the class settlement.

In addition to requesting final approval of the settlement agreement, the plaintiffs ask the Court to approve $1,166,666 in attorneys' fees, amounting to one-third of the total $3.5 million settlement. Finally, they request reimbursement of out-of-pocket litigation costs to the tune of $10,776.41, an award of settlement administrator fees amounting to $86,103, and a service payment of $10,000 to named plaintiff Bethany Katz.

The Court finds the overall settlement agreement to be adequate, reasonable, and fair and grants final approval of the settlement agreement. The Court also grants the requested fees, costs, and awards.

**LEGAL STANDARD**

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Before finally approving a class settlement, the court must first hold a preliminary approval hearing. *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. 17-cv-341, 2022 WL 717254, at *1 (E.D. Pa. Mar. 10, 2022). At the preliminary approval stage, "the court must be satisfied that it 'will likely be able to (i) approve the proposal under Rule

2

23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Ward v. Flagship Credit Acceptance LLC*, No. 17-cv-2069, 2020 WL 759389, at *4 (E.D. Pa. Feb. 13, 2020) (quoting Fed. R. Civ. P. 23(e)(1)(B)). After these requirements are satisfied, notice of the proposed settlement must be disseminated to the class.

At the final approval stage, after notice has been disseminated, the Court must ultimately consider whether the proposed settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Before evaluating the fairness, reasonableness, and adequacy of the proposed settlement, though, the Court "must determine whether it can certify the class under the standards of Rule 23(a) and (b) for purposes of judgment based on the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("Rule 23 Advisory Committee Note"). One aspect of this determination is that a proposed class must be ascertainable, which means that class members can be clearly identified. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

A proposed class must satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 316722, at *2 (E.D. Pa. Jan. 24, 2019). Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

It must also be possible to maintain the class action under at least one of Rule 23(b)'s subsections. *Fulton-Green*, 2019 WL 316722, at *2. If the parties seek to maintain the class under Rule 23(b)(3), they must show that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b)(3). A court may provisionally certify the class at the preliminary stage while "leaving the final certification decision for the subsequent fairness hearing." *Hall v. Accolade, Inc.*, No. 17-cv-3423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019). When a class is certified for settlement purposes pursuant to Rule 23(b)(3), notice must be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

In determining whether a final settlement agreement is fair, reasonable, and adequate pursuant to Rule 23(e), the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The first two paragraphs of Rule 23(e)(2) describe the "procedural" dimension of the fairness analysis, which looks "to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23 Advisory Committee Note; *Ward*, 2020 WL 759389, at *5. At this stage, the Court focuses "on the actual performance of counsel acting on behalf of the class." Rule 23 Advisory Committee Note. When considering the negotiation process, the Court considers both whether a neutral party was involved and, in particular, the process used to arrive

at an award of attorney's fees. *Id.* The Third Circuit Court of Appeals also recently explained that (apparently even in the absence of a challenge or evidentiary concern) "courts should investigate potential collusion by considering the 'evidence in the negotiation process or the final terms of the settlement.'" *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 727 (3d Cir. 2023) (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 447 (3d Cir. 2016)).

The second two paragraphs of Rule 23(e)(2) describe the "substantive" dimension of the fairness analysis, which focuses on the "relief the settlement is expected to provide." *Id.* To evaluate "the cost and risk involved in pursuing a litigated outcome" under Paragraph (C)(i), the Court may "forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Id.* To evaluate the proposed method of relief distribution under Paragraph (C)(ii), the Court balances the need for the deterrence of unjustified claims against the risk of a claims process that is "unduly demanding." *Id.* To evaluate the proposed attorney's fee award under Paragraph (C)(iii), the Court considers "the relief actually delivered to the class" and remains cognizant of the fact that a fee award is ultimately evaluated under Rule 23(h). *Id.* To evaluate agreements identified by the parties pursuant to Rule 23(e)(3) under Paragraph (C)(iv), the Court is required "to account for any side agreements that are made in connection with the proposed settlement." *Ward*, 2020 WL 759389, at *5. Finally, Paragraph D requires the Court to consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims." Rule 23 Advisory Committee Note.

Rule 23(e) is not meant to displace the factors for evaluating class action settlements that have been developed by the Third Circuit Court of Appeals. *Id.* But because "[a] lengthy list of factors can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process," Rule 23(e)(2) endeavors "to focus the court and the

lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

For the final approval stage, the Third Circuit Court of Appeals has adopted the nine so-called *Girsh* factors to determine the fairness, reasonableness, and adequacy of a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (cleaned up) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). The Third Circuit Court of Appeals has approved the use of these factors to evaluate the settlement of cases involving both a Rule 23 class and a class under the Fair Labor Standards Act (FLSA). *See Lenahan v. Sears, Roebuck & Co.*, 266 F. App'x 114, 116-17, 119-20 (3d Cir. 2008). Under the FLSA, in addition to determining the fairness and reasonableness of the proposed settlement agreement, the Court must also "determine that it resolves a bona fide dispute." *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Rule 23(h) demands that any awarded fees be "reasonable." Fed. R. Civ. P. 23(h). When considering an attorney's fee award in a common fund case, the Court considers several factors, including: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees

requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 336-40 (3d Cir. 1998)). The Third Circuit Court of Appeals has further instructed district courts to "cross-check the percentage award at which they arrive against the 'lodestar' award method," which is calculated by "multiplying the number of hours [class counsel] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Id.* The Court reduces these calculations to writing to facilitate any future review. *Id.*

The Third Circuit Court of Appeals recently wrote that it was "clarify[ing] two considerations that loom large" in determining whether class counsel receives "only a reasonable fee award" using the percentage-of-recovery method. *In re Wawa*, 85 F.4th at 715. First, the Court must consider "how the amount awarded stacks up against the benefit given to the class, using either the amounts paid or the sums promised." *Id.* at 718. Second, the Court must consider "whether side agreements between class counsel and the defendant suggest an unreasonable attorney's fee award." *Id.* at 718-19.

"Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *6 (E.D. Pa. Jan. 3, 2008) (quoting *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001). And "there is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets litigating a [class action] case." *Id.* (quoting *In re Auto. Refinishing Paint Antitrust Litig.*,

MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *35-36 (E.D. Pa. Oct. 13, 2004); *see also In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action").

Finally, named plaintiffs are commonly awarded service payments in class action suits that involve a common fund to be distributed to a class. *Bredbenner*, 2011 WL 1344745, at *22 (citing *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 1990)). The Court has "ample authority" to award service payments where particular class members "provided a benefit to the class or incurred risks during the course of litigation." *Id.* at *23.

**DISCUSSION**

**I.     The class can be certified under the standards of Rule 23(a) and (b) for purposes of judgment.**

**A.   The Class is Ascertainable**

The Court has already found that the class here is ascertainable, *see* Mem. Op. at 5-6, Doc. No. 244, and nothing has changed since preliminary approval of this settlement to alter that finding. Specifically, the settlement class here consists of all individuals who worked for the Pennsylvania Democratic Party as Organizers at any point between November 9, 2013 and December 31, 2021. Members of this class were ascertained by using the Pennsylvania Democratic Party's payroll records. This simple, objective criteria for class membership affirms that the class is ascertainable.

**B.   Rule 23(a)**

At the final approval stage, the Court must find that the numerosity, commonality, typicality, and adequacy requirements of  Rule 23(a) are met, specifically: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Court's analysis of these Rule 23(a) requirements remains largely unchanged since the preliminary approval stage.

### 1. Numerosity

The Settlement Agreement originally provided that there were approximately 831 settlement class members. After preliminary approval, the settlement administrator, Simpluris, modestly shrunk that approximation to 820 class members after identifying potential duplicates and conferring with counsel. This modest change does not alter the Court's previous finding from the preliminary approval stage that "joinder of all members is impracticable" in the present case. Fed. R. Civ. P. 23(a)(1). Thus, the numerosity requirement is satisfied.

### 2. Commonality

The common legal question shared by all class members is precisely the same as it was at the preliminary approval stage, namely, "whether [the Pennsylvania Democratic Party] violated the Pennsylvania Minimum Wage Act [and/or the FLSA] by requiring its Organizers to work more than 40 hours per workweek while only providing a set salary without overtime premiums." Mot. for Prelim. Approval at 10-11, Doc. No. 238-1. Then, as now, this question is suitable for "classwide resolution" and would "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis removed). Though the magnitude of damages differs among class members based on the different lengths of time for which they worked as Organizers, such variation is not inconsistent with the commonality requirement. *See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 308 (E.D. Pa. 2012) (holding that the commonality requirement was met even where each plaintiff's recovery may differ based on the number of hours worked). Thus, the commonality requirement is satisfied.

### 3. **Typicality**

The Court has previously found that Ms. Katz's claims are typical of the class, *see* Mem. Op. at 7, Doc. No. 244, and nothing has occurred since the preliminary approval stage to alter that evaluation. Ms. Katz claims that the Pennsylvania Democratic Party structured its compensation such that Organizers were not compensated for overtime, and the class members contend the same. Thus, Ms. Katz's claims are typical of the class.

### 4. **Adequacy**

The Court remains convinced that Ms. Katz has "fairly and adequately protect[ed] the interests of the class." Fed. R. Civ. P. 23(a)(4). Her claims arise from the same facts and law as the class, she has vigorously pursued the interests of the class since the conception of this litigation, no conflicts between Ms. Katz and the class have arisen, and her claim neither inspires any unique defenses nor creates any special incentives. *Cf. In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800-01 (3d Cir. 1995) (finding failure of adequacy prong where there was "conspicuous evidence of . . . intra-class conflict"). Similarly, as discussed in more depth in the discussion of attorneys' fees below, class counsel, Swartz Swidler, "vigorously prosecuted the action . . . at arm's length." *Id.* at 801. Class counsel is both qualified and experienced, and the Court is satisfied that Ms. Katz and Swartz Swidler have adequately represented the interests of the class.

### C. **Rule 23(b)(3)**

In addition to meeting all four prerequisites of Rule 23(a), the plaintiffs must still satisfy one section of Rule 23(b). *See* Fed. R. Civ. P. 23(b). Here, the plaintiffs have satisfied Rule 23(b)(3), which requires both (a) "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (b) "that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Common Issues Predominate Over Individual Issues

The Court sees no reason to re-visit its previous finding that common questions of fact and law predominate among the class in this action. *See* Mem. Op. at 8-11, Doc. No. 244. Then, as now, "the essential elements of the claims brought by [Organizers for the Pennsylvania Democratic Party] are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (internal quotation marks omitted).

The first common question of law among the class members is whether they are "covered" by the FLSA's overtime wage provision. *See Razak v. Uber Techs., Inc.*, No. 16-cv-573, 2016 WL 5874822, at *5 (E.D. Pa. Oct. 7, 2016). The Pennsylvania Democratic Party contested the coverage of its Organizers by the FLSA insofar as it argued that they were not "engaged in commerce or in the production of goods for commerce, or . . . employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Whether Organizers are engaged in commerce such that they are covered by the FLSA is a common question of law.

Once coverage is established, the FLSA "requires employers to pay employees overtime when they work more than forty hours per week." *Wolfslayer v. Ikon Off. Sols., Inc.*, No. 03-cv-6709, 2004 WL 2536833, at *2 (E.D. Pa. Nov. 8, 2004) (citing 29 U.S.C. § 207(a)(1) ("No employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.")). Employees with certain duties and salary structures are exempt from the overtime requirement. *Id.* at *2. However, because Ms. Katz and the Pennsylvania Democratic Party agree that the

Organizers' duties and salary structures were the same across the class, the exemption analysis is the same among all class members.

Finally, "[w]hether [class members] worked more than 40 hours per week without proper overtime compensation" is determinable as a class-wide matter "from generalized proof consisting of [the defendant's] own payroll records." *Talarico v. Pub. P'ships, LLC*, No. 17-cv-2165, 2022 WL 1524109, at *9 (E.D. Pa. May 12, 2022); *see also Carr v. Flowers Foods, Inc*, No. 15-cv-6391, 2019 WL 2027299, at *15 (E.D. Pa. May 7, 2019) (finding inquiry into whether Plaintiffs worked more than 40 hours a week without adequate compensation "is susceptible to class-wide proof"); *Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 129 (E.D. Pa. 2018) ("Plaintiffs may rely on defendants' payroll records to establish common evidence of unlawful payroll practices."). Thus, the Court could use the Pennsylvania Democratic Party's payroll records to determine as a class-wide matter whether the Organizers worked more than 40 hours per week.

In sum: common questions of law and fact predominate over individual issues in this case.

## 2. Superiority

The Court remains convinced that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 enumerates factors for the Court to consider in making this superiority determination: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Given the common legal ground that every Organizer for the Pennsylvania Democratic Party must tread in order to obtain relief, the Court finds that the class members' interest in individually controlling separate actions is minimal. The Court is not aware of any litigation concerning this controversy already begun by or against class members. Concentrating the litigation of these extremely similar claims in one forum, the Eastern District of Pennsylvania, is desirable insofar as it will allow Organizers to resolve their claims efficiently within the state where the Pennsylvania Democratic Party is based. And the Court does not see any particular difficulties in the management of this class action.

Thus, the Court remains convinced that the resolution of the Organizers' claims by class action is superior to the individual litigation of these claims. The Court further concludes that the class warrants certification for the purposes of final approval of the settlement insofar as the requirements of Rules 23(a) and (b) are met.

### D. Notice

The Court also finds that the notice provided to the class complied with Rule 23. When a class is certified under Rule 23(b)(3), notice must be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Here, the Court is satisfied that the notice provided to the class met this standard. Simpluris, the settlement administrator, established a toll-free number for class members, sent the notice that was previously approved by the Court to the class list that was provided by counsel for the Pennsylvania Democratic Party, updated the addresses that were outdated based on records of the U.S. Postal Service, and supplemented its efforts with Accurint software. Simpluris also sent notice via email. Only 19 physically mailed notices were returned as undeliverable at the end of this process, and just three emailed notices were returned. This process for sending notice was thorough and reasonable, constituting "the best notice . . . practicable" for

a class of 820 with claims arising over the course of five years across a large state like Pennsylvania.

## II. The settlement is fair, reasonable, and adequate under *Girsh*, *Prudential*, and Rule 23(e).

For the final approval stage, the Third Circuit Court of Appeals has adopted a nine-factor *Girsh* test to determine the reasonableness and fairness of a class action settlement. *Girsh*, 521 F.2d at 156-57. Those factors are: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation." *Id.* at 157 (quoting *Grinnell*, 495 F.2d at 463). Here, all nine factors weigh in favor of finally approving the class settlement.

In analyzing the *Girsh* factors, the Court is mindful that the considerations enumerated in Rule 23(e)(2) do not supplant these factors, which have long been applied within the Third Circuit, instead endeavoring "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Rule 23 Advisory Committee Note. Thus, the Court analyzes the *Girsh* factors with an eye towards the procedural and substantive concerns animating Rule 23(e)(2).

### A. Complexity, Expense, and Likely Duration

First, the complexity, expense, and likely duration of the litigation favor final approval of this settlement agreement. This case has been pending since November 2016, and the parties have already engaged in significant adversarial motions practice, including the dismissal of seven

defendants and a cause of action. Proceeding with the litigation would involve class certification, substantial deposition and expert discovery, dispositive motions, and the specter of a lengthy trial followed by appeal. This expensive complexity weighs in favor of resolution through settlement.

The Court notes that Rule 23(e)(2)(C)(i) partly echoes the first *Girsh* factor by drawing the Court's attention to "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e). The adequacy of this settlement agreement is buttressed by the twin facts that it was reached both after years of litigation involving multiple motions to dismiss filed by multiple defendants and before the inevitably disputed class certification process. This suggests that the parties negotiated this settlement with a clear-eyed view of the complex legal issues—expensive to litigate—that would delay final adjudication through class certification, trial, and appeal. This settlement relatively efficiently manages to compensate Organizers after more than six years of litigation. Thus, *Girsh* Factor One weighs in favor of final approval.

## B. **Reaction of the Class**

The reaction of the class has been distinctly positive and favors final approval. To determine how the class has reacted to a settlement agreement, the Court looks to "the number and vociferousness of the objectors." *In re Gen. Motors Corp.*, 55 F.3d at 812. In this case, not one class member has objected to the settlement. This positive reaction strongly supports approval. *See, e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding second *Girsh* factor to "strongly favor" approval where 29 of 281 class members objected to settlement); *Ripley*, 287 F.R.D. at 311, 315-16 (finding second *Girsh* factor to weigh in favor of approval when one objection was filed in class of 441); *see also Inmates of Northumberland Cty. Prison v. Reish*, No. 08-cv-345, 2011 WL 1627951, at *3 (M.D. Pa. Apr. 29, 2011) (finding second *Girsh* factor to weigh "heavily" in favor of approval where four objections based on misunderstanding were filed

in class of about 200). In addition to the absence of objectors in the present case, the presence of only four opt-outs from a class of 820 also tends to demonstrate class satisfaction with the settlement. The positive reaction of the class reinforces the Court's finding that the settlement agreement is substantively fair, reasonable, and adequate pursuant to Rule 23(e)(2) because the class appears satisfied with the settlement agreement. Thus, *Girsh* Factor Two weighs in favor of final approval.

### C. **Stage of the Proceedings and Amount of Discovery**

The third *Girsh* factor—the stage of the proceedings and amount of discovery completed—also favors final approval. This factor inquires into "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). This case has been actively litigated for over six years. The parties have engaged in significant motions practice, including motions to dismiss involving legally complex jurisdictional and constitutional issues, some of which were certified for interlocutory appeal. Moreover, the Pennsylvania Democratic Party shared extensive discovery with plaintiffs' counsel, who used payroll information and policies to model overtime damages under the FLSA and PMWA. These facts also speak to the procedural concern embodied in Rule 23(e)(2)(A), namely that "class counsel have adequately represented the class." Fed. R. Civ. P. 23(e). The Court finds that the same extensive litigation that gave counsel an adequate appreciation of the merits of this case also helps to demonstrate the adequacy of their representation. By the time a settlement emerged almost five years after the original complaint was filed, counsel was fully aware of the merits and legal risks associated with continued litigation. Thus, *Girsh* Factor Three weighs in favor of final approval of the settlement.

### D. The Risk of Establishing Liability and Damages

The fourth and fifth *Girsh* factors, which instruct the Court to consider the risk attendant to establishing liability and damages respectively, both weigh in favor of approval. Using Organizers' base salary as well as the estimated number of overtime hours worked during each election year at issue, the plaintiffs estimated that they could recover approximately $11.8 million. However, the Pennsylvania Democratic Party argues in response that they are not liable for myriad reasons, including: (1) a political party that does not engage in commerce is not covered by the overtime provisions of the FLSA; (2) plaintiffs were properly classified as exempt from overtime requirements pursuant to Pennsylvania and federal law; (3) the PMWA was preempted by federal election law; and (4) requiring overtime pay would violate First Amendment associational rights. Although these arguments were not sufficient to dismiss Ms. Katz's complaint at the Rule 12 stage, their revival at summary judgment, trial, and appeal would expose the plaintiffs to a substantial risk of failing to establish liability and collect damages. Additionally, the Pennsylvania Democratic Party disputes whether plaintiff Organizers actually worked 60-80 hours and planned to offer evidence that 45-55 hours per week was a more reasonable estimate, injecting factual indeterminacy and therefore risk into liability and damages analyses.

Finally, the Court notes that Rule 23(e)(2)(C)(i) echoes the substantive importance of this factor by drawing attention to the "risks . . . of trial and appeal." Fed. R. Civ. P. 23(e). The Court is confident that the difference between the $11.8 million that Ms. Katz contends could be recovered on behalf of the class and this $3.5 million settlement appropriately accounts for the trial and appellate risks that are avoided through settlement. Thus, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of approval.

### E. Risk of Maintaining Class Action Through Trial

The sixth *Girsh* factor considers the risk of maintaining a class action through trial[1] and also weighs in favor of approving the final settlement. Although the Court has previously granted conditional certification of the FLSA class, Ms. Katz has not yet moved for class certification regarding her state law claims brought under the PMWA. If litigation were to continue, the Pennsylvania Democratic Party could seek decertification of the FLSA class and oppose class certification under the PMWA.

Moreover, the work performed by Organizers was performed in widespread geographic locations over four election cycles, making class-wide damages models challenging to create. Although Ms. Katz maintains that Organizers' duties and payment structure were the same in different regions and election cycles, the Pennsylvania Democratic Party could argue against certification based on this variability. This risk of non-certification supports settlement. *See In re Prudential*, 148 F.3d at 321 (finding that "some risk of decertification . . . supports settlement"). Finally, the risk of decertification also speaks to the substantive concerns of Rule 23(e)(2)(C)(i), and the Court is confident that this settlement agreement appropriately accounts for the avoidance of the risk of decertification. Thus, *Girsh* Factor Six weighs in favor of final approval.

### F. Ability of Defendant to Withstand a Greater Judgment

The seventh *Girsh* factor – the ability of the Pennsylvania Democratic Party to withstand a greater judgment – also weighs in favor of settlement. The Pennsylvania Democratic Party raises

---

[1]    The Court notes that this factor may, as a matter of law, no longer be relevant to the analysis at all. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998) ("Because the district court always possess the authority to decertify or modify a class that proves unmanageable, examination of this factor in the standard class action would appear to be perfunctory."); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("[When] [c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . .") (citing Fed. R. Civ. P. 23(b)(3)(D)). However, the Court errs on the side of thoroughness and determines that this factor also weighs in favor of final approval.

capital mainly through cyclical voluntary campaign contributions, so there has been an ongoing concern throughout this litigation about the Pennsylvania Democratic Party's ability to withstand a judgment if the plaintiffs prevailed at trial. However, under the terms of the present settlement agreement, plaintiffs have not taken a discount as a result of this concern. Instead, the parties negotiated a settlement whereby the Pennsylvania Democratic Party pays $500,000 per year over six years, making a fair settlement value possible while avoiding default by the Pennsylvania Democratic Party. This substantively fair result speaks directly to the consideration enumerated in Rule 23(e)(2)(C)(ii): "the effectiveness of any proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e). Distribution of relief to the class in a manner that both adequately compensates class members and avoids the risk of the Pennsylvania Democratic Party's default is an effective manner of distributing relief. Thus, the Court finds that *Girsh* Factor Seven weighs in favor of final approval.

### G. **The Range of Reasonableness of the Settlement Fund**

*Girsh* Factors Eight and Nine instruct the Court to consider whether the settlement fund is reasonable in light of both the best possible recovery and the attendant risks of litigation. The range of recovery in this case is from $0 to $11.8 million. As discussed above, by continuing to litigate this case, the plaintiffs would risk the inability to achieve class certification and establish liability and damages. Thus, a settlement of $3.5 million that both assures class members are compensated while eliminating these risks is fair and reasonable. *Cf. Lenahan v. Sears, Roebuck and Co.*, No. 02-0045, 2006 WL 2085282, at *15–16 (D.N.J. July 24, 2006) (finding *Girsh* Factors Eight and Nine to weigh in favor of settlement approval where $15 million settlement eliminated risk even though maximum liability was $104 million). The elimination of risk is expensive, and the Court finds that this settlement agreement adequately provides relief to the class pursuant to Rule

23(e)(2)(C) while reasonably eliminating the risk inherent in further litigation. Thus, the Court finds that *Girsh* Factors Eight and Nine weigh in favor of final approval.

**H.   The Procedure for Processing Individual Claims**

The Court of Appeals for the Third Circuit has expanded the traditional *Girsh* factors, "when appropriate," to include an inquiry into whether "the procedure for processing individual claims under the settlement is fair and reasonable." *In re Prudential*, 148 F.3d at 323. Rule 23(e)(2)(C)(ii) instructs the Court to consider, in the course of its substantive evaluation of the settlement agreement, "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e). The Court thus finds it appropriate to consider how the parties' proposed settlement agreement will process Organizers' claims.

The funds remaining after the deduction of attorneys' fees, administrator's fees, costs, and the service award "will be distributed pro-rata based on the number of workweeks each Class Member was employed by Defendant in a Covered Position during the Covered Period, based on information provided by Defendant on the Class List." Settlement Agreement at ¶¶ 11.2–11.9, Doc. No. 240. The minimum payment will be $100,[2] and the Pennsylvania Democratic Party's sole responsibility is to provide a complete and accurate class list based on its payroll records. *Id.* The settlement administrator, Simpluris, is entirely responsible for calculating and paying each class member based on the class list, *id.* at ¶¶ 11.10, 11.12, and half of the settlement payment will be allocated to back wages while half will be allocated to liquidated damages and interest, *id.* at ¶ 11.12.1.

---

[2]      During oral argument, class counsel explained that this nominal $100 minimum was intended to ensure that all class members received some compensation under the settlement agreement. The Court finds this minimum to be a reasonable and fair way to compensate class members who worked a minimal amount of overtime hours.

In other words: the settlement fund will be distributed proportional to the amount of overtime Organizers worked, which will be calculated by reference to the number of workweeks Organizers were employed. Given that, in future litigation, the parties would have disputed how much overtime was actually worked by Organizers, calculating payments by reference to weeks worked—a simple, non-disputed figure—is reasonable. As the Court has previously explained, "[w]hether [class members] worked more than 40 hours per week without proper overtime compensation" is determinable as a class-wide matter "from generalized proof consisting of [the defendant's] own payroll records." *Talarico*, 2022 WL 1524109, at *9; *see Carr*, 2019 WL 2027299, at *15; *Williams*, 325 F.R.D. at 129. Thus, using the Pennsylvania Democratic Party's own payroll records to produce the Class List and relying on the resulting Class List to calculate class members' damages by reference to weeks worked is a fair and reasonable method of determining the value of class members' claims.

Finally, during the Fairness Hearing, counsel explained that any money left over in the fund as a result of checks not being cashed by class members will still be distributed to members who have cashed checks in an amount proportional to their individually assessed damages. This effort to ensure that all available funds will be distributed to the class helps to assure the Court that there has been absolutely no collusion in this case. *In re Wawa*, 85 F.4th at 726–27 (suggesting erstwhile provision between parties that court-ordered reduction in attorney's fees would be returned to defendant instead of class may indicate collusion, even though "fee reversion" was removed in later version of settlement). The Court is also aware of no "agreement made in connection with the proposal" that could indicate collusion. *See* Fed. R. Civ. P. 23(e)(3).

Thus, the Court finds that the procedure for processing individual claims under this settlement is fair and reasonable.

**III.    The settlement is fair and resolves a bona fide dispute pursuant to the FLSA.**

Under the FLSA, unlike a class action brought under Rule 23, potential class members must affirmatively opt-in to be bound by the judgment. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party . . . ."); *Bredbenner*, 2011 WL 1344745, at *18. The Court therefore does not ordinarily play the same fiduciary role to protect absent class members as it would under Rule 23 when it assesses a settlement under the FLSA. *Bredbenner*, 2011 WL 1344745, at *18. However, because this case involves the settlement of FLSA claims, the Court must determine whether the settlement (a) is fair and (b) resolves a bona fide dispute. *Id.*

The Court's analysis of this settlement agreement pursuant to *Girsh, Prudential,* and Rule 23 makes it easy to conclude that the settlement is also fair under the FLSA. Additionally, the Court finds that this settlement resolves a bona fide dispute. Ms. Katz contends that she and other Organizers for the Pennsylvania Democratic Party were owed overtime pay, and the Pennsylvania Democratic Party disputes its liability to the Organizers for that overtime pay. This is a classic bona fide dispute: A says B owes her money, and B says it does not.

The Pennsylvania Democratic Party has also asserted a number of specific defenses to liability, including its contentions that: (a) the plaintiffs were not covered employees under the FLSA, (b) the Pennsylvania Democratic Party was not covered by the FLSA because it does not engage in commerce, (c) the Organizers were properly classified as exempt from the FLSA's overtime requirements, (d) the claimed amount of overtime worked exceeded the actual amount of overtime worked, and (e) damages would be limited due to the Pennsylvania Democratic Party's good faith belief that it was in compliance with the FLSA. The settlement resolves the bona fide disputes between Ms. Katz, other Organizers, and the Pennsylvania Democratic Party.

Finally, the Court also notes class counsel's efforts to obtain collective certification under the FLSA, which led to at least 114 people joining the action.[3] This affirms the Court's finding that class counsel has "adequately represented the class" throughout the duration of this litigation. Fed. R. Civ. P. 23(e)(2)(A).

Thus, the Court finds that the settlement is fair and settles a bona fide dispute under the FLSA.

## IV. The requested attorneys' fees are reasonable.

Class counsel requests an award of fees amounting to a third of the total settlement, which amounts to $1,166,666. As counsel stated during the Fairness Hearing, counsel will receive one-seventh of the fee—about $166,666.57—every time the Pennsylvania Democratic Party makes one of its seven payments of approximately $500,000. The Court finds this fee to be appropriate, reasonable, and fair. *Cf. Williams v. Aramark Sports, LLC*, No. 10-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sep. 9, 2011) (citing *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009)) (approving 33% fee award and noting study showing that average attorney's fee percentage in Third Circuit class actions was 31.71% while median was 33.3%). Class counsel has worked on this case on a pure contingency since it was filed in 2016, and the Court notes the extensive work class counsel has completed with respect to dispositive motions practice, discovery, and settlement negotiations.

As an initial matter, the method relied upon by class counsel is appropriate. The percentage of recovery method used by class counsel in the computation of its requested fee award "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner*, 2011 WL 1344745 at *19 (citing *In re Janney Montgomery Scott LLC Financial Consultant Litig.*, No.

---

[3] During the Fairness Hearing, class counsel suggested that "just under 200" individuals had joined the FLSA action as of October 17, 2023.

06-3202, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009)); *see Chemi v. Champion Mortg.*, No. 05-1238, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009); *Lenahan, et al. v. Sears, Roebuck and Co.*, No. 02-0045, 2006 WL 2085282, at *19 (D.N.J. Apr. 8, 2011)). By contrast, the lodestar method, whereby the reasonable hourly rate is multiplied by the attorney's time, is disfavored due to a simple economic reality: every dollar given to class counsel in a common fund case is a dollar taken from the class, regardless of how the fee is structured, so it makes sense to link the fee to the size of the final settlement fund. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001). In other words: because the percentage of recovery method is a function of the settlement fund itself, it is preferred over the lodestar method, which is calculated independent of the size of the fund.

When fees are assessed as a percentage of the common fund, district courts in the Third Circuit assess seven factors to determine reasonableness of the proposed fee: (1) the size of the fund and number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to either the settlement or fee; (3) the skill and efficiency of class counsel; (4) the duration and complexity of the litigation; (5) risk of nonpayment; (6) how much time plaintiffs' counsel devoted to the case; and (7) awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citing *In re Prudential*, 148 F.3d at 336–40)). Every one of these factors weighs in favor of approving the fee award in this case.

### A. The Size of the Fund and Number of People Benefitted

The size of the fund is substantial, and many people will benefit from this settlement. The fund totals $3.5 million paid out in seven installments of $500,000 over six years, and 816 individuals will receive a check at their address at the time of each payment. Because class members need not make a claim in order to receive their check, there is no doubt that the number

of people benefitted will be substantial. So long as the class list produced by the Pennsylvania Democratic Party is thorough and accurate, hundreds of people stand to benefit from this large settlement over the next six years. This factor therefore weighs strongly in favor of approving the fee award.

The Third Circuit Court of Appeals has recently instructed that a court, when determining whether a fee award is reasonable, should focus on "how the amount awarded stacks up against the benefit given to the class, using either the amounts paid or the sums promised[.]" *In re Wawa*, 85 F.4th at 718. None of the features of the settlement agreement that animated the Third Circuit Court of Appeals' concern in *Wawa* is applicable here. Class counsel requests $1,666,667, leaving $2,333,333 for the class. This settlement agreement therefore awards "the class a sum certain." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980). Like in *Boeing*, upon which the Third Circuit Court of Appeals relied in *Wawa*, organizers' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id.* at 480. Organizers may "claim their logically ascertainable shares of the judgment fund" and avail themselves of this benefit simply by cashing the checks sent to their doors at every disbursement by the Pennsylvania Democratic Party. *Id.* Unlike in *Wawa*, the Pennsylvania Democratic Party will not keep any unclaimed funds, all of which will be distributed to claiming members of the class. *Cf. In re Wawa*, 85 F.4th at 726 (expressing concern that judicial reduction of fee award would revert to defendant, not class). Additionally, this is not a case where "class members are offered discounts and tickets while others—like counsel—get cash." *Id.* at 723. Here, organizers will receive cash.

Thus, the Court finds that, in light of the size of the fund and number of people benefited, the fee award "stacks up" very well "against the benefit given to the class." *Id.* at 718.

## B. Objectors and Notice

There have been zero objections to any aspect of the proposed settlement, and notice of the settlement included notice of the requested fee award. Thus, the second factor strongly weighs in favor of approval.

## C. Skill and Efficiency of Class Counsel

The skill and efficiency of class counsel is assessed by considering: (a) the quality of the result achieved; (b) the difficulties counsel faced; (c) the efficiency of recovery; (d) the experience of counsel; (e) the skill with which counsel prosecuted the case; and (e) the quality of opposing counsel. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)).

First, as discussed above, this $3.5 million settlement for 816 class members in a wage-and-hour case without guaranteed recovery through further litigation is a high-quality result for the class. This consideration supports the skill and efficiency of class counsel.

Second, Counsel has overcome several rounds of dispositive motions to arrive at this result, diligently pursued collective certification under the FLSA, and worked to develop complex damages models based on discovery received from the Pennsylvania Democratic Party. This consideration also supports the skill and efficiency of class counsel.

Third, although the case took six years to reach a settlement agreement, the Court cannot conclude that this was an inefficient resolution in the context of this particular case. The final settlement includes class members who worked for the Pennsylvania Democratic Party as recently as 2020, and the litigation was undertaken on a pure contingency basis, so any inefficiency resulting from the hard-fought litigation process does not reflect poorly upon the representation or motives of class counsel. The complex legal issues involved in this case were even certified for

interlocutory review by Judge Jones, who stayed the action for almost a full year. Thus, the Court finds that, due to the substantial obstacles to efficiency resulting from the litigation process in this particular case, the settlement agreement was reached with relative efficiency.

Fourth, Swartz Swidler LLC has substantial experience litigating class action wage-and-hour cases, having litigated more than 150 such cases in federal court in the past ten years. Swidler Dec. at ¶¶ 11-13, Doc. No. 248-2. Numerous federal courts have found Swartz Swidler to be highly experienced in this area of the law. *See, e.g.*, *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *6 (E.D. Pa. Jun. 4, 2014) ("Along with his partner, Richard Swartz, [Mr.] Swidler has served as lead counsel in more than fifty putative class and/or collecti[ve] actions. Counsel is well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation."); *Keller v. TD Bank, N.A.*, No. 12-5054, 2014 WL 5591033, at *6 (E.D. Pa. Nov. 4, 2014) (finding Swartz Swidler to "have considerable experience handling class and collective action disputes"); *Campbell v. C.R. England, Inc.*, No. 2:13-cv-00262, 2015 WL 5773709, at *6–7 (D. Utah Sep. 30, 2015) ("[Swartz Swidler] litigated this matter for more than two years with competence, diligence, and professionalism . . . [and] has significant experience in litigating wage and hour cases."). The Court is confident that class counsel has brought its substantial skill and experience to bear upon the present case through the long and complex litigation process that has been amply described above. Finally, the defendants in this case have been represented by high-quality counsel throughout this litigation, as demonstrated by the extensively litigated Rule 12 motions that led to the dismissal of multiple defendants in the initial stages of this litigation. The continued representation of the Pennsylvania Democratic Party by Faegre Drinker Biddle & Reath; Fox Rothschild; and the Elias Law Group has been diligent, professional, and of excellent quality. These considerations weigh strongly in favor of approval.

Thus, the Court finds that class counsel has litigated this case with skill and efficiency.

**D.  Duration and Complexity of Litigation, Risk of Nonpayment, and Time Devoted**

The duration and complexity of the litigation, risk of nonpayment, and amount of time devoted to the case collectively and individually weigh in favor of approval. This settlement resolves the claims of over 800 Organizers over four election cycles spanning six years and has taken six years to resolve. Notwithstanding this lengthy time-horizon, the attorneys have diligently litigated the complex issues discussed above by dedicating over 850 hours of attorney time to date. Class counsel took substantial risk in litigating those issues, which place liability, class certification, and damages in jeopardy. Finally, Swartz Swidler also expects to dedicate 75 more hours to this matter to obtain final approval and administer the settlement, which will not conclude until 2029.

Thus, the Court finds that these factors all weigh in favor of approving the fee award.

**E.  Awards in Similar Cases**

Comparable awards have been awarded in cases similar to this one. The fee represents $33^1/_3$% of the settlement fund and is consistent with percentages in similar class actions. *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 101–02 (D.N.J. 2001) (charting seven cases where district courts in the Third Circuit approved settlements with fee percentages ranging from 30% to 33.8% on class funds ranging from $1.46 million to $24.3 million). Of course, the Court "may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Cendant Corp.*, 243 F.3d at 736. Significantly, this is not a case where the size of the fund increased merely because the size of the class increased independently of class counsel's efforts. This is important because courts may

28

reduce the percentage of fees in such cases. *Id.* However, in the present litigation, there is no reason to believe that the $3.5 million settlement is the result of an unexpectedly large class.

Thus, the Court finds that this factor weighs in favor of approval.

**F.   Lodestar Cross-Check**

The Court performs a lodestar cross-check by calculating the lodestar multiplier, which equals the requested fee award divided by the lodestar. *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). The lodestar, in turn, equals the number of hours class counsel worked times a reasonable hourly rate for their services. *Id.* The Court of Appeals for the Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Prudential*, 148 F.3d at 341 (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions § 14.03 at 14–5 (McGraw-Hill 3d ed. 1992)). When the percentage of recovery method is applied, courts may consider reducing the award when the multiplier is too high. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005).

Here, class counsel uses a "blended rate" of $600, which approximates the fee structure of all attorneys who worked on the case.[4] *See id.* (holding that district courts should apply blended billing rates). Class counsel has expended 858.8 hours on this case and estimates that 75 more hours will be necessary to finish administering this settlement agreement, which adds up to 933.8 hours. $600 times 933.8 hours equals $560,280, which is the lodestar. The lodestar multiplier equals $1,166,666 divided by $560,280, which comes out to 2.08. Thus, the lodestar multiplier equals 2.08.

---

[4]      Class counsel notes that the case was "handled . . . exclusively by partners of Swartz Swidler" and notes the partners' collective litigation experience. Given the experience and skill of class counsel, the Court finds this to be a reasonable rate.

This 2.08 figure is a reasonable lodestar multiplier and verifies the fairness of class counsel's fee. The multiplier accounts for the fact that class counsel took on substantial risk in litigating this case on a pure contingency. *See id.* As discussed above, class counsel in the present litigation took on substantial risk in litigating this case, rendering a lodestar multiplier of 2.08 reasonable. The lodestar cross-check therefore affirms the reasonableness of the fee award.

## G. Side Agreements

Rule 23(e)(3) states, "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the [settlement agreement]." Fed. R. Civ. P. 23(e). The Court has not been made aware of any such agreement. Upon review of the Settlement Agreement itself, particularly the paragraphs of Section 9 describing the fee award sought by class counsel, the Court notes that there is no so-called "clear sailing" clause, or "agreement by a settling party not to oppose a fee application up to a certain amount." *Wawa*, 85 F.4th at 725 (quoting *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014)). There is thus no evidence in this case of the "side agreements" that triggered appellate skepticism in *Wawa*. The Court also notes that the parties engaged in mediation with a neutral third party, former U.S. Magistrate Judge Kenneth Benson, which is "a factor weighing in favor of a finding of non-collusiveness." *Id.* at 726 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)).

Thus, the Court finds that the requested attorneys' fee award is reasonable and grants class counsel's motion for attorneys' fees.

## V.   The reimbursement of out-of-pocket costs is approved.

Class counsel has incurred $10,776.41 in out-of-pocket costs to litigate this case, and no class member has objected to the payment of these costs. This figure includes $6,540.36 paid to the Angeion Group, LLC, which handled the initial FLSA notice and served as settlement

administrator prior to preliminary approval of the settlement agreement. It also includes $2,000 in mediation costs, $1,443 for internet hosting and domain registrations related to the administration of this class action, $754 in court fees, and $39.05 in travel costs. Courts in the Third Circuit routinely reimburse litigation expenses in addition to the grant of fee awards. *In re Innocoll Holdings Public Ltd. Co. Sec. Litig.*, No. 17-341, 2022 WL 16533571, at \*12 (E.D. Pa. Oct. 28, 2022) (quoting *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015)). The parties' summary of expenses is adequate to demonstrate the reasonableness of their reimbursement request. *Cf. id.* (citing *Chemi*, 2009 WL 1470429, at \*13) ("A summary of expenses may be adequate to show that the expenses incurred were reasonable").

Thus, the Court grants the motion to award out-of-pocket costs in the amount of $10,776.41.

## VI.   The requested settlement administrator fees are granted.

Since the Court appointed Simpluris to administer the settlement, Simpluris has dutifully complied with its obligations as notice administrator. Bulthuis Decl. at ¶¶ 3–12, Doc. No. 248-3. The Court is confident that Simpluris will continue to diligently fulfill its obligations through the end of the settlement administration. Under the settlement terms, Simpluris may set aside a designated amount, not to exceed $86,103 in the aggregate, after each payment by the Pennsylvania Democratic Party. Proposed Modification of Settlement Agreement, Doc. No. 246-2. This sum is considerably less than the $150,000 that had been set aside under a previous settlement administrator. *See id.*

The Court thus finds this fee reasonable and grants the motion to award the settlement administrator's fees.

**VII.    The requested service payment to named plaintiff Bethany Katz is granted.**

Named plaintiff Bethany Katz seeks an award of $10,000. Courts routinely approve such awards to compensate plaintiffs for their services and the risks incurred in bringing class action litigation. *In re Innocoll*, 2022 WL 16533571, at *12 (quoting *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 106 (E.D. Pa. 2013)). Ms. Katz brought the Organizers' claim to Swartz Swidler in 2016, answered written discovery, attended mediation, and was active in settlement negotiations. The Court also recognizes that named plaintiffs who sue major employers like the Pennsylvania Democratic Party take on certain risks, including "risk[ing] their good will and job security in the industry for the benefit of the class as a whole." *Bredbenner*, 2011 WL 1344745, at *23 (citing *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)). Additionally, Ms. Katz's request of $10,000 is consistent with other awards to lead plaintiffs. *See, e.g.*, *id.* at *22 (awarding $10,000 for each of 8 lead plaintiffs); *In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 251 (E.D. Pa. 2009) (awarding ten named plaintiffs $10,500 and two named plaintiffs $5,000). Finally, the Court notes that a $10,000 award in the context of a $3.5 million total settlement does not raise any concern about an undue impact upon the size of awards offered to other class members as a result of diminishing the fund. *See Bredbenner*, 2011 WL 1344745, at *24 (explaining court's normal procedure of comparing "the size of the service payment total to the size of the common fund in order to assess the impact of the award on other class members").

Thus, the Court awards Ms. Katz $10,000 in recognition of her service to the case.

CONCLUSION

For the foregoing reasons, the Court grants final approval to the settlement agreement, grants the motion for attorneys' fees and costs, and grants the settlement administrator's fees, and approves the requested service payment to Ms. Katz. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE